## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN and JANE DOE 1-36, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | 8:09CV456 |
| STATE OF NEBRASKA, et al., | ) | |
| Defendants. | ) | |
| JOHN DOE, | ) | |
| Plaintiff, | ) | |
| v. | ) | 4:09CV3266 |
| NEBRASKA STATE PATROL, et al., | ) | |
| Defendants. | ) | |
| JOHN DOE, | ) | |
| Plaintiff, | ) | |
| v. | ) | 4:10CV3004 |
| STATE OF NEBRASKA, et al., | ) | |
| Defendants. | ) | |
| JOHN DOE, | ) | |
| Plaintiff, | ) | |
| v. | ) | 4:10CV3005 |
| STATE OF NEBRASKA, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

At issue in these consolidated cases is the constitutionality of amendments to Nebraska's Sex Offender Registration Act that became operative January 1, 2010.[1] On cross-motions for summary judgment, I find there are genuine issues of material fact regarding three new sections of the Act which will necessitate a trial, but in all other respects I find as a matter of law that the legislation does not violate either the United States Constitution or the Nebraska Constitution.

---

[1] On December 30, 2009, however, I preliminarily enjoined Defendants from enforcing certain provisions of the amended Act against convicted sex offenders who have completed their criminal sentences and who are not on probation, parole, or court-ordered supervision.

## *BACKGROUND*

Case No. 8:09CV456 was filed in this court on December 16, 2009, by twenty convicted sex offenders (John and Jane Does 1-20) and thirteen of their spouses, children, parents, and employers (John and Jane Does A-K). In an amended complaint filed on March 15, 2010, sixteen additional convicted sex offenders (John Does 21-36) were added as Plaintiffs. All Plaintiffs allegedly reside in Nebraska.  Named as Defendants are the State of Nebraska, the Nebraska Attorney General, the Nebraska State Patrol and its Superintendent, county attorneys and sheriffs for each of Nebraska's ninety-three counties, and police chiefs for the cities of Lincoln, Omaha, Papillion, Fremont, Bennington, Ralston, Columbus, and York, Nebraska.  Individual Defendants are only sued in their official capacity.

Plaintiffs in Case No. 8:09CV456 allege that Nebraska's Sex Offender Registration Act (SORA), as amended, violates several provisions of the United States Constitution, including: (1) the Ex Post Facto Clause of Article I, § 10; (2) the Fifth Amendment's Double Jeopardy Clause; (3) the Eighth Amendment's prohibition against cruel and unusual punishment; (4) the Fourth Amendment's prohibition against unreasonable searches and seizures; (5) the Fourteenth Amendment's Due Process Clause; (6) the Fourteenth Amendment's Equal Protection Clause; (7) the First Amendment's guarantee of free speech; and (8) the Contracts Clause of Article I, § 10.  Plaintiffs also allege violations of eight corresponding provisions of the Nebraska Constitution, plus violations of Article III, § 18, which prohibits special legislation, and Article II, § 1, which mandates the separation of powers.

Case No. 4:09CV3266 was filed in the District Court of Douglas County, Nebraska, on December 24, 2009, by a convicted sex offender (John Doe) who allegedly is employed in Douglas County.  On December 28, 2009, the action was removed to federal court by Defendants, who include the Nebraska State Patrol and its Superintendent, the Nebraska Attorney General, the Douglas County Attorney, the Douglas County Sheriff, and the Omaha Police Chief.

Plaintiff's complaint in Case No. 4:09CV3266 is substantially similar to the amended complaint filed in Case No. 8:09CV456, except that it does not include claims that the amended Act violates the Equal Protection Clause, constitutes special legislation, or violates the Contracts Clause.

Case No. 4:10CV3004 was filed in the District Court of Lincoln County, Nebraska, on January 4, 2010, by an individual (John Doe) who allegedly is required by the amended Act to register as a sex offender in Lincoln County. On January 7, 2010, the action was removed to federal court by Defendants, who include the State of Nebraska, the Nebraska Attorney General, the Nebraska State Patrol and its Superintendent, the Lincoln County Attorney, the Lincoln County Sheriff, and the Chief of Police for the City of North Platte, Nebraska.

Plaintiff in Case No. 4:10CV3004 does not claim any violations of the United States Constitution, but he alleges the amended Act violates the same eight provisions of the Nebraska Constitution that are involved in Case No. 4:09CV3266, namely: (1) Article I, § 16 (ex post facto law); (2) Article I, § 12 (double jeopardy); (3) Article I, § 9 (cruel and unusual punishment); (4) Article I, § 7 (unreasonable search and seizure); (5) Article I, § 3 (due process); (6) Article I, § 5 (free speech); (7) Article II, § 1 (separation of powers); and (8) Article I, § 16 (contracts clause).

Case No. 4:10CV3005 was filed in the District Court of Sarpy County, Nebraska, on December 31, 2009, by a convicted sex offender who allegedly resides in Sarpy County. Defendants removed the action to federal court on January 8, 2010. Defendants include the State of Nebraska, the Nebraska Attorney General, the Nebraska State Patrol and its Superintendent, the Sarpy County Attorney, and the Sarpy County Sheriff.

As in the preceding case, Plaintiff in Case No. 4:10CV3005 only alleges violations of the Nebraska Constitution. His complaint contains seven causes of action which are identical to the first seven claims alleged in Case No. 4:10CV3004.

These four cases were consolidated for all purposes, including trial and discovery, on January 21, 2010.[2]  Case No. 8:09CV456 was designated as the "lead case."  Because the amended complaint filed in Case No. 8:09CV456 contains every constitutional claim that is alleged in the other three cases, in my discussion of those claims I will cite only to that pleading.

Plaintiffs in Case Nos. 8:09CV456, 4:09CV3266, and 4:10CV3005 are represented by the same counsel, and have filed a joint response to Defendants' motion for summary judgment.[3]  They have also jointly filed a motion for summary judgment against Defendants.  Plaintiff in Case No. 4:10CV3004 is represented by different counsel, who has neither responded to Defendants' motion for summary judgment nor filed a cross-motion.[4]

---

[2] Two other actions, Case Nos. 4:09CV3258 and 4:10CV3003, were subject to the consolidation order, but they were dismissed with prejudice for non-prosecution on July 16, 2010.

[3] Defendants originally moved for summary judgment on February 25, 2010. After the amended complaint was filed in Case No. 8:09CV456, Defendants filed an amended motion for summary judgment in all cases, on April 6, 2010.  The original motion for summary judgment in each case will be denied without prejudice, as moot.

[4] The failure to file an opposing brief alone is not considered confession of Defendant's motion.  See NECivR 56.1(b)(2).  However, "[w]hen a motion for summary judgment is properly made and supported, and . . . the opposing party does not . . . respond [by affidavits or otherwise setting out specific facts showing a genuine issue for trial], summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. P. 56(e)(2).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant.  *Torgerson v. City of Rochester*, 605 F.3d 584, 594 (8th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Thus, the non-responding Plaintiff is entitled to the benefit of all evidence filed by the other Plaintiffs.

### The Challenged Legislation

Plaintiffs seek to prohibit enforcement of parts of Legislative Bills 97 (LB 97) and 285 (LB 285), which were passed by the Nebraska Legislature and approved by the Governor in May 2009.  LB 97 was enacted first.

Among other things, LB 97 amended Sections 29-4001, 29-4003, 29-4006, 29-4007, and 29-4008 of Nebraska's Sex Offender Registration Act (SORA).  *See* Nebraska Laws 2009, LB 97 §§ 23, 25, 26, 27, 28.  LB 97 also created two new statutes, which are codified as Neb. Rev. Stat. §§ 28-322.05 and 29-4001.01.  *See* Nebraska Laws, LB 97, §§ 14, 24.  Section 28-322.05 is a new criminal statute (unlawful use of the Internet by a prohibited sex offender), while Section 29-4001.01 is a new definitional statute for SORA.

LB 285 made further amendments to SORA Sections 29-4003 (applicability of the Act), 29-4006 (registration format), and 29-4007 (notification), and also amended SORA Sections 29-4004 (registration procedure), 29-4005 (registration duration), 25-4009 (information not confidential), 29-4011 (violation penalties), and 29-4013 (rules and regulations).  *See* Nebraska Laws 2009, LB 285, §§ 4 through 11.  In addition, LB 285 amended Sections 14 and 24 of LB 97.  *See* Nebraska Laws 2009, LB 285, §§ 1, 3.  Finally, LB 285 outright repealed SORA Section 29-4010 (expungement procedure).  *See* Nebraska Laws 2009, LB 285 , § 17.

Appended to Defendants' brief is a table ("Appendix II, Sex Ofeender [sic] Registration Law Comparison") that summarizes the amendments made to SORA by LB 97 and LB 285.  (Filing 339-2) For ease of reference, I have attached the table to this opinion as Attachment B.[5]

---

[5] With the following additions and corrections, Plaintiffs admit the accuracy of Defendants' Appendix II:

-5-

Defendants have also appended to their brief a table comparing Nebraska's registration requirements to federal requirements established by Title I of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, also known as the Sex Offender Registration and Notification Act ("SORNA").[6]  This detailed and helpful table ("Appendix I, Sex Ofeender [sic] Registration Law Comparison - Adam Walsh Act") is attached to this opinion as Attachment C.[7]

---

a. Previously, Neb. Rev. Stat. § 29-4004(5) required registrants residing in another state to report employment vocation and school attendance. [Appendix II], p. 4.

b. Previously, Neb. Rev. Stat. § 29-4005(2) required lifetime registration for a prior sexual offense when the sentencing court found a prior conviction for a registrable offense. [Appendix II], p. 7-8.

c. The registration information "shall include, but not be limited to" the information listed by Defendants. [Appendix II], p. 9-10.

d. Previously, there was no comparable search, seizure, and monitoring provision for registrants. [Appendix II], p. 11.

e. Previously, Neb. Rev. Stat. § 29-4009(7) permitted the release of relevant information necessary for the protection of the public. [Appendix II], p. 14-15.

f. The current version of Neb. Rev. Stat. § 29-4009(1)(d) addresses "remote communication devices," not computers and electronic communication devices identifiers and addresses. [Appendix II], p. 14.

g. Neb. Rev. Stat. § 29-4008 was modified to include strict liability for failure to provide or timely update law enforcement of any registration information.

h. Neb. Rev. Stat. § 29-4010 was repealed, eliminating the possibility to expunge the registry records upon successful completion.

(Filing 345, CM/ECF pp. 12-13, ¶ 2.)

[6] SORNA (including two provisions enacted in 2008) is codified at 42 U.S.C. §§ 16901-16991.

[7] Plaintiffs have admitted the accuracy of Defendants' Appendix I. (Filing 345, CM/ECF p. 14, ¶ 13)

SORNA, which was enacted on July 27, 2006, requires every jurisdiction to maintain a sex offender registry conforming to federal requirements or else lose federal funding.  *See* 42 U.S.C. §§ 16912, 16925.  As also required by SORNA, 42 U.S.C. §16912(b), the Attorney General of the United States has published guidance to interpret and implement the law.  *See The National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. § 38030-01 (July 2, 2008).  The *National Guidelines* make it clear that SORNA sets a floor and not a ceiling for the states.  That is, while the states must enact the minimum federal requirements, "SORNA does not bar jurisdictions from adopting additional regulation of sex offenders for the protection of the public, beyond the specific measures that SORNA requires." *National Guidelines,* at 38034.

The Attorney General has also made it clear that SORNA applies to sex offenders whose convictions occurred *prior* to the adoption of SORNA, stating:

> The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment. See 72 FR 8894, 8895-96 (Feb. 28, 2007); 28 CFR 72.3. The application of the SORNA standards to sex offenders whose convictions predate SORNA creates no ex post facto problem "because the SORNA sex offender registration and notification requirements are intended to be non-punitive, regulatory measures adopted for public safety purposes, and hence may validly be applied (and enforced by criminal sanctions) against sex offenders whose predicate convictions occurred prior to the creation of these requirements.  See *Smith v. Doe*, 538 U.S. 84 (2003)." 72 FR at 8896.

*National Guidelines,* at 38046.

### *DISCUSSION*

In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. *Great Plains Real Estate Development, L.L.C. v. Union Central Life Ins. Co.*, 536 F.3d 939, 943-94 (8th Cir. 2008). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sensient Technologies Corp. v. SensoryEffects Flavor Co.,* ___ F.3d ___, 2010 WL 2836624, *2 (8th Cir. July 21, 2010) (quoting Fed.R.Civ.P. 56(c)). Disputes that are not "genuine," or that are about facts that are not "material," will not preclude summary judgment. *Eng v. Cummings, McClorey, Davis & Acho, PLC,* ___ F.3d ___, 2010 WL 2696746, *3 (8th Cir. July 9, 2010).

The discussion which follows is in two parts: In Part One, I will identify and discuss genuine disputes that exist regarding three sections of Nebraska's law that diverge from SORNA's minimum requirements, and will also grant in part Plaintiffs' motion for summary judgment regarding one of those sections.[8]  In Part Two, I will analyze the remainder of the new law and explain why it is constitutional.

As a preliminary matter, however, I must address Defendants' contention that Plaintiffs' claims as against the State of Nebraska and the Nebraska State Patrol are barred by the Eleventh Amendment to the United States Constitution, which grants states and their agencies immunity from suit in federal court.[9]  *See Pennhurst State*

---

[8] I determine that Neb. Rev. Stat. § 29-4006(2) violates the Fourth Amendment rights of Plaintiffs who were previously convicted of sex crimes but who were not on probation, parole or court-monitored supervision on or after January 1, 2010.

[9] Plaintiffs do not contend that immunity extends to the Nebraska Attorney General or the Superintendent of the Nebraska State Patrol.

*Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). A state waives immunity when it voluntarily removes an action to federal court. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia,* 535 U.S. 613, 618-623 (2002). Defendants removed Case Nos. 4:09CV3266, 4:10CV3004, and 4:10CV3005 to federal court and filed motions on December 28 and 29, 2009, to consolidate Case No. 8:09CV456 with Case Nos. 4:09CV3266 and 4:09CV3258. (Filings 82, 88) At a hearing on January 21, 2010, Defendants also requested consolidation of the other cases. (Filing 308 (audio file), at 9:48-10:05.) I conclude that by these voluntary actions the State of Nebraska and the Nebraska State Patrol unequivocally waived their Eleventh Amendment immunity from suit in federal court.

### PART ONE–THREE SECTIONS OF NEBRASKA'S NEW LAW ARE EITHER UNCONSTITUTIONAL OR A TRIAL IS REQUIRED TO DETERMINE THEIR CONSTITUTIONALITY

Three sections of Nebraska's new law are either unconstitutional or a trial is required to determine their constitutionality. Those sections are:

(1) Neb. Rev. Stat. § 29-4006(1)(k)&(s) (West, Operative Jan. 1, 2010) (requiring disclosure of registrant's remote communication device identifiers and addresses together with email addresses, instant messaging identifiers, chat room identifiers, global unique identifiers, and other Internet communication identifiers that the registrant uses or plans to use, all domain names registered by the registrant, and all blogs and Internet sites maintained by the registrant or to which the registrant has uploaded any content or posted any messages or information);

(2) Neb. Rev. Stat. § 29-4006(2) (West, Operative Jan. 1, 2010) (requiring registrants to consent to search and installation of monitoring hardware and software); and

(3) Neb. Rev. Stat. § 28-322.05 (West, Operative Jan. 1, 2010) (making it a crime to use Internet social networking sites or instant messaging or chat room services accessible by minors by certain persons required to register under the Sex Offender Registration Act).

-9-

The constitutional provisions that are violated or may be violated are primarily the Ex Post Facto Clause (retroactive punishment), the First Amendment (freedom of speech), the Fourth Amendment (unreasonable search) and the Due Process Clause of the Fourteenth Amendment (vagueness of a criminal statute).[10]  A more detailed explanation follows.

## I.

### First and Second Causes of Action–Ex Post Facto Claim–Regarding Neb. Rev. Stat. § 29-4006(1)(k)&(s) (West, Operative Jan. 1, 2010), Neb. Rev. Stat. § 29-4006(2) (West, Operative Jan. 1, 2010), and Neb. Rev. Stat. § 28-322.05 (West, Operative Jan. 1, 2010)

The Constitution, art. I, § 10, cl. 1, provides, among other things, that: "No State shall . . . pass any . . . ex post facto Law . . . ."  These laws are challenged on the basis of the Ex Post Facto Clause of the Constitution and the Nebraska equivalent. (*E.g.*, Id. at CM/ECF pp. 15, 20, 51.)  Plaintiffs bring a facial and an as-applied challenge.  (Filing 329 at CM/ECF p. 60.)

Either in kind or degree, these three statutes are foreign to the federal Sex Offender Registration and Notification Act (SORNA).[11]  Initially, Neb. Rev. Stat. §

---

[10]Plaintiffs also attack these statutory provisions on numerous other grounds. To the degree that I grant summary judgment in favor of Plaintiffs, I decline to decide claims not mentioned in the text as it is unnecessary to do so.  To the degree that I require a trial, and deny the summary judgment motions of Plaintiffs and Defendants, the other claims not mentioned in the text regarding these statutes will also be resolved after trial.  The foregoing said, except for the claims discussed in the text, most (perhaps all) of Plaintiffs' other claims appear to be quite weak.

[11]*See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 590 (2006).  Title I of the Act, entitled the Sex Offender Registration and Notification Act ("SORNA"), creates a national sex offender registry law.  SORNA, together with two provisions added in 2008, that are codified with

29-4006(1)(k)&(s) requires an offender to disclose numerous details regarding his or her use of the Internet, particularly including "all blogs . . . to which the person has uploaded any content or posted any messages or information." SORNA has a counterpart but it is far more limited. *See* 42 U.S.C. § 16915a; *The National Guidelines for Sex Offender Registration*, 73 Fed. Reg. § 38030-01, Part VI (July 2, 2008), available at 2008 WL 2594934, *38055 (requiring that the information included in the registries "include all designations used by sex offenders *for purposes* of *routing* or *self-identification* in Internet communications or postings") (emphasis added). In addition, Neb. Rev. Stat. § 29-4006(2) imposes a consent to search and monitoring requirement on offenders who use the Internet. The consent to search and monitoring requirement apparently permits law enforcement officers to search homes, businesses and computers and install monitoring equipment on computers without any suspicion of criminal activity. Failure to give "consent" appears to be a felony. SORNA has no counterpart. Still further, Neb. Rev. Stat. § 28-322.05 makes it a crime for certain offenders to use social networking sites and instant messaging or chat room services that allow a person under 18 to access or use such sites or services.[12] SORNA has no counterpart.

I conclude that a trial is required to determine whether these three statutes, alone or collectively, violate the Ex Post Facto Clause of the Constitution (and the Nebraska equivalent) for (1) offenders who had served their time and were no longer under criminal justice supervision on January 1, 2010; and (2) offenders who had been sentenced prior to January 1, 2010, but who remained under criminal justice supervision on or after January 1, 2010.[13] A trial is required for both the facial and as

SORNA, may be found at 42 U.S.C. §§ 16901-16991.

[12]Definitions pertinent to this statute are found at Neb. Rev. Stat. § 29-4001.01 (West, Operative Jan. 1, 2010).

[13]There is some question about whether any of the Plaintiffs fit this later category and there is some question whether any Plaintiff will be under criminal justice supervision at the time of trial. See the discussion of these issues in the

-11-

applied Ex Post Facto challenges brought by Plaintiffs.  Accordingly, the motions for summary judgment submitted by Plaintiffs and Defendants will be denied.  A brief explanation follows.

In upholding SORNA against an Ex Post Facto challenge, the United States Court of Appeals for the Eighth Circuit has outlined the proper analysis. *United States v. May*, 535 F.3d 912 (8th Cir. 2008) (the application of the registration requirements of SORNA to a defendant who was registered as a sex offender pursuant to state law before SORNA's enactment, and who traveled to another state after SORNA's enactment, did not violate the Ex Post Facto Clause; the statute did not punish an individual for previously being convicted of a sex crime, but rather for not registering as a sex offender, or failing to update his registration after traveling in interstate commerce).

The analytic outlined by the Eighth Circuit is as follows:

1. Determine whether the legislature intended the subject statute to impose punishment for a pre-existing crime.  If so, the statute violates the Ex Post Facto Clause.

2. If the legislative intent was to enact a civil and non-punitive regulatory scheme, determine whether the statute is so punitive either in purpose or effect as to negate the legislative intention to deem it civil.  If so, the statute violates the Ex Post Facto Clause.  However, only the "clearest" proof will suffice in this instance.

*Id.* at 919-920 (citations omitted).

---

analysis of Plaintiffs' Fourth Amendment claims.  Counsel should follow my directions set out in that discussion regarding standing, mootness and ripeness questions as those questions relate to these Ex Post Facto claims.

As to the first level of analysis suggested by the Court of Appeals, there is evidence that the Nebraska legislator[14] who authored these (and other) provisions stated that he doubted his own objectivity and therefore his suitability to introduce this legislation. The legislator expressed "rage" and "revulsion" regarding persons who have "these convictions." In particular, while commenting upon recidivism, he stated that he did not "buy" the idea of "rehabilitation" or that "people could change . . . [i]n [this] area" and he did not "like the odds" that registrants would offend again. (Filing 319-3 at CM/ECF pp. 3-5, 14-16.)[15] Inasmuch as these statutory provisions are foreign to SORNA, and the foregoing comments, when read together with the far reaching and novel substance of these statutes, could be characterized as punitive in nature regarding offenders who had been sentenced and who had completed their supervision prior to the effective date or who had been sentenced prior to the effective date but remain under supervision thereafter,[16] I conclude that a trial is necessary to

---

[14]LB 97 §§ 14, 26 (2009) contained the provisions noted in the text. *See* Slip Law Copy available at http//:nebraskalegislature.gov/bills (use "LB 97" and "101st Legislature 1st and Second Sessions" as search terms). Senator Lautenbaugh was the "[p]rincipal [i]ntroducer" (filing 319-3 at CM/ECF p. 1) of LB 97 and he was asked by the Nebraska Attorney General to introduce the bill. (Filing 319-3 at CM/ECF p. 4.)

[15]These are not stray remarks. They cannot be dismissed as the rants of a rogue legislator. They were made by the man who was the principal sponsor of the challenged statutes and the specially chosen designate of the Nebraska Attorney General.

[16]A law violates the Ex Post Facto Clause when it applies to events occurring before the law's enactment and the law disadvantages the offender, such as by practically increasing the punishment the offender was subject to on the date of enactment. *See*, *e.g.,* *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (a statute retroactively canceling provisional release credits resulting in re-incarceration of the offender violated the Ex Post Facto Clause).

determine whether the legislature intended these three statutes to impose punishment such that these statute violate the Ex Post Facto Clause.[17]

As to the second level of analysis suggested by the Court of Appeals, these three provisions, apparently unique to the American legal system, are obviously onerous.  I also conclude that a trial is necessary to determine whether these statutes (separately or collectively) are so punitive either in purpose or effect as to negate any legislative intention to deem them civil.

In short, the factual record produced by Plaintiffs and Defendants in support of their motions is both lacking in detail and in dispute as to material matters. Therefore, Plaintiffs' Ex Post Facto claims regarding these three statutes require a trial.  An example will illustrate the point.

Factually, both sides have failed to produce a record that would allow me to determine how Neb. Rev. Stat. § 28-322.05 (making it a crime for certain offenders to use social networking sites and instant messaging or chat room services that allow a person under 18 to access or use such site or service) would actually impact particular Plaintiffs or offenders more generally.  Whether the challenge is "as-applied" or "facial," I must understand, as a factual matter, how the statute works. The parties have failed to give me an undisputed record upon which to judge that question.  Moreover, my independent research suggests that § 28-322.05 may have far reaching (and, perhaps, unintended) consequences.  I have attached to this opinion Attachment A.[18]  It gives numerous examples of sites that might plausibly be banned for offenders subject to the criminal provisions of Neb. Rev. Stat. § 28-322.05.  At

_____

[17]To be clear, it would be impossible to conclude that the entirety of Nebraska's new legislation was intended to be punitive in nature. In general, the record adequately establishes that Nebraska mainly intended to amend its law to comply with SORNA.

[18]Attachment A is solely intended to illustrate the void in the summary judgment record and nothing more.  It is up to counsel to present the facts.

-14-

trial, the parties would be well-advised to present evidence regarding how the ban works and how far it extends.  A similarly detailed factual exposition of both the workings and reach of the other statutes will also be required at trial in order to fairly judge the Ex Post Facto claims and defenses.

## II.

### Seventh and Eighth Causes of Action–Fourth Amendment–Regarding Neb. Rev. Stat. § 29-4006(2) (West, Operative Jan. 1, 2010)

Plaintiffs attack Neb. Rev. Stat. §29-4006(2) and the "consent to search" and "consent to monitoring" requirements.  Plaintiffs claim that these provisions violate the Fourth Amendment and Nebraska's equivalent constitutional provision. (Filing 329 at CM/ECF pp. 15-19, 53-54.)  They bring a facial and an as-applied challenge. (Id. at CM/ECF p. 59.)

A person who is required to register must supply that "person's remote communication device identifiers and addresses, including, but not limited to, all global unique identifiers, serial numbers, Internet protocol addresses, telephone numbers, and account numbers specific to the device[.]" Neb. Rev. Stat. § 29-4006(1)(k).  A registrant must also supply:

> All email addresses, instant messaging identifiers, chat room identifiers, global unique identifiers, and other Internet communication identifiers that the person uses or plans to use, all domain names registered by the registrant, and all blogs and Internet sites maintained by the person or to which the person has uploaded any content or posted any messages or information.

Neb. Rev. Stat. § 29-4006(1)(s).

Providing the foregoing information then triggers a broad "consent to search" and "consent to monitoring" requirement.  That is:

-15-

When the person provides any information under subdivision (1)(k) or (s) of this section, the registrant shall sign a consent form, provided by the law enforcement agency receiving this information, authorizing the:

(a) Search of all the computers or electronic communication devices possessed by the person; and
(b) Installation of hardware or software to monitor the person's Internet usage on all the computers or electronic communication devices possessed by the person.

Neb. Rev. Stat. § 29-4006(2).

A refusal to provide "consent" is a Class IV felony and a refusal is punishable by a prison sentence.  Neb. Rev. Stat. § 29-4011(1) ("Any person required to register under the Sex Offender Registration Act who violates the act is guilty of a Class IV felony.")  Such a felony is punishable by imprisonment of up to five years and a fine of up to $10,000.  Neb. Rev. Stat. § 28-105(1) (West, 2009).

## A. Persons Not Presently Under Probation, Parole or Court-Monitored Supervision

### 1. Search

Defendants concede that the "consent to search" provisions are unconstitutional regarding offenders who are no longer under supervision.[19]   To be specific, "Defendants acquiesce to entry of a permanent injunction prohibiting enforcement of the consent to search provision set forth in Neb. Rev. Stat. §29-4006(2) as against

---

[19]As a factual matter, there is no doubt that many of the Plaintiffs fit into this category; that is, many Plaintiffs were once on probation, parole or court-monitored supervision and must register as "sex offenders," but were not on probation, parole or court-monitored supervision at the time this provision became effective on January 1, 2010.  (*E.g.*, filing 330 at CM/ECF p. 1, Declaration of Doe 21: "In 2006, I was found guilty of third degree sexual assault . . . following a trial. . . . . I received a two-year probation sentence and was released after one year.")

individuals no longer on probation, parole, or other court-monitored supervision." (Filing 337 at CM/ECF p. 12.)[20]

Defendants' concession is well-founded because this portion of Nebraska's law clearly violates the Fourth Amendment rights of persons who are not presently on probation, parole or court-monitored supervision.  *See Doe v. Marion County*, 566 F. Supp. 2d 862, 883 (S.D. Ind. 2008)[21] (holding requirement in Indiana sex and violent offender registration statute that offenders not currently on parole or probation consent to warrantless searches of personal computers or devices with Internet capability at any time, or be subject to felony prosecution, violated Fourth Amendment and stating that Indiana's legislature had "taken an unprecedented step in stripping plaintiffs of their right to be secure in their homes, 'papers,' and personal effects")  Accordingly, summary judgment is granted in favor of Plaintiffs regarding those Plaintiffs who were not on probation, parole or court-monitored supervision on January 1, 2010.

### 2.  Monitoring

Defendants apparently *do not* concede that § 29-4006(2)(b) (providing that the execution of the consent also authorizes installation of hardware or software to monitor the person's Internet usage on all the computers or electronic communication devices possessed by that person) is unconstitutional as to persons who are no longer on probation, parole or court-monitored supervision.  During the preliminary injunction

---

[20]Nebraska's new law contains a severability clause.  A slightly more detailed discussion of this severability provision may be found in the preliminary injunction ruling.  (Filing 92 at CM/ECF p. 12, n.8)

[21]The author of this opinion, Judge David Hamilton, was elevated to the United States Court of Appeals for the Seventh Circuit on November 23, 2009.  Federal Judicial Center, *History of the Federal Judiciary*, available at http://www.fjc.gov/history/home.nsf (click on "Judges of the United States Courts" and "Biographical Directory of Federal Judges" and insert search term "Hamilton, David Frank").

hearing, the following exchange took place between the undersigned and counsel for Defendants:

> THE COURT:  . . . [F]or those plaintiffs who are not presently on probation or parole, including those who are not subject to a lifetime of supervision, the State of Nebraska does not -- does not object to the imposition of a preliminary injunction with respect to the consent to search requirement?
>
> MR. COOKSON:  That's correct, Your Honor.
>
> THE COURT:  Okay.  That concession does not extend, as I understand it, to the -- to the -- to the monitoring question, the installation of software and hardware?
>
> MR. COOKSON:  That's correct, Your Honor.
>
> THE COURT:  Do you have any case law to support the -- the point of view that that particular provision is...
>
> MR. COOKSON:  Yes, just one second, Your Honor.  That would be on page 23.
>
> THE COURT:  Uh-huh.
>
> MR. COOKSON:  And 24 of our brief.
>
> THE COURT:  Yeah.
>
> MR. COOKSON:  It is --
>
> THE COURT:  Is there any federal case law that says that, for someone who is not on probation or parole, that you can require that they consent to the installation of software or hardware on their computers?
>
> MR. COOKSON:  No, Your Honor.  I believe that's a first impression issue.

-18-

(Filing 326 at CM/ECF p. 10.)

Neb. Rev. Stat. § 29-4006(2)(b) is plainly unconstitutional under the Fourth Amendment as it pertains to persons who are no longer on probation, parole or court-monitored supervision. Without a "consent to search," Nebraska would have no ability to enter homes or business or other places where Plaintiffs have a reasonable expectation of privacy or to "[i]nstall[] . . . hardware or software to monitor the person's Internet usage on all the computers or electronic communication devices possessed by the person." In short, a cop would have to *search for* computers and then (at least to some degree) *search in* computers[22] to install monitors. *Doe,* 566 F. Supp. 2d at 881 ("[I]f the defendants' intended monitoring of the plaintiffs' computers and internet use would not amount to a search under the Fourth Amendment, then the defendants do not need [the challenged statute] or the plaintiffs' consent at all").

Thus, the identical Fourth Amendment analysis that drove Judge Hamilton's decision in *Doe, id.* at 874, 878-88, applies equally to the "monitoring" provision of Nebraska's statute. When that analysis is applied, this provision of Nebraska law fails to meet the requirements of the Fourth Amendment because (1) it allows entry by law enforcement officers into places where there is a reasonable expectation of privacy by means of a coerced consent (2) followed by the installation of monitoring equipment on property for which there is a reasonable expectation of privacy by means of a coerced consent (3) without a warrant issued by a neutral judge (4) and without a showing of probable cause. *Id.* at 874. ("[t]he Fourth Amendment protects the privacy of Americans by placing a neutral judicial officer between the police and the privacy of the home and papers (and now computers), by requiring a warrant based on probable cause, and by requiring that the warrant be specific. . . . To suggest that removing a neutral judicial officer as a barrier does not significantly impair a citizen's privacy in

---

[22]This search might occur by actually looking at the guts of the computer or, under certain circumstances, by using technology to do the same thing. In either case, the computer would be searched.

-19-

his home is to imply that the warrant requirement is no big deal, and that it imposes no meaningful restraints upon law enforcement. The 'most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption ... that the exigencies of the situation made that course imperative.' ") (citations omitted).

Several observations are in order.  Initially, cases dealing with installing equipment to monitor persons during periods of court or parole supervision are not persuasive.  Those cases are inapposite because they either (1) involve a judicial determination based on an individualized assessment of need or (2) deal with persons who have a lessened expectation of privacy because they have not yet been released from criminal justice supervision.  *Id.* at 882, n.7.

Furthermore, Defendants have cited no case where a "sex offender" who has completed his or her punishment and supervision for a sex crime was held to have a weaker claim to Fourth Amendment protection than ordinary citizens.  Without precedent (or at least an analogous and well-reasoned case), I am unwilling to vitiate the Fourth Amendment for individuals who have paid their debt to society.  *Id.* at 883 ("[a] person's status as a felon who is no longer under any form of punitive supervision therefore does not permit the government to search his home and belongings without a warrant.").

Finally, to the extent that Nebraska contends this portion of the statute can be saved by a limiting judicial construction, I reject such an approach as wholly inappropriate.  The statue is unambiguous.  That is, a person who has served his or her probationary or parole term and prison or jail time for a sex offense must "consent" to the installation of monitoring equipment on computers he or she possesses.  Such a consent then authorizes a search incident thereto to find the computers in places where

the person who gave the consent has a reasonable expectation of privacy and is followed by the installation of monitoring equipment on computers for which there is a reasonable expectation of privacy.

As Chief Justice Roberts has recently reiterated regarding an unambiguous statute, the federal courts "'may impose a limiting construction on a statute *only* if it is 'readily susceptible' to such a construction'" and the federal courts "'will not rewrite a . . . law to conform it to constitutional requirements' . . . ." *United States v. Stevens*, 130 S. Ct. 1577, 1591 (2010) (federal statute criminalizing the commercial creation, sale, or possession of depictions of animal cruelty was substantially overbroad, and thus, the statute was facially invalid under the First Amendment protection of speech) (citation omitted) (emphasis added). Nebraska follows that familiar rule as well. *See, e.g.*, *State v. Woods*, 587 N.W.2d 122, 128 (Neb. 1998) (holding that notice-of-alibi statute would not be construed to allow a court to order the disclosure of the identity of the defendant's alibi witness prior to trial; stating that a statute is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous).

Here, the challenged provision needs no construction. The words are (chillingly) plain.

### *(3) Summary*

The consent to search and the consent to monitoring provisions of Neb. Rev. Stat. § 29-4006(2) violate the Fourth Amendment both facially[23] and as applied as those provisions pertain to previously convicted "sex offenders" who were not on probation, parole, or court-monitored supervision on January 1, 2010, because they had

---

[23]With respect to sex offenders who were not on probation, parole or court-monitored supervision on January 1, 2010, there is no set of circumstances where the statute would satisfy the Fourth Amendment.

served their time.  Since Defendants have repeatedly asserted that Nebraska law mirrors the federal constitution, (*e.g.*, filing 335 at CM/ECF pp. 4-5) it follows that the law violates the Nebraska constitution as well for this category of "sex offenders."  *See* Neb. Const. art. I, § 7 (Fourth Amendment equivalent).

With the previous discussion in mind, the parties are directed to provide me with a stipulation designating those Plaintiffs who fit within this category–"sex offenders" who were not on probation, parole or court-monitored supervision as of January 1, 2010–together with the date when the offender was no longer under criminal justice supervision.  That stipulation shall be provided within thirty days after the issuance of this Memorandum and Order.  If, for some reason, the parties cannot reach agreement, they shall arrange a telephone conference with me by contacting my judicial assistant.

Given the foregoing determination, it is unnecessary to decide whether the challenged statute violates the constitutional rights of persons associated with this group of Plaintiffs (like spouses, mothers or employers).  Stated more simply, if those Plaintiffs previously convicted of a "sex offense" but who have served their time are not obligated to give a consent to search and consent to the installation of computer monitors, then those persons associated with such Plaintiffs have nothing to fear.

### B.  Persons Presently on Probation, Parole or Court-Monitored Supervision

Plaintiffs also argue that the statutory consent to "search" and consent to "monitoring" requirements violate the protections afforded by both the Fourth Amendment, and the Nebraska equivalent, to persons on probation, parole or court-monitored supervision. (Filing 329 at CM/ECF pp. 195-203.)  Additionally, Plaintiffs argue that the Fourth Amendment privacy interests of persons associated with these offenders are violated by these provisions.  (*E.g.*, *id.* at CM/ECF pp. 45-49.)

The amended complaint asserts both "facial" and "as-applied" challenges.  (*Id.* at CM/ECF pp. 59-60.)   In addition, the amended complaint sets out specific

allegations by each Plaintiff regarding the harm he or she may suffer as a result of the new law. Some Plaintiffs complain of harm associated with this consent to search provision. (*Id.* at CM/ECF pp. 24-49.) In particular, and for example, the amended complaint describes a Plaintiff who is "still on probation,"[24] who uses a computer for work and whose family utilizes a website that could be called a social networking site to keep in touch with family and friends. (*Id.* at CM/ECF p. 35.) Defendants have denied the individual Plaintiffs' specific allegations of the amended complaint because Defendants lack sufficient knowledge or information. (Filing 333 at CM/ECF pp. 13-17.)[25] Furthermore, the parties have not agreed on a general statement of undisputed facts or a particularized statement of facts regarding the specific claims of each of the Plaintiffs.

After careful consideration, Plaintiffs' motion for summary judgment, as well as Defendants' motion for summary judgment, are denied regarding the statutory consent to "search," and consent to "monitoring" requirements pertaining to persons who have been convicted of sex crimes and who are presently on probation, parole or court-monitored supervision and also respecting persons associated with such registrants. As briefly explained in the following discussion, a trial is necessary to resolve the constitutionality of this section of Nebraska's new law as applied to this category of offenders and those associated with them.

The Supreme Court has declared that "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.' " *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). But, like most things, context is critical when evaluating principles enunciated by the Supreme Court. In *Griffin*, the Court upheld a Wisconsin law permitting any probation officer to search a probationer's home without a warrant so long as there were "reasonable grounds" to

---

[24]But, as discussed later, there may be mootness, ripeness and standing problems despite this allegation.

[25]On motion of Defendants, Judge Zwart stayed discovery. (Filing 328.)

support a search. *Id.* The Court explained that "the special needs of Wisconsin's probation system make the warrant requirement impracticable and justify replacement of the standard of probable cause by 'reasonable grounds.' " *Id.* at 876.

Subsequently, in *United States v. Knights*, 534 U.S. 112, 121(2001), the Court elected not to apply the "special needs" doctrine in upholding a warrantless search of a probationer that was supported by "reasonable suspicion." Rather, the Court held that the search was reasonable "under [the] general Fourth Amendment approach of 'examining the totality of the circumstances.' " *Id.* at 118 (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). In explaining its decision, the Court noted that the probationer had signed a probation order agreeing to submit to a search of his person and property by a law enforcement officer "at any[ ]time, with or without a search warrant, warrant of arrest or reasonable cause." *Id.* at 118. The Court concluded that ''the balance of these considerations requires no more than reasonable suspicion,'' ultimately holding that ''the warrantless search . . . , supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment.'' *Id.* at 121–122. However, the Court explicitly refused to consider whether Knights' acceptance of the search condition constituted a voluntary consent under the requirements of *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). *Id.* at 118.

In *Samson v. California*, 547 U.S. 843, 852 (2006), the Court applied a "totality of the circumstances" analysis in upholding a suspicionless search of a parolee conducted pursuant to a California law providing that, as a condition for release from prison, every prisoner eligible for state parole agreed to be subject to a search or seizure by a parole officer with or without a search warrant and with or without cause. After reiterating *Knights'* holding that "probationers 'do not enjoy the absolute liberty to which every citizen is entitled,' " *id.* at 849 (quoting *Knights*, 534 U.S. at 119), the Court explained that "[e]xamining the totality of the circumstances pertaining to petitioner's status as a parolee, ... including the plain terms of the parole search condition, ... petitioner did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852 (citations omitted). Just as in *Knights*, the Court

-24-

explicitly refused to consider whether acceptance of the parole condition by an inmate in order to gain his release from prison was a voluntary consent under *Schneckloth*. *Id.* at 852, n. 3.

While the foregoing cases dealt with persons on probation or parole, it is worth remembering that some of the Plaintiffs are not sex offenders but they may be impacted by the requirement that an offender with whom they are associated is required to give consent. In that regard, the Supreme Court has made plain that a warrantless search of marital residence, on the basis of consent given to police by a defendant's wife, was an unreasonable and invalid search as to the defendant, who was physically present and expressly refused to consent. *Georgia v. Randolph*, 547 U.S. 103, 123 (2006). It is clear, therefore, in some circumstances, Fourth Amendment protections exist even though one party has given a consent that might otherwise constitute a waiver of Fourth Amendment rights regarding the property subject to the waiver. Moreover, the *Randolph* case illustrates how the consent of one party may be used by law enforcement as a justification to impair the Fourth Amendment rights of another party.

After considering the foregoing cases (and others), and having not received any comparable case law from the parties, I will undertake an examination of the statute within a discrete factual context presented by a trial in order assess the relative interests of sex offenders who are now on probation, parole or court-monitored supervision, persons associated with those offenders, and the State of Nebraska. With respect to the necessity of a trial, one must appreciate that Plaintiffs bring both a facial and an as-applied challenge and, additionally, that the parties have not agreed on a general statement of undisputed facts or a particularized statement of undisputed facts regarding the specific claims of each of the Plaintiffs. While it might be possible to

resolve the facial challenge without a trial,[26] since a trial is required for the as-applied challenge, it makes more sense to resolve both challenges after trial.

There are several important caveats that apply to a trial respecting the category of persons presently on probation, parole or court-monitored supervision. Initially, the record may suggest that *none* of the Plaintiffs will be on probation, parole or court-monitored supervision at the time of trial because they will have served their time.[27]  If it turns out that none of the Plaintiffs will be on probation, parole or court-monitored supervision because they have served their time, then the "as-applied" challenge to the statute regarding persons on probation, parole or court-monitored

---

[26]As I have noted in other contexts, for district judges who must decide whether trials are necessary, it is hard to differentiate between facial and as-applied challenges where both types of challenges are asserted.  This is particularly true when First Amendment claims (where a statute may be voided without a showing that it is unconstitutional in every application) are interwoven with other constitutional claims. In this regard, Plaintiffs who are mothers, spouses and employers of sex offenders presently on probation, parole or court-monitored supervision (if any) may be claiming that the "consent" provision chills their First Amendment right of free speech when jointly using computers and the Internet.  That issue will be resolved at trial as well.

[27]At the preliminary injunction hearing, Mr. Dornan, Plaintiffs' counsel, stated the following:

> THE COURT:  . . . . And secondly, Mr. Dornan, are at least some of the plaintiffs in this group people who have been convicted of sexual offenses but who have served their time and are no longer on probation or parole?

> MR. DORNAN:  My understanding, Judge, is that all of the numbered Does except for number 12 fit in that status. My understanding of number 12 is that he is on supervised release until January the 7th of 2010.

(Filing 326 at CM/ECF p. 7.)

supervision is probably moot, or at least not ripe, because none of the Plaintiffs fit into that category and there is no threat to them.[28] Additionally, if none of the Plaintiffs are on probation, parole, or court-monitored supervision at the time of trial, one wonders whether Plaintiffs have standing to assert a facial challenge to the extent the statute pertains to persons who are probation, parole or court-monitored supervision.

The parties have also given too little thought to another potential class of persons. The parties do not adequately address the class of persons who have not yet committed a sex offense, but who may commit such an offense in the future and thus become subject to this law. Do Plaintiffs purport to represent such a group? If they do, one must ask whether Plaintiffs have standing to assert a claim for that group. Because of these concerns, the lawyers are directed to confer. After that, they should address these matters (preferably by stipulation) as the case moves forward.

## C.  Fourth Amendment–Recapitulation

I have decided that on Fourth Amendment grounds and the equivalent provision of the Nebraska Constitution, Neb. Rev. Stat. § 29-4006(2) is unconstitutional as it regards Plaintiffs who were previously convicted of sex crimes but who were not on probation, parole or court-monitored supervision on or after January 1, 2010. In this regard, Plaintiffs' motion for summary judgment is granted and Defendants' motion for summary judgment is denied. For persons who were previously convicted of sex crimes and who were on probation, parole or court-monitored supervision on or after January 1, 2010, a trial is required to determine the constitutionality of Neb. Rev. Stat. § 29-4006(2) under the Fourth Amendment and the equivalent provision of the Nebraska Constitution. In this regard, Plaintiffs' motion for summary judgment and Defendants' motion for summary judgment are denied.

---

[28]The problem of mootness and ripeness would seem to be exacerbated by the ruling just announced that the statute is unconstitutional as to Plaintiffs who have served their time and who are no longer under supervision.

### *III.*

### *Ninth and Tenth Causes of Action–Due Process–Regarding*
### *Neb. Rev. Stat. § 28-322.05 (West, Operative Jan. 1, 2010)*

Plaintiffs attack Neb. Rev. Stat. § 28-322.05, which makes it a crime for certain offenders to use portions of the Internet.  Plaintiffs claim that this statute violates the Due Process Clause of the Fourteenth Amendment and Nebraska's equivalent constitutional provision. (Filing 329 at CM/ECF pp. 20-21, 54-55, n. 12.)  They bring a facial and an as-applied challenge.  (*Id.* at CM/ECF p. 59.)

In its entirety, Neb. Rev. Stat. § 28-322.05 states:

> (1)   Any person required to register under the Sex Offender Registration Act who is required to register because of a conviction for one or more of the following offenses, including any substantially equivalent offense committed in another state, territory, commonwealth, or other jurisdiction of the United States, and who knowingly and intentionally uses a social networking web site, instant messaging, or chat room service that allows a person who is less than eighteen years of age to access or use its social networking web site, instant messaging, or chat room service, commits the offense of unlawful use of the Internet by a prohibited sex offender:
>
> (a)   Kidnapping of a minor pursuant to section 28-313;
>
> (b)   Sexual assault of a child in the first degree pursuant to section 28-319.01;
>
> (c)   Sexual assault of a child in the second or third degree pursuant to section 28-320.01;
>
> (d)   Incest of a minor pursuant to section 28-703;
>
> (e)   Pandering of a minor pursuant to section 28-802;

(f)     Visual depiction of sexually explicit conduct of a child pursuant to section 28-1463.03 or 28-1463.05;

(g)     Possessing any visual depiction of sexually explicit conduct pursuant to section 28-813.01;

(h)     Criminal child enticement pursuant to section 28-311;

(i)     Child enticement by means of an electronic communication device pursuant to section 28-320.02;

(j)     Enticement by electronic communication device pursuant to section 28-833; or

(k)     An attempt or conspiracy to commit an offense listed in subdivisions (1)(a) through (1)(j) of this section.

(2)     Unlawful use of the Internet by a prohibited sex offender is a Class I misdemeanor for a first offense.  Any second or subsequent conviction under this section is a Class IIIA felony.

Relevant definitions[29] are found in Neb. Rev. Stat. § 29-4001.01, to wit:

---

[29]I reject out of hand Plaintiffs' assertion that these definitions do not apply to the criminal statute because the definitions were codified in another portion of the Nebraska statutes.  While it is true that these provisions were codified in different sections, the criminal provision discussed in the text and the definitions discussed in the text were contained in the same legislation. *See* LB 97 §§ 14, 24 (2009),  Slip Law Copy available at http://nebraskalegislature.gov/bills (use "LB 97" and "101st Legislature First and Second Sessions" as search terms).  Nebraska follows the standard rule of construction that statutes are construed together when they relate to the same subject matter.  *See, e.g.*, *Fontenelle Equip., Inc. v. Pattlen Enter., Inc.*, 629 N.W.2d 534, 540 (Neb. 2001).  I will follow that customary rule here because these statutes relate to the same subject matter.

(3)     Chat room means a web site or server space on the Internet or communication network primarily designated for the virtually instantaneous exchange of text or voice transmissions or computer file attachments amongst two or more computers or electronic communication device users;

. . .

(10)    Instant messaging means a direct, dedicated, and private communication service, accessed with a computer or electronic communication device, that enables a user of the service to send and receive virtually instantaneous text transmissions or computer file attachments to other selected users of the service through the Internet or a computer communications network;

. . .

(13)    Social networking web site means a web page or collection of web sites contained on the Internet (a) that enables users or subscribers to create, display, and maintain a profile or Internet domain containing biographical data, personal information, photos, or other types of media, (b) that can be searched, viewed, or accessed by other users or visitors to the web site, with or without the creator's permission, consent, invitation, or authorization, and © that may permit some form of communication, such as direct comment on the profile page, instant messaging, or email, between the creator of the profile and users who have viewed or accessed the creator's profile;

In particular, Plaintiffs claim that this criminal statute is "void for vagueness." As I next briefly explain, I shall deny Plaintiffs' motion for summary judgment, and Defendants' motion for summary judgment, because the record is inadequate to resolve this claim without a trial.

First, there is good reason to believe that some of the Plaintiffs who are convicted offenders would be subject to this criminal statute as they have qualifying convictions and regularly use computers for work and otherwise. (*E.g.*, filing 6-1 at CM/ECF pp. 23-25; filing 346-11 at CM/ECF pp. 7-8.)[30] There is also good reason to believe that these Plaintiffs, their coworkers and family members would be adversely impacted by the inability of such offenders to use portions of the Internet while attempting to comply with this statute. (*E.g.*, filing 6-1 at CM/ECF p. 23-24.)

Second, the vagueness doctrine is not an outgrowth of the First Amendment (although it is applied in cases where there are First Amendment issues), but rather the doctrine is a function of the Due Process Clause of the Fifth Amendment.[31] *See*, *e.g.*, *United States v. Williams*, 533 U.S. 285, 304 (2008) (Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act provision criminalizing the pandering or solicitation of child pornography is not overbroad under the First Amendment, and that provision also is not impermissibly vague under the Due

---

[30]One of Plaintiffs' attorneys has submitted a signed and sworn affidavit that he has "the signature pages of the [declarations regarding) Does 1 through 20 and A through K on file, and each of the declarations, while submitted anonymously, has been signed under penalty of perjury." (Filing 7.) To the extent that Defendants object to the declarations of Doe 12 (*see* filing 349) that objection is overruled.

[31]The Fourteenth Amendment's reference in Section 1 to "due process of law" incorporates the "void for vagueness" notion found in the Fifth Amendment and thus makes that doctrine applicable to the states. *See*, *e.g.*, *Kolender v. Lawson*, 461 U.S. 352 (1983) (California statute requiring persons who loiter or wander on streets to provide "credible and reliable" identification and to account for their presence when requested by peace officer under circumstances that would justify stop under standards of *Terry v. Ohio*, with "credible and reliable" identification being defined as "carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself," was unconstitutionally vague within meaning of the due process clause for failing to clarify what was contemplated by requirement that suspect provide "credible and reliable" identification).

Process Clause). A criminal statute fails to comport with due process if the statute fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so lacking in standards that it authorizes or encourages seriously discriminatory enforcement. *Id.*; *See also*, *Skilling v. United States,* — S.Ct —, —, 2010 WL2518587 at * 30 (2010)*; *Hill v. Colorado,* 530 U.S. 703, 732 (2000)*; *Grayned v. City of Rockford,* 408 U.S. 104, 108-109 (1972)*. Importantly, "what renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams,* 533 U.S. at 306.

Third, a trial is necessary on this claim because both parties have failed to present an undisputed record of material facts showing how this statute actually works. In particular, but not by way of limitation, I do not have a factual record that is undisputed showing how an offender would know whether using a particular site or service is banned because that site or service "*allows* a person who is less than eighteen years of age to access or use" the site or service.

My independent research (Attachment A) shows that certain sites prohibit, as a matter of policy, use by persons whose ages are 18 or under, but, as a matter of practice, allow access to the sites simply by typing in any qualifying birthday. (*E.g.*, Attachment A at p. 20 (example 2), regarding "travel hospitality."[32]) If a lot of minors actually log into such a site, has such a site "allowed" the youngsters to use the site because the site has done nothing to stop them? How does an offender know whether a site or service "allows a person who is less than" 18 to "access or use" the site or service? What does "allows" mean in practice? Does it only cover sites or services that explicitly permit use by youngsters as a matter of stated policy? If so, does an offender violate the statute if the offender fails to look for such a policy as a part of his "use"? Does the word

---

[32]Again, I emphasize that Attachment A is solely intended to illustrate the void in the summary judgment record and for no other purpose. It is up to the lawyers to present the facts.

"allows" include any site or service that lacks a policy but actually permits youngsters, as a matter of practice, to use the site or service? If so, how is the offender to determine whether young people are "allowed" to use the site or service as a matter of practice? If a site has no age restriction and thus "allows" minors to "access" the site, but no minors actually "use" the site, has an offender who "uses" the site committed a crime when everyone else who "uses" the site is an adult? Other examples abound,[33] but the point is made. I need to know how this statute works in practice in order to judge the "void for vagueness" claim both facially and as-applied, and the present record is insufficient. Moreover, I need to know how the statute is likely to be applied in practice to judge whether a limiting construction could be used to save the statute. *Cf. Skilling*, — S.Ct. at —, 2010 WL2518587 at * 23 (before applying a limiting construction to avoid a "void for vagueness" challenge to an "honest services" prosecution under 18 U.S.C. § 1346, the Court said: "[t]o place Skilling's [void for vagueness] constitutional challenge in context, we first review the origin and subsequent application of the honest-services doctrine").

Given the myriad of Internet options, the parties would be well-advised to present a fair sample of the relevant universe at trial. In this regard, I encourage the parties to think about the use of a joint expert to present objective testimony on this claim and the other "Internet" claims that will be resolved at trial. A person who is both legally and technically trained would be ideal. Someone like Professor Eugene Volokh, who holds a degree in mathematics and computer science, who worked for 12 years as a computer programmer, and who is a highly regarded legal academic might be such a person. *See Eugene Volokh Biography*, available at www.law.ucla.edu. And, to be frank, rather than dueling experts, I would appreciate hearing from someone who has no particular allegiance to the positions of either side. Thus, I strongly suggest that the parties

---

[33]For example, *iGoogle* appears to combine a browser, email capability, and chat capability (among other things) into *one* personalized platform. Does an offender who "uses" that personalized platform run afoul of the criminal statute when persons under the age of 18 are allowed to access Google chat capabilities even if the offender never clicks on the chat feature on his personalized *iGoogle* platform?

consider jointly hiring an expert.  Again, however, it is the lawyers' responsibility to present the evidence, and I will respect their decisions.[34]

***IV.***

***Fourteenth and Fifteenth Causes of Action–First Amendment–Regarding Neb. Rev. Stat. § 29-4006(1)(k)&(s) (West, Operative Jan. 1, 2010) and Neb. Rev. Stat. § 28-322.05 (West Operative Jan. 1, 2010)***

Plaintiffs attack section 29-4006(1)(k)&(s) and section 28-322.05 because the requirement that registrants must disclose information about Internet use violates their right to freedom of speech guaranteed by the First Amendment (and the Nebraska equivalent) and because the partial ban on Internet use by certain offenders, upon pain of criminal conviction, violates those speech rights as well. (*E.g.*, filing 329 at CM/ECF pp. 17, 56-57.)  Plaintiffs bring both a facial and an as-applied challenge.  (Id. at CM/ECF p. 60.)

A person who is required to register must supply their "remote communication device identifiers and addresses, including, but not limited to, all global unique identifiers, serial numbers, Internet protocol addresses, telephone numbers, and account numbers specific to the device[.]" Neb. Rev. Stat. § 29-4006(1)(k).  A registrant must also supply:

> All email addresses, instant messaging identifiers, chat room identifiers, global unique identifiers, and other Internet communication identifiers that the person uses or plans to use, all domain names registered by the registrant, *and all blogs* and Internet sites maintained by the person or *to which the person has uploaded any content or posted any messages or information.*

Neb. Rev. Stat. § 29-4006(1)(s) (emphasis added).

-----

[34]I have no present intention of engaging an expert on my own.

In pertinent part, Neb. Rev. Stat. § 28-322.05 significantly restricts Internet use by some offenders and states the following:

> (1)     Any person required to register under the Sex Offender Registration Act who is required to register because of a conviction for one or more of the following offenses, including any substantially equivalent offense committed in another state, territory, commonwealth, or other jurisdiction of the United States, and who knowingly and intentionally uses a social networking web site, instant messaging, or chat room service *that allows a person who is less than eighteen years of age to access or use its social networking web site, instant messaging, or chat room service*, commits the offense of unlawful use of the Internet by a prohibited sex offender:
>
> [listing specific offenses] . . .

I find and conclude that a trial is required regarding the First Amendment challenges to these two statutes. Accordingly, I will deny the motions for summary judgement submitted by both parties. I do so for essentially the same reasons that I have previously decided a trial is necessary. The parties have not given me an undisputed record of material facts that explains how these two statutes would actually work in practice and without such a record I cannot determine the implications of this statute on Plaintiffs' First Amendment rights. Once again, I refer the parties to Attachment A as an example of the void in this record. Briefly, I next explain in somewhat more detail why a trial is required.

People who are convicted of crimes, even felony crimes related to children, do not forfeit their First Amendment right to speak by accessing the Internet. *See*, *e.g.*, *United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005) (condition of supervised release, imposed upon a man who had been convicted of receiving and possessing child pornography, which completely barred defendant's access to computers and the Internet was a greater deprivation of defendant's First Amendment rights than was reasonable). Indeed, the Eighth Circuit Court of Appeals has described Internet access as "an important medium of communication, commerce and information-gathering" and has

-35-

required that restrictions imposed for criminal justice supervision purposes be "narrowly-tailored." *Id.* The requirement that restrictions upon the speech of a sex offender must be narrowly tailored[35] applies equally to the *civil regulation* of sex offenders who use the Internet. *See*, *e.g.*, *White v. Baker*, 2010 WL 1009758 (N.D. Ga., March 3, 2010) (requirement for former sexual offender to provide his Internet e-mail addresses, usernames, and passwords to law enforcement personnel was not sufficiently narrow to accomplish state's legitimate interest in protecting children from Internet predators, in violation of offender's anonymous First Amendment free speech rights, where there was possibility of public disclosure and broad use of that information and, further, offender had to report user names and passwords used on "interactive online forums" when that term arguably included forums (such as blogs) in which protected speech occurred).

A content-neutral regulation of speech is permitted *if* the regulation is narrowly tailored to serve a significant governmental interest, and *if* it leaves open ample alternative channels for communication of information. *See*, *e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). It is immaterial that the government's interest might be adequately served by some less-speech-restrictive alternative. *Id.* at 798. However, this standard "does not mean that a . . . regulation may burden more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden does not serve to advance its goals." *Id.* at 799.

Several examples will show why a trial is necessary.[36] In particular, the examples illustrate the need for concrete facts regarding the "narrowly tailored" requirement.

------------------------------------------------------------

[35]I assume at this point in the litigation that these statutes should be deemed "content neutral" for the purposes of First Amendment analysis.

[36]By providing examples, I do not mean to suggest that these examples are the only objects of my concern or even the most important. They are merely illustrations.

*Example 1*: Considering Neb. Rev. Stat. § 29-4006(1)(s), one wonders whether a sex offender's posting to a blog site maintained by a law professor for the purpose of discussing sentencing issues,[37] where the posting decried sex offender registration laws, would be covered by the statute and thus reportable.  If so, one wonders whether the foregoing statute is narrowly tailored.

*Example 2:* Considering Neb. Rev. Stat. § 28-322.05, one wonders what the word "allows" means.  In that same vein, one wonders whether a site that allows users to connect with individuals who speak different languages for the purposes of enhancing language learning as native speakers and to help non-native speakers improve their language skills is off limits because persons over the age of 13 can, as a matter of the site's policy, access the site.[38]  If so, one wonders whether the foregoing statute is narrowly tailored.

*Example 3*:  Doe 35 is probably covered by the offenses listed in Neb. Rev. Stat. § 28-322.05 because, at 23 years of age and after having consensual sex (once) with a 14 year old female, he was convicted of "child molestation" under Washington law.[39]  (Filing 330 at CM/ECF p. 33.)  There is no indication that Doe 35 used a computer to commit his crime.   If it is true that Doe 35 did not use a computer to commit his crime and if it is also true that he is subject to the ban found in section 28-322.05, one wonders whether the statute as applied to him and others like him is narrowly tailored.  *Cf.*  *Crume*, 422 F.3d 728, 733 (stating that "we are particularly reluctant to uphold sweeping restrictions on important constitutional rights[,]" and noting that "the record

---

[37]*See*, *e.g.*, Douglas A. Berman, *Sentencing Law and Policy*, available at http://sentencing.typepad.com/sentencing_law_and_policy/.

[38]*See* Attachment A at page 21 (example 3).

[39]Neb. Rev. Stat. § 28-319.01 (West 2009) is Nebraska's "statutory rape" law. The offense described in § 28-319.01 is a listed offense under the provisions of Neb. Rev. Stat. § 28-322.05(b).   Neb. Rev. Stat. § 28-322.05  pertains not only to listed offenses but also to "substantially equivalent offenses" committed in other states.  *Id*.

-37-

is devoid of evidence that [the defendant] ever used his computer beyond simply possessing child pornography[,]" the Court of Appeals reversed a "broad ban" so "the district court can impose a more narrowly-tailored restriction"); *United States v. Mark, 425 F.3d 505, 509 (8th Cir. 2005)* (citing and following *Crume*; remanding for a determination whether special supervised release condition completely barring defendant from Internet access was the least restrictive means reasonably necessary to deter further criminal conduct and protect the public).

## PART TWO–ALL OTHER SECTIONS OF NEBRASKA'S NEW LAW ARE CONSTITUTIONAL[40]

Federal courts, including the United States Court of Appeals for the Eighth Circuit, have consistently upheld SORNA as against claims that it is unconstitutional. *See*, *e.g.*, *United States v. May, 535 F.3d 912 (8th Cir. 2008)* (holding that SORNA does not violate the Ex Post Facto Clause, the Commerce Clause, or the non-delegation doctrine); *United States v. Howell, 552 F.3d 709, 717 (8th Cir. 2009)* (finding that section of SORNA containing underlying registration requirements was valid exercise of congressional power under Necessary and Proper Clause; registration requirements were appropriate and reasonably adapted means by Congress to attain legitimate end of monitoring and regulating interstate movement of sex offenders); *United States v. Waddle,    F.3d    , 2010 WL 2852920 (8th Cir. July 22, 2010)* (adhering to *May*).

## I.

## *First and Second Causes of Action–Ex Post Facto Claim*

---

[40] To be clear, in Part Two of this opinion I consider all statutory provisions that were enacted or amended by LB 97 and LB 285, *except* Neb. Rev. Stat. §§ 29-4006(1)(k)&(s), 29-4006(2), and 28-322.05. My rulings on Plaintiffs' claims in Part Two do not apply to those statutory provisions, which are discussed separately in Part One of this opinion.

"Both U.S. Const. art. I, § 10, cl. 1, and Neb. Const. art. I, § 16, provide that no ex post facto law shall be passed." *Slansky v. Nebraska State Patrol*, 685 N.W.2d 335, 350 (Neb. 2004). The Nebraska Supreme Court "ordinarily construes Nebraska's ex post facto clause to provide no greater protections than those guaranteed by the federal Constitution." *Id.* (citing *State v. Worm*, 680 N.W.2d 151 (Neb. 2004), *State v. Urbano*, 589 N.W.2d 144 (Neb. 1999)). "[U]nder the Ex Post Facto Clause, the retroactive application of civil disabilities and sanctions is permitted; only retroactive criminal punishment for past acts is prohibited." *Id.*

Plaintiffs claim that "[s]ome of the previously-held statuses, rights, or abilities [they have been] deprived [of] by virtue of the retroactive application of the New Act include:

> a. Ability to challenge the need for global notification on the Internet through the State Patrol website, Neb. Rev. Stat. § 29-4013(2)(b) (Rev. 2007);

> b. Status as a low or moderate risk registrant as determined by the State using an individualized risk assessment tool, and corresponding level of public notification, Neb. Rev. Stat. § 29- 4013(2)(c) (Rev. 2007);

> c. Limited ability to expunge registration information after successful completion of the registration period, Neb. Rev. Stat. § 29-4010 (Rev. 2002);

> d. Right to the confidentiality of the registry information, Neb. Rev. Stat. § 29-4009 (Rev. 2006);

> e. Ability to have the sentencing court exempt certain defendants from the obligations of registration, Neb. Rev. Stat. § 29-4003(2) (Rev. 2006);

> f. Right to rely on the finality of the sentence and criminal process; and

> g. Right to rely on the plea agreement entered into by some registrants."

(Filing 345, CM/ECF pp. 6-7, ¶ 4.)

Plaintiffs also claim that "[i]n addition to those restrictions already in place under the prior registry, some of the increased restrictions and disabilities imposed on registrants through the retroactive application of the New Act include:

-39-

a. Increased registration period, extending some individuals from a ten year registration period to a lifetime obligation, Neb. Rev. Stat. § 29-4005(1)(b) (Rev. 2009);

b. Mandatory public notification through the State Patrol sex offender website, regardless of the State-determined level of risk, Neb. Rev. Stat. § 29-4013(2)(b) (Rev. 2009);

c. Mandatory characterization as posing 'a high-risk to reoffend' and as 'violent sex offenders,' regardless of the known risk to reoffend, Exhibit 5, [Filing 346-6], p. 1; Filing 319-7, p. 6;

d. Mandatory in-person periodic reporting, versus the previous written reporting requirement, Neb. Rev. Stat. § 29-4006(3)-(6) (Rev. 2009);

e. Increased frequency of periodic reporting, up to four times per year, Neb. Rev. Stat. § 29-4006(3)-(6) (Rev. 2009);

f. Mandatory in-person updating of certain information, including addresses, employment, school, vehicles, travel and immigration documents, professional licenses and certificates, email addresses, Internet identifiers and telephone numbers, Exhibit 7 [Filing 346-8];

g. Increased obligation to provide greater and more identifying types of information to law enforcement, Neb. Rev. Stat. § 29-4006(1) (Rev. 2009);

. . .

j. Mandatory updating of that electronic information within one work day, so law enforcement is never far behind, Neb. Rev. Stat. § 29- 4006(13) (Rev. 2009); and

k. Threat of a strict liability felony offense for failure to provide or timely update any of the registry information, Neb. Rev. Stat. § 29- 4008 (Rev. 2009)." (Filing 345, CM/ECF pp. 7-8, ¶5.)

In this regard, Plaintiffs represent that "Does 1-36 [in Case No. 8:09CV456] and the two John Does [in Case Nos. 4:09CV3266 and 4:10CV3005] were convicted of registrable offenses and sentenced before the passage or enforcement of the New Act." (Filing 345, CM/ECF p. 9, ¶ 8.) Under the old law, they were "subjected to an

-40-

individualized risk assessment, and certified by the State as posing a particular risk to reoffend."  (Filing 345, CM/ECF p. 9, ¶ 9.)

"Some were assigned as Tier 3, which represented a high risk to reoffend. Filing 1, p. 5-6. These individuals were subject to public notification by informing law enforcement, schools, daycares, and other groups in the area, and through the State Patrol website. Neb. Rev. Stat. § 29-4013(2)(c)(iii) (Rev. 2007)." (Filing 345, CM/ECF p. 9, ¶ 9.)

"Others were assigned as Tier 2, which represented a moderate risk to reoffend. Filing 1, p. 5-6. These individuals were subject to public notification by informing law enforcement, schools, daycares, and other groups in the area. Neb. Rev. Stat. § 29-4013(2)(c)(ii) (Rev. 2007)."  (Filing 345, CM/ECF pp. 9-10, ¶ 10.)

"Still others were designated as Tier 1, which represented those who were determined by the State to pose a low risk to reoffend. Filing 1, p. 5-6. Because of the nature of their crimes and circumstances, public notification for these individuals only entailed notification to law enforcement. Neb. Rev. Stat. § 29-4013(2)(c)(i) (Rev. 2007). Some of the low risk Does include the following:

     a. In 1996, Doe 1 was found guilty of sexual assault of a child in 1996, and was sentenced to three years of probation. His crime: when he was nineteen, he had a consensual sexual relationship with his fifteen year-old girlfriend. Filing 6-1, p. 1-2.

     b. In 2006, Doe 21 was found guilty of third degree sexual assault. His crime: he slapped a girl on the buttocks as she walked up some stairs. Filing 330-1, p. 1-2.

     c. In 2006, Doe 28 was convicted of third degree sexual assault. His crime: grabbing a woman's buttocks as he walked by her in the bakery. At the time of the offense, he was over forty and the victim was approximately the same age. Filing 330-1, p. 18-19.

      d. In 1997, Doe 31 was found guilty of attempted sexual assault in the first degree. His crime: when he was twenty, he impregnated his girlfriend a couple months before she turned sixteen. Filing 330-1, p. 25-26.

      e. In 2007, Doe 33 plead guilty to third degree sexual assault to avoid a trial. His crime: he had sex with an adult approximately his same age, but she later claimed it was not consensual. Law enforcement did not use a rape kit to investigate because she had sex with another person between the time Doe 33 had intercourse with her and the time she filed a report. Filing 330-1, p. 29-30."

(Filing 345, p. 10, ¶ 11.)

Plaintiffs complain that under the new law "[d]isregarding the reality of the low- and moderate-risk individuals, all registrants are presently subject to public notification via the State Patrol website. Neb. Rev. Stat. § 29-4013(2)(b) (Rev. 2009). Such website states that sex offenders pose a high risk to reoffend. Exhibit 5, p. 1. In addition, the rules and regulations describe all registrants as 'violent sex offenders' and that the registry was 'passed to protect the public, in particular children.' Filing 319-7, p. 6." (Filing 345, CM/ECF p. 11, ¶ 12.)

Plaintiffs allege that "[a]fter the New Act was implemented and all registrants were portrayed as high-risk sex offenders on the Internet, registrants felt the fallout almost immediately." (Filing 345, CM/ECF p. 11, ¶ 13.) In particular, Plaintiffs contend the new registration system has resulted in:

      a. Loss of housing. Exhibit 8, p. 2; Filing 330-1, p. 15.

      b. Loss of employment. Filing 330-1, p. 30. In addition, added difficulty finding and/or maintaining employment. Exhibit 9, p. 1-2; Exhibit 11, p. 1; Exhibit 13; Exhibit 10, p. 2.

      c. Restricted ... growth of business. Filing 6-1, p. 23-25; Exhibit 12, p. 1.

      d. Mistreatment or threats from former friends and neighbors, and loss of associations. Exhibit 10, p. 1-2; Exhibit 11, p. 2; Exhibit 15.

e. Increased monitoring by law enforcement. Exhibit 9, p. 2; Exhibit 10, p. 3; Exhibit 16.

f. Banish[ment] from school grounds or public places. Exhibit 14, p. 1.

(Filing 345, CM/ECF p. 11, ¶ 13.)

Even if I were to assume that Plaintiffs can produce sufficient admissible evidence to support their "statement of material facts" as quoted above,[41] I would conclude that the SORA amendments (excluding those discussed in Part One of this opinion) do not violate the Ex Post Facto Clause of the United States Constitution and the equivalent provision of the Nebraska Constitution.  The same is true with respect to any other constitutional claim as to which these assumed facts may be material.

In *State v. Worm*, the Nebraska Supreme Court considered whether retroactive application of 2002 amendments to SORA violated the Ex Post Facto Clause.  As described by the Court, the changes made to the law were as follows:

> In April 2002, the Nebraska Legislature amended the Act to bring it in compliance with the federal law. The 1996 original Act required a person convicted of an enumerated sex offense, or its equivalent in another jurisdiction, to register with the Nebraska State Patrol's sex offender registry. Under this Act, the offender had to verify that registration on an annual basis for a period of 10 years after his or her release from a correctional facility or other institution, or after discharge from probation, parole, or supervised release. See §§ 29-4003 to 29-4005 (Cum.Supp.2000).

> In addition, the amendments added new sex offenses, aggravated offenses and repeat offenses, which require the offender to verify his or

---

[41] Defendants deny these statements and object to most of Plaintiffs' evidence. Because I am not convinced by Plaintiffs' arguments, I find it unnecessary to examine Defendants' objections in detail.  I therefore will deny Defendants' objections (filing 349) without prejudice.

her registration annually. §§ 29-4003 and 29-4005(2) (Cum.Supp.2002). An aggravated offense is defined as "any registrable offense . . . which involves the penetration of (i) a victim age twelve years or more through the use of force or the threat of serious violence or (ii) a victim under the age of twelve years." § 29-4005(4)(a). The amendments require the sentencing court to make the finding of an aggravated or repeat offense as part of the sentencing order. § 29-4005(2).

The amendments also require an offender to provide his or her place of vocation and any school which he or she attends in addition to the previous requirement of providing the offender's address and place of employment. 2002 Neb. Laws, L.B. 564. Under both versions, the Act is retroactive to defendants convicted of or pleading guilty to most registrable offenses on or before January 1, 1997. *Id.*

The amendments, however, did not substantively change the sections concerning community notification. The Nebraska State Patrol's registration and community notification division is responsible for assigning a notification level after an offender initially registers. The assigned notification corresponds to the offender's assessed recidivism risk, which can be assessed as low, moderate, or high. See § 29-4013(2). If the risk is low, law enforcement officials who are likely to encounter the offender are notified of the registry information. § 29-4013(2)(c)(i). If the recidivism risk is moderate, schools, daycare centers, and youth and religious organizations are additionally notified. § 29-4013(2)(c)(ii). If the recidivism risk is high, individuals likely to encounter the offender must also be notified, in addition to those notified for low and moderate notification levels. § 29-4013(2)(c)(iii). If a risk assessment indicates that public notification is warranted, it can be accomplished by direct contact, news releases, or a method using a telephone system, including an electronic database. *Id.* See, also, 272 Neb. Admin. Code, ch. 19, § 013.06 (2003). The State Patrol maintains a public Web site, which disseminates specified information about offenders only if they are assigned a high-risk notification level.

680 N.W.2d at 157-158.

At sentencing, the defendant in *Worm* was determined to have committed an aggravated offense prior to the effective date of the 2002 amendments. The Nebraska Supreme Court observed that "whether the amendment violates state and federal constitutional proscriptions against retroactive punishment is analyzed under the U.S. Supreme Court's two-prong, 'intent-effects' test for analyzing punishment." *Id.*, at 160 (citing *Smith v. Doe*, 538 U.S. 84 (2003)). Under this test, "[i]f a court determines that the Legislature intended a statutory scheme to be civil, that intent will be rejected 'only where a party challenging the [statute] provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention.'" *Id.* (quoting *State v. Isham*, 625 N.W.2d 511, 515 (Neb. 2001)).

Regarding the legislative intent prong, the Nebraska Supreme Court stated:

> Whether the Legislature intended the amendments to be civil or criminal is primarily a matter of statutory construction. However, we must also look at the statute's structure and design. . . .
>
> . . .
>
> When looking at the statute's structure and design, the primary consideration is the procedural mechanisms established by the Legislature to enforce the statute. The regulations use an administrative hearing and an appeal process under Nebraska's Administrative Procedure Act for challenging the registration and notification requirements . . . [which] evidences a civil, nonpunitive statute."

*Id.* (citations omitted).

Plaintiffs complain that the 2009 amendments to SORA did away with the administrative hearing and appeal process; they argue that "[t]he elimination of due process protection indicates a criminal, punitive statute." (Filing 345, at CM/ECF p. 116.) What LB 285 actually did, of course, was to replace a system that required individualized risk assessments of sex offenders with an "offense of conviction" methodology. It is only because the Nebraska State Patrol is no longer required to

-45-

judge each sex offender's risk of recidivism under Neb. Rev. Stat. § 29-4013 that the administrative hearing and appeal procedures no longer apply.  The replacement method, which conforms to SORNA, *see National Guidelines,* at 38031 ("[J]urisdictions are not required by SORNA to look beyond the elements of the offense of conviction in determining registration requirements except with respect to victim age."), does not evidence a legislative intent to adopt a criminal statute.

Plaintiffs also point to a statement made by the Nebraska Supreme Court in *Worm* that "prompt notification of the Act's requirements and its criminal penalty for noncompliance is essential in some cases," 680 N.W.2d at 161, and then proceed to argue that "retroactively changing the requirements to be significantly more onerous without notice, or without prior notice that such a change was even possible, infers [sic] a punitive intent." (Filing 345, at CM/ECF pp. 116-117.)  The Court in *Worm* was simply explaining that SORA required the sentencing court to provide notice when entering judgment because the Act's registration requirement would begin immediately if the offender was not incarcerated pending an appeal or sentenced to probation.  The Court concluded that the sentencing requirement was not criminal in nature.  Plaintiffs' argument that lack of notice implies a punitive intent is misplaced.

Plaintiffs next contend that in *State v. Payan,* 765 N.W.2d 192 (2009), the Nebraska Supreme Court established a "high water mark for the permissible level of monitoring and restrictions that [a] statutory scheme may impose before Nebraska law compels a conclusion that the legislative intent was punishment under Nebraska's *ex post facto* clause," and that "[t]he New Act goes far beyond these maximums." (Filing 345, at CM/ECF p.118.)  This is a misreading of the *Payan* decision.[42]

---

[42] Plaintiffs also argue that "*Payan* and *Worm* lead to the conclusion that the Nebraska *ex post facto* clause expands the legislative intent analysis to grant protection beyond its federal counterpart."  (Filing 345, at CM/ECF p. 120.)  This conclusion is unfounded.

-46-

The legal issue presented in *Payan* was whether a factual finding that the defendant committed an aggravated offense, as defined by SORA, should have been made by the jury, rather than the trial judge, for purposes of lifetime community supervision requirement under Neb. Rev. Stat. § 83-174.03 (not part of SORA). Applying the same "intent-effects" test used in *Worm*, the Court decided that § 83-174.03 imposed a criminal penalty:

> A key factor in determining the legislative intent of § 83-174.03 is the fact that the statute requires persons subjected to lifetime community supervision to be supervised by the Office of Parole Administration, a component of the Department of Correctional Services, which is responsible for all parole services in the community. . . . The term 'parole' has a distinctively penal connotation. . . .

> Unlike the SORA registration requirements, § 83-174.03 subjects the offender who has completed a prison sentence to significant affirmative restraints which may be imposed by the Office of Parole Administration. Some of these are similar to restrictions which may be imposed upon incarcerated persons paroled before their mandatory release date. These include restrictions on place of residence; required reporting to a parole officer; and submission to medical, psychological, psychiatric, or other treatment. In addition, persons subject to lifetime community supervision may be subject to drug and alcohol testing, restrictions on employment and leisure activities, and polygraph examinations.

> . . .

> . . . Lifetime community supervision under § 83-174.03 begins upon completion of the offender's term of incarceration or release from civil commitment. It involves affirmative restraints and disabilities similar to and arguably greater than traditional parole. It is not dependent upon any finding that the offender poses a risk to the safety of others at the time he or she completes a period of incarceration or civil commitment. We therefore conclude that the legislative intent in enacting § 83-174.03 was to establish an additional form of punishment for some sex offenders.

765 N.W.2d at 202 (footnotes omitted).

-47-

Unlike a requirement of lifetime community supervision, SORA's registration requirements are not analogous to a term of parole.[43] The *Payan* decision therefore does not support a determination that the Nebraska Legislature, by conforming Nebraska's law to SORNA, intended to impose a criminal penalty rather than "to create a civil regulatory scheme to protect the public from the danger posed by sex offenders, . . .." *Worm*, 680 N.W.2d at 161.

Factors used to determine whether the effect of a statute is so punitive as to negate the Legislature's intent include:

"(1) '[w]hether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as a punishment'; (3) 'whether it comes into play only on a finding of scienter'; (4) 'whether its operation will promote the traditional aims of punishment-retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.' "

*Id.* (quoting *State v. Isham*, 625 N.W.2d 511, 515-516 (Neb. 2001), quoting *Hudson v. United States*, 522 U.S. 93 (1997), quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)).  Plaintiffs make two basic arguments regarding these factors.

First, Plaintiffs argue that the legislation places affirmative disabilities and restraints on registrants because "[t]he New Act's constant in-person reporting has a

---

[43] Among other differences, "[p]robation and supervised release [or parole] entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction.  By contrast, offenders subject to [SORA] are free to move where they wish and to live and work as other citizens, with no supervision. . . .  A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense."  *Smith v. Doe*, 538 U.S. at 101-102 (citations omitted).

punitive effect." (Filing 345, CM/ECF p. 121.) In particular, Plaintiffs complain that: (1) As amended by LB 285, SORA compels all registrants to report in-person annually, semiannually, or quarterly, depending on the registration duration. *See* Neb. Rev. Stat. § 29- 4006(4)-(6) (West, Operative Jan. 1, 2010). (2) In-person reporting is also required every time a registrant has a new address, habitual living location, temporary domicile, job, or enrolls in a school. *See* Neb. Rev. Stat. § 29-4004 (West, Operative Jan. 1, 2010). (3) A registrant must give notice, in writing, by the next working day of "any changes in or additions to such person's list of email addresses, instant messaging identifiers, chat room identifiers, global unique identifiers, and other Internet communication identifiers that the registrant uses or plans to use, all domain names registered by the person, and all blogs and Internet web sites maintained by the person or to which the person has uploaded any content or posted any messages or information." Neb. Rev. Stat. § 29- 4006(13) (West, Operative Jan. 1, 2010). In *Worm*, Plaintiffs note, the Nebraska Supreme Court found that the Act's former registration requirements imposed only a "slight" burden. 680 N.W.2d at 162.

Second, Plaintiffs emphasize that "[a]ll registrants are subjected to public notification via the Internet." (Filing 345, CM/ECF p. 123.) They point out that in *Welvaert v. Nebraska State Patrol*, 683 N.W.2d 357, 366 (Neb. 2004), the Nebraska Supreme Court found that the Act's former provisions did not impose an affirmative restraint because "[t]he extent to which an offender is subject to public notification under SORA has been tailored to mirror the level of risk an offender presents to their community." The law previously provided that:

> If the risk of recidivism is low, only law enforcement officials who are likely to encounter the offender must be notified. § 29-4013(2)(c)(i). If the risk of recidivism is moderate, the circle of notification is broadened to include schools, daycare centers, and religious and youth organizations. § 29-4013(2)(c)(ii). If the risk of recidivism is high, notification must also be given to members of the public who are likely to encounter the offender. § 29-4013(2)(c)(iii).

*Id.* Under the current law, by contrast, certain information regarding all registrants is disclosed to the public.[44]  *See* Neb. Rev. Stat. §§ 29-4009, 29-4013 (West, Operative Jan. 1, 2010).  This second point, regarding publication of information about all registered sex offenders (as opposed to only those assessed as "high risk" under the former law) is repeated by Plaintiffs with respect to all seven *Mendoza-Martinez* factors.[45]

While the current law's reporting requirements are more stringent, and the public notification provisions are more expansive, than in the versions of SORA that were upheld against ex post facto challenges in *Worm* and *Welvaet*, I am not convinced that the purpose or effect of the amendments that were made in order to bring Nebraska's law into compliance with SORNA are punitive.  As I stated in ruling on Plaintiffs' motion for a preliminary injunction:

> Nebraska requires the offender to appear in person at various times, and this requirement mirrors SORNA.  42 U.S.C. §§ 16913(c), 16916. *See also Doe v. Pataki*, 120 F.3d 1263, 1284-85 (2nd Cir. 1997) (finding that registration provisions of New York's Sex Offender Registration Act (SORA), or "Megan's Law," imposing duty to register in person every 90 days for minimum of ten years, did not inflict "punishment" within meaning of Ex Post Facto Clause; registration served legislature's nonpunitive goals of facilitating law enforcement and protecting public;

---

[44] Plaintiffs complain about the wording of the Nebraska State Patrol's website, which recites that "Nebraska State Statute 29-4002 declares that sex offenders present a high risk to commit repeat offenses . . . ."  (Filing 346-6, at CM/ECF p. 1.)  They claim this statement is untruthful because it labels all sex offenders as "high risk."

[45] Plaintiffs additionally urge me to consider whether SORA, as amended, (1) detrimentally impacts the collateral consequences of their convictions; (2) imposes restrictions and obligations identical to those imposed upon probationers and parolees; (3) eliminates a status, right, or ability previously afforded by the government; and (4) is imposed exclusively and directly at a politically unpopular group.  (Filing 345, at CM/ECF pp. 101-112.)  To the extent these considerations are not already encompassed by the *Mendoza-Martinez* factors, I decline to do so.

and burdens of registration were not so punitive in form or effect as to constitute punishment). Likewise, Nebraska has chosen to publicize the names of anyone who must register as a sex offender, and not just some of those persons. SORNA does the same thing, but it gives states an option to exempt certain offenders. *Compare* 42 U.S.C. § 16918(a) *with* 42 U.S.C. § 16918(c). Nebraska has elected not to use that option, and there is nothing unconstitutional about such a choice.

(Filing 92, at CM/ECF pp. 9-10.)

In *Smith v. Doe*, the United States Supreme Court rejected arguments that Alaska's Sex Offender Registration Act violated the Ex Post Facto Clause because it applied to all convicted sex offenders, without regard to their future dangerousness, and placed no limits on public access to non-confidential information. The Court found that the law had a "rational connection" to a "legitimate nonpunitive purpose of 'public safety, which is advanced by alerting the public to the risk of sex offenders in their communit[y].'" 538 U.S. at 103 (quoting lower court's opinion). It then stated:

> Alaska could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism. The legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high." *McKune v. Lile*, 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002); *see also id.,* at 33, 122 S.Ct. 2017 ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault" (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 27 (1997); U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997))).

> The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. . . . The State's determination to legislate with respect to convicted sex offenders as a

-51-

class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause.

. . . In the context of the regulatory scheme the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the registrants' convictions without violating the prohibitions of the Ex Post Facto Clause.

. . .

[T]he notification system is a passive one: An individual must seek access to the information [on the State's web site]. . . .  Given the general mobility of our population, for Alaska to make its registry system available and easily accessible throughout the State was not so excessive a regulatory requirement as to become a punishment.

538 U.S. at 103-105.  The same can be said of Nebraska's law.

Because Plaintiffs cannot show by the "clearest proof" that the effects of Nebraska's SORNA-conforming amendments negate the legislative intent to maintain a civil regulatory scheme, Defendants are entitled to the entry of partial summary judgment on Plaintiffs' ex post facto claim.  For the reasons discussed in Part One of this opinion, however, Defendants' motion will be denied insofar as the claim concerns Neb. Rev. Stat. §§ 28-322.05, 29-4006(1)(k)&(s), and 29-4006(2).

## II.

### Third and Fourth Causes of Action–Double Jeopardy Claim

No person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Constitution, Amend. V.   "No person shall . . . be twice put in jeopardy for the same offense." Neb. Const., Art. 1, § 12.

"The protection provided by Nebraska's double jeopardy clause is coextensive with that provided by the U.S. Constitution." *State v. Dragoo*, 765 N.W.2d 666, 670 (Neb. 2009).  "The Double Jeopardy Clauses of both the federal and the Nebraska Constitutions protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Id.*

Plaintiffs complain the SORA amendments impose a second punishment on convicted sex offenders.  This claim fails because the Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson v. United States*,  522 U.S. 93, 99 (1997) (emphasis in original).  As already discussed in connection with Plaintiffs' ex post facto claim (in Part Two of this opinion), Nebraska's new registration requirements do not amount to criminal penalties.

### III.

### *Fifth and Sixth Causes of Action–Cruel and Unusual Punishment Claim*

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Constitution, Amend. VIII.; Neb. Const. Art. 1, § 9.  "[W]ith reference to cruel and unusual punishment, the Nebraska Constitution does not require more than does the [Eighth Amendment to the] U.S. Constitution." *State v. Hurbenca*, 669 N.W.2d 668, 675 (Neb. 2003) (quoting *State v. Moore*, 591 N.W.2d 86, 95 (Neb. 1999)).

Plaintiffs contend that "[f]or those offenders who have served their periods of incarceration and were determined by the State to be lower-risk to reoffend, the extension of the registration period is unusual given the goal of preventing recidivism. Mandatory public notification via the State Patrol website is a cruel punishment not remotely proportional to the risk posed." (Filing 345, at CM/ECF p. 138.)  Again, this

argument fails because SORA's registration and notification requirements do not constitute punishment.

## IV.

### *Ninth and Tenth Causes of Action–Due Process Claim*

No State shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Constitution, Amend. XIV, § 1. "No person shall be deprived of life, liberty, or property, without due process of law." Neb. Const. Art. I, § 3.

The Nebraska Supreme Court has indicated that the federal and state constitutions contain similar due process language, and has applied the same analysis to such claims. *See Scofield v. State, Dept. of Natural Resources*, 753 N.W.2d 345, 356 (Neb. 2008). More particularly, "[i]n the context of a right to privacy, [the Nebraska Supreme Court has] effectively stated that the due process provision of the Nebraska Constitution is congruent with the federal Constitution and that the Nebraska Constitution does not contain any rights broader than the federal Constitution." *Hamit v. Hamit*, 715 N.W.2d 512, 524 (Neb. 2006) (citing *State v. Senters*, 699 N.W.2d (Neb. 2005)).

Plaintiffs advance four due process arguments: "First, the New Act is unconstitutionally vague. Second, the New Act violates substantive due process. Third, the New Act violates procedural due process by eliminating both fundamental and state law-generated rights without a hearing. Finally, the retroactive application of the New Act is irrational and arbitrary." (Filing 345, at CM/ECF p. 139.)

### A.  Vagueness

Plaintiffs claim that "[t]he New Act detailing the registration requirements and the Unlawful use of the Internet crime are both unconstitutionally vague under the due process clause." (Filing 345, at CM/ECF p. 139.) I address here only the claim that the

registration requirements are vague.  The vagueness claim concerning Neb. Rev. Stat. § 28-322.05, and associated definitions from Section 24 of LB 97,[46] is addressed in Part One of this opinion.

"An overly vague statute 'violates the first essential of due process of law,' because citizens 'must necessarily guess at its meaning and differ as to its application'." *United States v. Bamberg*, 478 F.3d 934, 937 (8th Cir. 2007) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). "There is a two-part test to determine whether a statute is void for vagueness. The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." *Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). *See also State v. Rung*, 774 N.W.2d 621, 632 (Neb. 2009) ("The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). "Statutes are to be evaluated under these standards using principles of flexibility and reasonable breadth." *Agena v. Lancaster County Bd. of Equalization*, 758 N.W.2d 363, 374 (Neb. 2008).

Plaintiffs first complain that SORA, as amended, "applies to any person who on or after January 1, 1997 . . . [h]as *ever* pled guilty to, pled nolo contendere to, or been found guilty of any of the following [listed offenses] . . .." Neb. Rev. Stat. § 29-4003(1)(a)(i) (West, Operative Jan. 1, 2010) (emphasis supplied).  According to Plaintiffs, "[t]his section appears to simultaneously both limit its application to offenses after January 1, 1997, and apply to the enumerated offenses regardless of when they were committed."  (Filing 345, at CM/ECF p. 140.)

---

[46] LB 97's definitions are codified as Neb. Rev. Stat. § 29-4001.01(2), (3), (4), (6), (7), (8), (10), (11), & (13) (West, Operative Jan. 1, 2010).  Subsections (1), (5), (9), (12), (14) and (15) of that statute are definitions added by LB 285, § 3.

Before being amended by LB 285, the statute provided that SORA "shall apply to any person who on or after January 1, 1997 . . . [p]leads guilty to or is found guilty of [listed offenses] . . .." Neb. Rev. Stat. § 29-4003(1)(a) (Reissue 2008). SORA's original effective date was January 1, 1997. *See* Neb. Laws 1996, LB 645, § 20. By retaining the date, the legislature clearly intended the 2009 amendments to apply only to persons convicted since January 1, 1997. Use of the word "ever" does not negate this legislative intent. Although inartfully drafted, the statute simply means that SORA's registration requirements apply to a person who at any time on or after January 1, 1997, whether by plea or trial, has been found guilty of a listed sex offense. The statute does not lend itself to arbitrary enforcement.

Plaintiffs next complain that "Neb. Rev. Stat. § 29-4004 imposes confusing in-person reporting requirements on all registrants when he or she has a new address, temporary domicile, or habitual living location. 'Temporary domicile' is defined as any place at which the person actually lives or stays for a period of at least three working days. § 29-4001.01(15). 'Habitual living location' is defined as any place that an offender may stay for a period of more than three days even though the sex offender maintains a separate permanent address or temporary domicile. § 29-4001.01(9). This notification must occur within three working days before the change. § 29-4004(2)-(4).[47] The New Act fails to define 'working days,' leaving the entire reporting structure

---

[47] SORA's reporting requirements include the following:

(2) Any person required to register under the act shall inform the sheriff of the county in which he or she resides, in person, and complete a form as prescribed by the Nebraska State Patrol for such purpose, if he or she has a new address, temporary domicile, or habitual living location, within three working days before the change. . . .

(3) Any person required to register under the act shall inform the sheriff of the county in which he or she resides, in person, and complete a form as prescribed by the Nebraska State Patrol for such purpose, if he or she has a new address, temporary domicile, or habitual living location

-56-

vague.  For example, this could mean Monday through Friday, but it could also include weekends and nonconsecutive days.  Law enforcement generally works 24/7, so the statute could have an additional meaning."  (Filing 345, at CM/ECF p. 142.)

The term "working days" is commonly understood to mean Monday through Friday, excluding holidays.[48]  A term left undefined by a statute carries its ordinary meaning.  *Carton v. General Motor Acceptance Corp.,     F.3d    , 2010 WL 2732874, at *6 (8th Cir. 2010)*.  *See also Schuyler Apartment Partners, LLC v. Colfax County Bd. of Equalization, 783 N.W.2d 587, 591 (Neb. 2010)* ("Absent a statutory indication to the contrary, words in a statute will be given their ordinary meaning.").  A person of reasonable intelligence would also understand that "a *period* of at least three working days" (emphasis supplied) refers to three consecutive working days.

Plaintiffs state that "[a] habitual living location includes anywhere a registrant may stay for a period of more than three days, which includes virtually anywhere on the

---

in a different county in this state, within three working days before the address change. . . .  The person shall report to the county sheriff of his or her new county of residence and register with such county sheriff within three working days after the address change.

(4) Any person required to register under the act shall inform the sheriff of the county in which he or she resides, in person, and complete a form as prescribed by the Nebraska State Patrol for such purpose, if he or she moves to a new out-of-state address, within three working days before the address change. . . .

Neb.Rev.St. § 29-4004 (West, Operative Jan. 1, 2010).

[48] In fact, the regulations promulgated by the Nebraska State Patrol to carry out the registration provisions of the Sex Offender Registration Act, as directed by Neb. Rev. Stat. § 29-4013(1) (West, Operative Jan. 1, 2010), define "working days" to mean "Monday through Friday but shall not include any day which is a state holiday." Neb. Admin. Code, Title 272,  Ch. 19, § 002.36 (effective Jan. 1, 2010).  The state holidays are also listed.

planet. . . .  No registrant would believe that he had an obligation to report all places he may stay, rendering the requirement to report all habitual living locations a nullity and adding to the confusion."  (Filing 345, at CM/ECF p. 142.)

This argument is self-defeating because "[a] penal statute is given a strict construction which is sensible and prevents injustice or an absurd consequence." *State v. Hochstein*, 632 N.W.2d 273, 280 (Neb. 2001).  "Penal statutes are given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served." *Id.*  As Plaintiffs concede, it is evident the statute  only requires a registrant to report his or her intended relocations.

Plaintiffs next complain that "Neb. Rev. Stat. § 29-4006 broadens the amount and nature of the information that a registrant must provide under the New Act to a bewildering and confusing extent. This information includes the confusing temporary domicile and habitual living location. It also includes the license plate, description and regular storage location of any vehicle owned or operated by the person. Since 'vehicle' is not defined, it might include various manners of transportation, as has been the case in criminal driving under the influence cases, *e.g.* bicycles, riding lawnmowers, tractors, boats, etc. It is also unclear whether this would include vehicles used by a registrant for work."  (Filing 345, at CM/ECF pp. 142-143.)

The term "vehicle" is not defined by the Act, but only vehicles with license plates are subject to the registration requirement.[49] The Act provides that any vehicle "owned *or* operated" (emphasis supplied) by the registrant must be reported.  This language is unambiguous.

_____

   [49]  The statute provides that the registration information shall include "[t]he license plate number and a description of any vehicle owned or operated by the person and its regular storage location[.]" Neb. Rev. St. § 29-4006(g) (West, Operative Jan. 1, 2010).  The Nebraska State Patrol rules and regulations use the same language. *See* Neb. Admin. Code, Title 272,  Ch. 19, § 008.06G (effective Jan. 1, 2010).

Finally, Plaintiffs state that " Neb. Rev. Stat. § 29-4006(1) requires that the State Patrol collect certain information, 'but not limited to' that enumerated data. This gives the State Patrol unfettered discretion to collect an unforeseeable amount of information. Once the State Patrol collects whatever it wants, the New Act provides that only limited information will be confidential, and the rest will not be confidential. Neb. Rev. Stat. § 29-4009(1). The New Act also provides for the release of "public notification information" to third parties.  Neb. Rev. Stat. § 29-4013(4) and (5). But no provision regulates whether such third parties may disclose such confidential information, and it places no limitation on third parties as to how they disseminate information gathered under the New Act, confidential or otherwise."  (Filing 345, at CM/ECF p. 146.)

Plaintiffs do not appear to be arguing that Section 29-4006(1) is "void for vagueness," but rather that it involves an unlawful delegation of legislative authority to the Nebraska State Patrol.  "It is a well-established principle that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the policy of a statute." *Yant v. City of Grand Island*, 784 N.W.2d 101, 109-110 (Neb. 2010).  Plaintiffs make no contention that the Nebraska State Patrol's rules and regulations require them to disclose any information that is not specifically listed in Section 29-4006(1).

Regarding Plaintiffs' privacy concerns, the Nebraska State Patrol has provided that confidential information "shall only be released upon written request to law enforcement agencies" and "shall be treated as confidential by law enforcement agencies and shall not be considered public record information."  Neb. Admin. Code, Title 272,  Ch. 19, §§ 013.01 & 13.06 (effective Jan. 1, 2010).  "Certain groups and agencies approved by the National Sex Offender Registry shall have access to additional public notification information (not provided on the web site) about registered sex offenders," but "[s]uch information excludes confidential information as provided in section 013.06."  Neb. Admin. Code, Title 272,  Ch. 19, § 13.07 (effective Jan. 1, 2010).

## B. Substantive Due Process

To address Plaintiffs' substantive due process claim, I must first determine whether SORA's registration and public notification requirements implicate a fundamental right.  *See* *Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003).  "If the statute implicates a fundamental right, the state must show a legitimate and compelling governmental interest for interfering with that right." *Id.* (citing *Graham v. Richardson*, 403 U.S. 365, 376 (1971)). "If the statute does not implicate a fundamental right, . . . a less exacting standard of review [applies] under which the statute will stand as long as it is rationally related to a legitimate governmental purpose." *Id.* (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446 (1985)).

Plaintiffs claim that the amended Act "infringes on the right in one's reputation and name, right to the integrity of a family, right to travel, right to earn a living, and the right to privacy."  (Filing 345, at CM/ECF p. 148.)  I determine that any injury caused to Plaintiffs' reputations does not constitute the deprivation of a liberty interest, and that any claimed infringement of their recognized liberty interests is merely incidental.

### 1. No Fundamental Right Implicated

Plaintiffs complain that "[p]ublic notification for all registrants deprives them of their liberty interest in their names, reputations and standing in their communities by failing to differentiate between high- and lower-risk persons on the sex offender registry."[50]  (Filing 345, at CM/ECF p. 149.)  This claim does not implicate a fundamental right.  "[M]ere injury to reputation, even if defamatory, does not constitute

---

[50] Plaintiffs also claim that SORA, as amended, "undermines the fundamental right to earn a living and maintain gainful employment."  (Filing 345, at CM/ECF p. 160.)  "The right to 'make a living' is not a 'fundamental right,' for either equal protection or substantive due process purposes." *Medeiros v. Vincent*, 431 F.3d 25, 32 (1st Cir. 2005).

the deprivation of a liberty interest." *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 6-7 (2003) (citing *Paul v. Davis*, 424 U.S. 693 (1976)).

Plaintiffs argue that a "stigma plus" test applies. *See Gunderson*, 339 F.3d at 640 ( "The loss of reputation must be coupled with some other tangible element to rise to the level of a protectible property interest."). The "stigma plus" test, however, is designed for *procedural* due process claims. It does not apply to substantive due process claims. *See Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) ("Our review of the caselaw has failed to identify any case that applies the stigma-plus test to a substantive due process claim."); *Does v. Munoz*, 507 F.3d 961, 966 n. 1 (6th Cir. 2007) ("Plaintiffs obscure the correct analysis by urging us to apply the "stigma plus" test. That test applies only to *procedural* due process claims.") (emphasis in original). *But cf. Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010) (holding that district court correctly dismissed substantive due process claim where plaintiffs "have not even vaguely pleaded any other harm" than injury to their reputations).

In *Doe v. Moore*, 410 F.3d 1337 (2005), the Eleventh Circuit Court of Appeals considered a substantive due process challenge to Florida's Sex Offender Act, brought by several persons who were required by the law to register as sex offenders and, without regard to their likelihood to reoffend, have their photographs and identifying information posted on the state's website. The Court followed a two-step process to determine whether a fundamental right was implicated:

> We must analyze a substantive due process claim by first crafting a "careful description of the asserted right." *Flores*,[51] 507 U.S. at 302, 113 S.Ct. at 1447; *accord Glucksberg*,[52] 521 U.S. at 720-21, 117 S.Ct. at 2268. Second, we must determine whether the asserted right is "one of 'those fundamental rights and liberties which are, objectively, deeply rooted in

_____

[51] *Reno v. Flores*, 507 U.S. 292 (1993).

[52] *Washington v. Glucksberg*, 521 U.S. 702 (1997).

-61-

this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.' " *Williams v. Attorney Gen. of Alabama*, 378 F.3d 1232, 1239 (11th Cir.2004) (quoting *Glucksberg*, 521 U.S. at 720-21, 117 S.Ct. at 2268), *cert. denied*, *Williams v. King*, 543 U.S. 1152, 125 S.Ct. 1335, 161 L.Ed.2d 115 (2005).

*Id.*, at 1343. Regarding the first step, the Court stated:

       Although the Supreme Court has recognized fundamental rights in regard to some special liberty and privacy interests, it has not created a broad category where any alleged infringement on privacy and liberty will be subject to substantive due process protection. *See Paul* [*v. Davis*], 424 U.S. at 713, 96 S.Ct. at 1166 (noting that personal privacy rights protected by substantive due process "must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty'"). Further, in order to trigger substantive due process protection the Sex Offender Act must either directly or unduly burden the fundamental rights claimed by Appellants. *See Maher v. Roe*, 432 U.S. 464, 473-74, 97 S.Ct. 2376, 2382, 53 L.Ed.2d 484 (1977) (holding that the substantive due process clause "protects the woman from unduly burdensome interference with her freedom to decide whether to terminate her pregnancy"); *see also Paul P. v. Verniero*, 170 F.3d 396, 405 (3rd Cir.1999) (holding that the indirect effects caused by a sex offender registration statute are "too substantially different from the government actions" in prior case law "to fall within the penumbra of constitutional privacy protection."). Thus, a careful description of the fundamental interest at issue here allows us to narrowly frame the specific facts before us so that we do not stray into broader "constitutional vistas than are called for by the facts of the case at hand." *Williams*, 378 F.3d at 1240. To do so we use the Sex Offender Act itself to define the scope of the claimed fundamental right. *Id.* at 1241. After reviewing the provisions of the Sex Offender Act and the briefs, the right at issue here is the right of a person, convicted of "sexual offenses," to refuse subsequent registration of his or her personal information with Florida law enforcement and prevent publication of this information on Florida's Sexual Offender/Predator website.

*Id.*, at 1343-1344 (footnote omitted).  At the second step, the Court concluded that such a right was not "deeply rooted in this Nation's history and tradition," stating:

> Though the Supreme Court has not addressed whether substantive due process invalidates sex offender registration statutes, *see Connecticut Dep't of Public Safety*, 538 U.S. at 8, 123 S.Ct. at 1165, we can find no history or tradition that would elevate the issue here to a fundamental right. In fact, the case law we have found supports the contrary conclusion. We can certainly understand how a person may be shunned by a person or group that discovers his past offense. However, a state's publication of truthful information that is already available to the public does not infringe the fundamental constitutional rights of liberty and privacy. Therefore, we do not review the statute with strict scrutiny, but only under a rational basis standard.

*Id.*, at 1344.  I agree with this analysis.[53]

Plaintiffs next claim that "[l]abeling a non-dangerous registrant as high-risk to reoffend intrudes on matters of personal choice as related to marriage and family life." (Filing 345, at CM/ECF p. 158.)  The Eight Circuit's decision in *Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005), upholding an Iowa statute that prohibited a person who had committed a sex offense against a minor from residing within two thousand feet of school or child care facility, establishes that this claim does not require strict scrutiny of SORA.  Addressing the plaintiffs' substantive due process claim, the Court stated:

> We do not believe that the residency restriction of § 692A.2A implicates any fundamental right of the Does that would trigger strict scrutiny of the statute. In evaluating this argument, it is important to consider the Supreme Court's admonition that "'[s]ubstantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" *Flores*, 507 U.S. at 302, 113 S.Ct. 1439 (quoting *Collins v. Harker Heights*, 503

---

[53] Applying a rational basis standard, the Eleventh Circuit went on to hold that the plaintiff's substantive due process claim failed.

U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). While the Court has not directed that an asserted right be defined at the most specific level of tradition supporting or denying the asserted right, *cf. Michael H. v. Gerald D.*, 491 U.S. at 127 n. 6, 109 S.Ct. 2333 (1989) (opinion of Scalia, J.), the Does' characterization of a fundamental right to "personal choice regarding the family" is so general that it would trigger strict scrutiny of innumerable laws and ordinances that influence "personal choices" made by families on a daily basis. The Supreme Court's decision in *Griswold*[54] and the plurality opinion in *Moore*[55] did recognize unenumerated constitutional rights relating to personal choice in matters of marriage and family life, but they defined the recognized rights more narrowly, in terms of "intimate relation of husband and wife," *Griswold*, 381 U.S. at 482, 85 S.Ct. 1678, or "intrusive regulation" of "family living arrangements." *Moore*, 431 U.S. at 499, 97 S.Ct. 1932 (plurality opinion).

Unlike the precedents cited by the Does, the Iowa statute does not operate directly on the family relationship. Although the law restricts where a residence may be located, nothing in the statute limits who may live with the Does in their residences. The plurality in Moore emphasized this distinction, observing that the impact on family was "no mere incidental result of the ordinance," because "[o]n its face [the ordinance] selects certain categories of relatives who may live together and declares that others may not." 431 U.S. at 498-99, 97 S.Ct. 1932 (plurality opinion). Thus, the reasoning of the Moore plurality does not require strict scrutiny of a regulation that has an incidental or unintended effect on the family, *Hameetman v. City of Chicago*, 776 F.2d 636, 643 (7th Cir.1985) (upholding requirement that firemen reside within city limits), or that "affects or encourages decisions on family matters" but does not force such choices. *Gorrie v. Bowen*, 809 F.2d 508, 523 (8th Cir.1987) (upholding regulation requiring that applications for public assistance for dependent children include siblings living in same household). Similarly, the Court in *Griswold* disclaimed authority to determine "the wisdom, need, and propriety" of all laws that touch social conditions, but held

---

[54] *Griswold v. Connecticut*, 381 U.S. 479 (1965).

[55] *Moore v. City of East Cleveland*, 431 U.S. 494 (1977).

unconstitutional a state statute that "operate[d] directly on an intimate relation of husband and wife." 381 U.S. at 482, 85 S.Ct. 1678.

*Id.*, at 710-711.  *See also* *Weems v. Little Rock Police Dept.*, 453 F.3d 1010, 1015 (8th Cir. 2006) (upholding comparable residency restriction in Arkansas statute).

The Eighth Circuit's decision in *Doe v. Miller* also provides controlling precedent for Plaintiffs' claim that "[t]he in-person reporting requirements imposed on Plaintiffs by the New Act constitute an actual barrier to interstate and intrastate movement guaranteed to all citizens." (Filing 345, at CM/ECF p. 159.)  Regarding the plaintiffs' claim that Iowa's residency restrictions interfered with their constitutional right to travel, the Eighth Circuit said:

> The modern Supreme Court has recognized a right to interstate travel in several decisions, beginning with *United States v. Guest*, 383 U.S. 745, 757-58, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), and *Shapiro v. Thompson*, 394 U.S. 618, 629-30, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The Court subsequently explained that the federal guarantee of interstate travel "protects interstate travelers against two sets of burdens: 'the erection of actual barriers to interstate movement' and 'being treated differently' from intrastate travelers." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (quoting *Zobel v. Williams*, 457 U.S. 55, 60 n. 6, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982)). Most recently, the Court summarized that the right to interstate travel embraces at least three different components: "the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).

> . . .

> . . . The Iowa statute imposes no obstacle to a sex offender's entry into Iowa, and it does not erect an "actual barrier to interstate movement."

*Bray*, 506 U.S. at 277, 113 S.Ct. 753 (internal quotation omitted). There is "free ingress and regress to and from" Iowa for sex offenders, and the statute thus does not "directly impair the exercise of the right to free interstate movement." *Saenz*, 526 U.S. at 501, 119 S.Ct. 1518. Nor does the Iowa statute violate principles of equality by treating nonresidents who visit Iowa any differently than current residents, or by discriminating against citizens of other States who wish to establish residence in Iowa. We think that to recognize a fundamental right to interstate travel in a situation that does not involve any of these circumstances would extend the doctrine beyond the Supreme Court's pronouncements in this area. That the statute may deter some out-of-state residents from traveling to Iowa because the prospects for a convenient and affordable residence are less promising than elsewhere does not implicate a fundamental right recognized by the Court's right to travel jurisprudence.

. . .

We find it unnecessary in this case to decide whether there is a fundamental right to intrastate travel under the Constitution, because assuming such a right is recognized, it would not require strict scrutiny of § 692A.2A.

405 F.3d at 709-714 (footnote omitted).

I am not persuaded that SORA's in-person reporting requirements create an actual barrier to travel.  *See* *Doe v. Moore*, 410 F.3d at 1348 (requirement that registrants notify law enforcement of every change in their permanent or temporary residences did not unreasonably burden right to travel).

## 2. Rational Relationship to Legitimate Governmental Purpose

Plaintiffs argue that "[t]he stigmatization of lower-risk offenders is not rationally related to the State's interest in protecting the public from violent sexual predators." (Filing 345, at CM/ECF p. 170.)  The expressed purpose of SORA is not so limited, however.  The Nebraska Legislature made a finding "that sex offenders [in general]

-66-

present a high risk to commit repeat offenses." Neb. Rev. Stat. § 29-4002 (West, Operative Jan. 1, 2010). The Legislature further found "that efforts of law enforcement agencies to protect their communities, conduct investigations, and quickly apprehend sex offenders are impaired by the lack of available information about individuals who have pleaded guilty to or have been found guilty of sex offenses and who live, work, or attend school in their jurisdiction" and "that state policy should assist efforts of local law enforcement agencies to protect their communities by requiring sex offenders to register with local law enforcement agencies as provided by the Sex Offender Registration Act." Id.

In *Doe v. Michigan Dept. of State Police*, the Sixth Circuit Court of Appeals rejected a substantive due process claim by pointing to similar legislative findings:

> Michigan contends that its interest in the SORA and the PSOR is "to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders." Mich. Comp. Laws § 28.721a (2002). The State further argues that the public has an "interest in knowing the whereabouts of sex offenders" that "outweighs any privacy interest [that] Plaintiffs have in their criminal records, home addresses and other public registration information." Although we believe that the State's justification sweeps too broadly, especially with reference to the plaintiffs in the present case, we are constrained to conclude that the rationale articulated in the statute itself satisfies the rational-basis standard.

490 F.3d at 501. *See also Does v. Munoz*, 507 F.3d at 966 (same result).

The Eleventh Circuit similarly rejected a substantive due process claim in *Doe v. Moore*, stating:

> Here, the state articulates its reasoning for the Sex Offender Act as "protect[ing] the public from sexual abuse." Appellee's Br. at 32. The state argues that the public can use the registration "to determine whether any sex offenders live in their neighborhood, make an individual assessment of the risk, and take any precautions appropriate under the circumstances."

*Id.* at 33. We agree with the state that the Sex Offender Act meets the rational basis standard. It has long been in the interest of government to protect its citizens from criminal activity and we find no exceptional circumstances in this case to invalidate the law. We join with other courts, *see, e.g., Gunderson [v. Hvass],* 339 F.3d at 643-44, in holding that the Sex Offender Act is rationally related to a legitimate government interest.

410 F.3d at 1345-1346.

In conformity with these opinions, I conclude that Nebraska's registration and public notification requirements are relationally related to a legitimate governmental purpose. Plaintiff's substantive due process claim therefore fails.

### C.  Procedural Due Process

"Procedural due process limits the ability of the government to deprive people of interests which constitute 'liberty' or 'property' interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard." *Murray v. Neth,* 783 N.W.2d 424, 432 (Neb. 2010).

In *Doe v. Miller,* the Eighth Circuit ruled that the Iowa statute imposing residency restrictions on persons convicted of committing certain criminal offenses against minors did not offend procedural due process principles by not requiring individual risk assessments. The Court stated:

The Does also argue that § 692A.2A unconstitutionally forecloses an "opportunity to be heard" because the statute provides no process for individual determinations of dangerousness. This argument misunderstands the right to procedural due process. As the Supreme Court recently explained in connection with a comparable challenge to Connecticut's sex offender registration law, "even assuming, *arguendo,*

-68-

that [the sex offender] has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the [state] statute." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). States "are not barred by principles of '*procedural* due process' from drawing" classifications among sex offenders and other individuals. *Id.* at 8, 123 S.Ct. 1160 (quoting *Michael H. v. Gerald D.*, 491 U.S. 110, 120, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (plurality opinion)) (emphasis in original).

We likewise conclude that the Iowa residency restriction does not contravene principles of procedural due process under the Constitution. The restriction applies to all offenders who have been convicted of certain crimes against minors, regardless of what estimates of future dangerousness might be proved in individualized hearings. Once such a legislative classification has been drawn, additional procedures are unnecessary, because the statute does not provide a potential exemption for individuals who seek to prove that they are not individually dangerous or likely to offend against neighboring schoolchildren. Unless the Does can establish that the substantive rule established by the legislative classification conflicts with some provision of the Constitution, there is no requirement that the State provide a process to establish an exemption from the legislative classification. *Id.* at 7-8, 123 S.Ct. 1160. Thus, the absence of an individualized hearing in connection with a statute that offers no exemptions does not offend principles of procedural due process.

405 F.3d at 709.

Plaintiffs argue their case is distinguishable from *Connecticut Dep't of Pub. Safety v. Doe* and *Doe v. Miller* for two reasons: "First, unlike *Doe* and *Miller*, Nebraska previously afforded the specific right to the confidentiality of a registrant's information and a hearing to determine risk of reoffending." (Filing 345, at CM/ECF p. 171.) "Second, the concurring opinions in *Doe* clearly focused on the fact that the Connecticut law provided for procedures by which certain sex offenders could be exempted from the registration requirements and their information." (Filing 345, at CM/ECF p. 172.) I am not persuaded by either argument.

-69-

First, I reject Plaintiffs' unsupported contention that they have a liberty interest in their classification under the former law as low- or moderate-risk offenders whose personal information was not to be publicly disclosed. "The legislature that creates a statutory entitlement (or other property interest) is not precluded from altering or terminating the entitlement by a later enactment." *Packett v. Stenberg*, 969 F.2d 721, 726 (8th Cir. 1992) (citing *Gattis v. Gravett*, 806 F.2d 778, 780 (8th Cir. 1986). "While the legislative alteration or elimination of a previously conferred property interest may be a deprivation, the legislative process itself provides citizens with all the process they are due." *Id.* Plaintiffs are not entitled to perpetual application of the repealed SORA sections. *See Nolan v. Thompson*, 2007 WL 148815, at *4 (W.D.Mo. 2007) (state prisoner had no continuing liberty interest in application of old parole statute), *aff'd* 521 F.3d 983 (8th Cir. 2008).

Second, I find no authority for the proposition that a sex offender registry act must provide an exemption procedure in order to satisfy due process. The concurring opinion in *Connecticut Dep't of Pub. Safety v. Doe* did not imply such a requirement, but instead "merely note[d] that the Court's rejection of respondents' procedural due process claim does not immunize publication schemes like Connecticut's from an equal protection challenge." 538 U.S. at 10 (Souter, J., concurring). That is, Justice Souter simply pointed out that the exemptions provided by Connecticut's law remained open to challenge on equal protection grounds.

### D.  Retroactivity

Plaintiffs' final due process argument is that "[i]n addition to violating the *ex post facto* clause, the retroactivity of the New Act violates the due process clause because it is simply unfair, illegitimate, and arbitrary." (Filing 345, at CM/ECF p. 174.) In making this argument, Plaintiffs rely on *Doe v. Sex Offender Registration Board*, 882 N.E.2d 298 (Mass. 2008), in which the Massachusetts Supreme Judicial Court ruled that a person with a rape conviction, who had been released from probation 20 years before Massachusetts' sex offender registration law went into effect, was entitled to a hearing

to determine whether he should be exempt from registration despite the law's mandatory registration requirement for persons convicted of sexually violent offenses. The Court concluded that "the retroactive imposition of the registration requirement without an opportunity to overcome the conclusive presumption of dangerousness that flows solely from Doe's conviction, violates his right to due process under the Massachusetts Constitution." *Id.*, at 309.

This case is unpersuasive because it is based on a "reasonableness" test that is unique to Massachusetts.  As explained by the Massachusetts court:

> Retroactive laws must meet the test of "reasonableness" to comport with State constitutional due process requirements. [*American Mfrs. Mut. Ins. Co. v. Commissioner of Ins.*, 374 Mass. 181, 372 N.E.2d 520 (1978)] at 190, 372 N.E.2d 520. "[O]nly those retroactive statutes 'which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional.' " *St. Germaine v. Pendergast*, 416 Mass. 698, 702, 626 N.E.2d 857 (1993), quoting *Leibovich v. Antonellis*, 410 Mass. 568, 577, 574 N.E.2d 978 (1991). The burden is on the challenger to make a factual showing that the statute is irrational in its application. Ultimately, the "principal inquiry-as to reasonableness-is essentially a review of whether it is equitable to apply the retroactive statute against the plaintiffs." *American Mfrs. Mut. Ins. Co. v. Commissioner of Ins., supra* at 191, 372 N.E.2d 520.

882 N.E.2d at 305.

In the present case, the reasonableness test of the Due Process Clause of the United States Constitution "is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Honeywell, Inc. v. Minnesota Life and Health Ins. Guar. Ass'n*, 110 F.3d 547, 555 (8th Cir. 1997) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984)). I have no reason to believe Nebraska would apply a different test.

It is reasonable to conclude that retroactive application of SORA furthers the public safety purpose of the legislation.  No further showing is required.

## *V.*

### *Eleventh and Twelfth Causes of Action–Equal Protection Claim*

No State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Constitution, Amend. XIV.  "No person shall . . . be denied equal protection of the laws." Neb. Const., Art. I, § 3. "The Equal Protection Clause keeps governmental decision makers from treating disparately persons who are in all relevant respects similarly situated." *Bills v. Dahm*, 32 F.3d 333, 335 (8th Cir. 1994) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Plaintiffs claim "[t]he New Act violates the Equal Protection Clauses in the United States and Nebraska Constitutions because it is intended solely to disadvantage an unpopular group, and because it treats similarly situated individuals differently with stigmatizing effect." (Filing 345, at CM/ECF p. 177.)  They also claim that "the New Act infringes on fundamental rights, specifically the right in one's reputation and name, right to the integrity of a family, right to travel, right to earn a living, and the right to privacy."  (Filing 345, at CM/ECF p. 178.)

Convicted sex offenders may be an "unpopular group," but they are not a "suspect class" for equal protection purposes.  The SORA amendments therefore are subject to scrutiny under the rational basis test.  *See Cutshall v. Sundquist*, 193 F.3d 466, 482-483 (6th Cir. 1999) (holding Tennessee Sex Offender Registration and Monitoring Act did not violate plaintiff's right to equal protection of the laws because "[g]iven the indications that sex offenders pose a particular threat of reoffending, we cannot say that the Act is irrational.").

I have already determined in connection with Plaintiffs' substantive due process claim that Nebraska's registration and public notification requirements are relationally related to a legitimate governmental purpose. This determination also disposes of Plaintiffs' equal protection claim. *See Executive Air Taxi Corp. v. City of Bismarck,* 518 F.3d 562, 569 (8th Cir. 2008) ("A rational basis that survives equal protection scrutiny also satisfies substantive due process analysis.") (citing *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 470 n. 12 (1981), and *Indep. Charities of Am., Inc. v. Minnesota,* 82 F.3d 791, 798 (8th Cir. 1996)).

## VI.

### Thirteenth Cause of Action–Special Legislation Claim

"The Legislature shall not pass local or special laws in any of the following cases, that is to say: Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . .. In all other cases where a general law can be made applicable, no special law shall be enacted." Neb. Const., Art. III, § 18.

"The focus of the prohibition against special legislation is the prevention of legislation which arbitrarily benefits or grants 'special favors' to a specific class." *Yant,* 784 N.W.2d at 106. Plaintiffs make no such claim. In fact, they argue just the opposite, claiming that "[t]he 'privilege' or 'special favor' is gained by everyone not on the registry . . .." (Filing 345, at CM/ECF p. 182.)

## VII.

### Sixteenth and Seventeenth Causes of Action–Contracts Clause Claim

"No State shall . . . pass any . . . Law impairing the Obligation of Contracts, . . .."

-73-

U.S. Constitution, Art. 1, § 10.  "No . . . law impairing the obligation of contracts . . . shall be passed."  Neb. Const., Art. I. § 16.

"A three-part test determines whether a statute violates the Contracts Clause. 'The first question is whether the state law has, in fact, operated as a substantial impairment on pre-existing contractual relationships.'" *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 436 (8th Cir. 2007) (quoting *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 850 (8th Cir. 2002)). "This question 'has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial.'" *Id.*, (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)). *See also Halpin v. Nebraska State Patrolmen's Retirement System*, 320 N.W.2d 910, 913 (Neb. 1982) ("Where . . . it is claimed that the contract clause prohibits a state's statutory modification of its own obligations, the court must determine whether contractual obligations within the purview of the contract clause exist; if so, whether the state legislation under attack impaired those obligations; and if there is an impairment of contract, whether it is forbidden by the Constitution.") (quoting *Pineman v. Oechslin*, 494 F.Supp. 525, 538 (D.Conn. 1980)).  "The second prong of the three-part test is whether the state has a 'significant and legitimate public purpose behind the regulation.'" *Hawkeye Commodity Promotions, Inc.*, 486 F.3d at 438 (quoting *Janklow*, 300 F.3d at 850).  "The third prong is 'whether the adjustment of the "rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption."'" *Id.*, at 439 (quoting *Janklow*, 300 F.3d at 850 (alterations in original)).

Plaintiffs contend that plea agreements are treated as contracts both in the Eighth Circuit and in Nebraska.  *See King v. United States*, 595 F.3d 844, 853 (8th Cir. 2010) ("Plea agreements are essentially contracts between the defendant and Government"); *State v. Thompson*, 735 N.W.2d 818, 826 (Neb. App. 2007) ("[P]lea agreements are contracts").  *But cf. United States v. Olesen*, 920 F.2d 538, 541 (8th Cir. 1990) ("Plea agreements are *like* contracts; however, they are not contracts, and therefore contract

doctrines do not always apply to them.") (emphasis in original).  Although it may be questioned whether plea agreements fall within the reach of the Contracts Clause, *see, e.g., State v. Holt,____ P.3d____, 2010 WL 2105180, at *6 (Utah App. May 27, 2010)* (raising but not deciding issue), I will assume this element is satisfied.

Plaintiffs next contend that "[t]he New Act retroactively changes the previous obligations and increases the restrictions on registrants. It lengthens the registration duration; significantly increases the frequency of in-person reporting, potentially to an everyday occurrence; eliminates due process hearings; subjects registrants to public notification who were previously low and moderate risk offenders; increases the depth and breadth of registry information collected; infringes on the right to free speech; undermines the Fourth Amendment; etc., etc." (Filing 345, at CM/ECF p. 184.)  The principal problem with this contention is the lack of a showing by Plaintiffs that any provisions of the prior law were incorporated into their plea agreements.  Plaintiffs simply claim that "[w]hen the Does who entered into plea agreements did so, they did so knowing that *by operation of law* they would be subject to the sex offender registry . . . for a period of ten years, they understood the classification system and how it determined risk and that they would only be subject to notification if they were classified as high risk." (Filing 345, at CM/ECF p. 186 (emphasis supplied).)[56]

It is generally presumed "that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Honeywell, Inc.,* 110 F.3d at 552 (quoting *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.,* 470 U.S. 451, 465-66 (1985)).  "[A] statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State." *Id.* (quoting *United States Trust Co. v. New Jersey,* 431 U.S. 1, 17 n. 14 (1977)).  There is

---

[56] The Nebraska Supreme Court has held that SORA's registration requirements are a "collateral consequence" of a plea that do not need to be explained before a plea is accepted.  *See State v. Schneider,* 640 N.W.2d 8, 12 (Neb. 2002)

nothing in the former Nebraska law that evidences an intent to give plea bargainers a contractual or vested right in the law's registration and notification provisions.

Because Plaintiffs have failed to show any impairment of the terms of their plea agreements, their Contracts Clause claim fails the first prong of the three-part test described in *Hawkeye Commodity Promotions, Inc.*[57]   Summary judgment will be entered in favor of Defendants.

## VIII.

### Eighteenth Cause of Action–Separation of Powers Claim

"The powers of the government of this state are divided into three distinct departments, the legislative, executive, and judicial, and no person or collection of persons being one of these departments shall exercise any power properly belonging to either of the others except as expressly directed or permitted in this Constitution." *Neb. Const., Art. II § 1(1)*. "The separation of powers doctrine prohibits one branch of government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives." *Slack Nursing Home v. Department of Soc. Servs.,* 528 N.W.2d 285, 294 (Neb. 1995), *disapproved on other grounds, Betterman v. Department of Motor Vehicles,* 728 N.W.2d 570 (Neb. 2007).

Plaintiffs argue the Nebraska Legislature has usurped the power of the courts by amending SORA to modify the sentences of registrants who were sentenced prior to January 1, 2010:

---

[57] While I do not reach the other two prongs, I note that the 2009 amendments to SORA generally were intended to bring Nebraska law into compliance with the federal Adam Walsh Act, the declared purpose of which is "to protect the public from sex offenders and offenders against children, . . .." 42 U.S.C. § 16901.

Before implementation of the New Act, the sentencing court had discretion to exempt a defendant from the registration requirements for specified crimes. Neb. Rev. Stat. § 29-4003(2) (Rev. 2006). That determination was made a part of the sentencing order. *Id.* If the defendant was subject to lifetime registration, the sentencing court must find that the defendant committed an aggravated offense, had a prior conviction for a registrable offense, or was required to register for life in another jurisdiction. Neb. Rev. Stat. § 29-4005(2) (Rev. 2006). That, too, was made a part of the sentencing order. *Id.* If the sentencing order failed to include one of the three lifetime triggering factors, the defendant was subject to a ten-year registration period. Neb. Rev. Stat. § 29-4005(1) (Rev. 2006). The sentencing court advised a defendant of the obligation to register during sentencing. Neb. Rev. Stat. § 29-4007(1) (Rev. 2006). *See also State v. Blythman*, 201 Neb 285 (Neb. 1978) (orders determining current status and current treatability of sexual sociopath are final orders).

All registrants received final orders when originally convicted and sentenced, and many received further final orders when they appealed their classification of risk. Under the previous registration act, the sentencing court was required to include in the sentence order registration information and provide information about the registration obligation. The sentence also included a finding that the defendant was required to register for life (through inclusion in the order) or for ten years (through omission from the order). The New Act retroactively changed these sentence orders, and now imposes a new sentence through the alteration of terms contained within the orders.

(Filing 345, at CM/ECF pp. 189-190.)

For this argument, Plaintiffs rely on a recent decision by the Ohio Supreme Court, *State v. Bodyke*, ___ N.E.2d ___, 2010 WL 2219064 (Ohio June 3, 2010), which held that amendments made to Ohio's sex offender registration law, requiring the attorney general to reclassify offenders who previously were classified by Ohio judges, violates the separation-of-powers doctrine. The court determined that the "provisions governing the reclassification of sex offenders already classified by judges under Megan's Law violate the separation-of-powers doctrine for two related reasons: the

-77-

reclassification scheme vests the executive branch with authority to review judicial decisions, and it interferes with the judicial power by requiring the reopening of final judgments." *Id.*, 2010 WL 2219064 at *11. This case is readily distinguishable since under Nebraska's former law, the classification of offenders was made by the Nebraska State Patrol, not the courts. *See* Neb. Rev. Stat. § 29-4013 (Reissue 2008).

Plaintiffs state that under the former law "the sentencing court had discretion to exempt a defendant from the registration requirements for specified crimes" (filing 345, at CM/ECF p. 189), but this is not accurate. As I read the law, there was no discretionary exemption; instead, courts were required to make a determination of whether persons convicted of certain offenses were within the scope of the registration requirements. Both before and after being amended by LB 97 and LB 285, Section 29-4003(1) provided that persons required to register included those convicted of "[k]idnapping a minor pursuant to section 28-313, except when the person is the parent of the minor and was not convicted of any other offense in this section;" "[f]alse imprisonment of a minor pursuant to section 28-314 or 28-315;" and "[d]ebauching a minor pursuant to section 28-805[.]" Former Section 29-4003(2) provided that "[i]n the case of a person convicted of a violation of section 28-313, 28-314, 28-315, or 28-805, the convicted person shall be subject to the Sex Offender Registration Act, unless the sentencing court determines at the time of sentencing, in light of all the facts, that the convicted person is not subject to the act." Neb. Rev. Stat. § 29-4003(2) (Reissue 2008).

Plaintiffs also state that under the former law "[i]f the defendant was subject to lifetime registration, the sentencing court must find that the defendant committed an aggravated offense, had a prior conviction for a registrable offense, or was required to register for life in another jurisdiction." (Filing 345, at CM/ECF p. 189.) Again, these are findings that did not involve an exercise of discretion by the sentencing court. *See State v. Worm*, 680 N.W.2d at 161 ("[T]hat the sentencing court must find whether an aggravated offense occurred as part of the sentencing order does not indicate an intent to impose punishment because the court has no discretion; the finding is mandatory.").

-78-

Under former Section 29-4007, as now, the sentencing courts simply notified those persons convicted of registrable offenses of their obligations under SORA. This notification procedure does not prevent the legislature from changing the law.

## *CONCLUSION*

A trial is necessary to determine the constitutionality of Neb. Rev. Stat. §§ 29-4006(1)(k)&(s), 29-4006(2), and 28-322.05 (West, Operative Jan. 1, 2010), except insofar as I have determined that § 29-4006(2) violates the Fourth Amendment rights of Plaintiffs who were previously convicted of sex crimes but who were not on probation, parole or court-monitored supervision on or after January 1, 2010. As to all other statutory provisions enacted or amended by Nebraska Laws 2009, LB 97 and LB 285, I find no merit to Plaintiffs' constitutional challenges.[58]

Accordingly,

IT IS ORDERED:

1.    Defendants' original motion for summary judgment (Case No. 8:09CV456 filing 317, Case No. 4:09CV3266 filing 23, Case No. 4:10CV3004 filing 22, Case No. 4:10CV3005 filing 17) is denied without prejudice, as moot.

2.    Defendants' amended motion for summary judgment (Case No. 8:09CV456 filing 336, Case No. 4:09CV3266 filing 35, Case No. 4:10CV3004 filing 34, Case No. 4:10CV3005 filing 29) is granted in part and denied in part, as follows:

---

[58] I have considered all claims alleged by Plaintiffs, and all arguments presented in their briefs. If a particular claim or argument is not discussed in this opinion, it is only because I deemed such a discussion redundant or otherwise unnecessary to an understanding of the opinion.

      a.     The motion is granted as to all claims alleged by Plaintiffs, except their claims challenging the constitutionality of:

         (1)     Neb. Rev. Stat. § 29-4006(1)(k)&(s) (West, Operative Jan. 1, 2010);

         (2)     Neb. Rev. Stat. § 29-4006(2)(West, Operative Jan. 1, 2010); and

         (3)     Neb. Rev. Stat. § 28-322.05 (West, Operative Jan. 1, 2010).

      b.     As to those excepted claims, the motion is denied.

3.     Plaintiffs' motion for summary judgment (Case No. 8:09CV456 filing 344, Case No. 4:09CV3266 filing 41, Case No. 4:10CV3005 filing 35) is granted in part and denied in part, as follows:

      a.     The motion is granted with respect to their claim that Neb. Rev. Stat. § 29-4006(2) violates the Fourth Amendment rights (and corresponding rights under Nebraska Constitution, Art. I, § 7) of Plaintiffs who were previously convicted of sex crimes but who were not on probation, parole or court-monitored supervision on or after January 1, 2010.

      b.     In all other respects, the motion is denied.

4.     Defendants' objections to Plaintiffs' exhibits (Case No. 8:09CV456 filing 349, Case No. 4:09CV3266 filing 46, Case No. 4:10CV3005 filing 40) are denied without prejudice.

5.     Within 30 days, the parties shall provide me with a stipulation designating those Plaintiffs who fit within this category–"sex offenders" who were not on probation, parole or court-monitored supervision as of January 1, 2010–together with the date when the offender was no longer under criminal justice supervision.  If, for some reason, the parties cannot reach agreement, they shall arrange a telephone conference with me by contacting my judicial assistant.

6.    These cases are referred to Magistrate Judge Zwart for further progression, as appropriate.


August 16, 2010.                 BY THE COURT:

                                 *Richard G. Kopf*
                                 United States District Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.