IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN and JANE DOE 1-36, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | 8:09CV456 |
| v. | ) | |
| STATE OF NEBRASKA, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| JOHN DOE, et al., | ) | |
| Plaintiff, | ) | 4:09CV3266 |
| | ) | |
| v. | ) | |
| STATE OF NEBRASKA, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| JOHN DOE, et al., | ) | |
| Plaintiff, | ) | 4:10CV3005 |
| | ) | |
| v. | ) | |
| STATE OF NEBRASKA, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on the plaintiffs' motion to compel the defendants to comply with discovery requests (filing no. 374). For the reasons set forth below the motion is granted in part and denied in part.

BACKGROUND

These consolidated cases involve the plaintiffs' challenge to the constitutionality of amendments to Nebraska's Sex Offender Registration Act ("SORA"). The plaintiffs are challenging parts of Legislative Bills 97 (LB 97) and 285 (LB 285) which were passed by the

Nebraska Legislature and signed into law by the Governor in May of 2009. The parties filed competing motions for summary judgment, and the Honorable Richard G. Kopf issued his ruling on August 16, 2010, (filing no. 354).

Although many of the issues were resolved by summary judgment, Judge Kopf determined several issues of fact remained. Specifically, the following issues remain for trial:

- Whether Neb. Rev. Stat. §§ 29-4006(1)(k)&(s), 29-4006(2), and 28-322.05, either alone or collectively impose a punishment for (1) offenders who had served their time and were no longer under criminal justice supervision on January 1, 2010; and (2) offenders who had been sentenced prior to January 1, 2010, but remained under criminal justice supervision on or after January 1, 2010, in violation of the Ex Post Facto Clause either on the face of the statutes or as applied.

- Whether Neb. Rev. Stat. § 29-4006(2) violates the Fourth Amendment as to offenders who were previously convicted of sex crimes and who were on probation, parole or court-monitored supervision on or after January 1, 2010.

- How Neb. Rev. Stat. § 28-322.05 actually operates and whether its operation violates the Due Process Clause of the Fourteenth Amendment and the First Amendment.

- How Neb. Rev. Stat. § 29-4006(1)(k)&(s) actually operates and whether it violates plaintiffs' First Amendment Right to free speech.

2

Discovery commenced, and the plaintiffs have served Interrogatories and Requests for Production on the various defendants. The respective defendants have raised several objections to a number of the Interrogatories and Requests for Production, including the following:

**Defendant Douglas County Attorney**

Interrogatory No. 2: Identify all documents and any correspondence, in any form or medium, which relate in any way to the enforcement of the Nebraska Sex Offender Registration Act over the past three (3) years.

Response: This is a facial and as-applied challenge to the Nebraska Sex Offender Registration Act and, therefore, Defendants object to this interrogatory as overly broad, unduly burdensome, lacking any relevance to the issues in this suit, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, to the extent any documents exist, they are subject to the attorney-client, work product, and legislative privilege.

**Defendant Jon Bruning, Nebraska Attorney General**

Interrogatory No. 1: Identify all organizations and individuals consulted in the drafting and editing of the current version of the Nebraska Sex Offender Registration Act.

Response: This is a facial and as-applied challenge to the Nebraska Sex Offender Registration Act and, therefore, Defendants object to this interrogatory as overly broad, unduly burdensome, lacking any relevance to the issues in this suit, and not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory No. 2:    Identify all documents and any correspondences, in any form or medium, which relate in any way to the allegations in the Amended Complaint or the Answer to the Amended Complaint.

Response:    This is a facial and as-applied challenge to the Nebraska Sex Offender Registration Act and, therefore, Defendants object to this interrogatory as overly broad, unduly burdensome, lacking any relevance to the issues in this suit, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, to the extent any documents exist, they are subject to the attorney-client, work product, and legislative privilege.

**Defendant State of Nebraska**

Interrogatory No. 1:    Identify all State employees involved in drafting and editing the current version of the Nebraska Sex Offender Registration Act.

Response:    This is a facial and as-applied challenge to the Nebraska Sex Offender Registration Act and, therefore, Defendants object to this interrogatory as overly broad, unduly burdensome, lacking any relevance to the issues in this suit, and not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory No. 2:    Identify all documents and any correspondences, in any form or medium, in the custody of the State, including the State Legislature, that relate in any way to the allegations in the Amended Complaint and the Answer to the Amended Complaint.

Response:    This is a facial and as-applied challenge to the Nebraska Sex Offender Registration Act and, therefore, Defendants object to this interrogatory as overly broad, unduly burdensome, lacking any relevance to the issues in this

suit, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, to the extent any documents exist, they are subject to the attorney-client, work product, and legislative privilege.

**Requests for Production as to all Defendants**

Request No. 1:      All communications and correspondences between the Nebraska Attorney General's Office and the Nebraska State Legislature regarding LB 285, including, but not limited to, all electronically stored communication or correspondence.

Request No. 2:      All communications and correspondence between the Nebraska Attorney General's Office and Nebraska State Legislature regarding LB 97, including, but not limited to, all electronically stored communication or correspondence.

Request No. 3:      All interoffice communication and correspondences within the Nebraska Attorney General's Office regarding the drafting and editing of LB 285, including, but not limited to, all electronically stored communication or correspondence.

Request No. 4:      All interoffice communication and correspondences within the Nebraska Attorney General's Office regarding the drafting and editing of LB 97, including, but not limited to, all electronically stored communication or correspondence.

Request No. 5:      All interoffice communication within the Nebraska Legislature regarding the drafting, editing, debate, and passage of LB 285, including, but not limited to, all electronically stored communication or correspondence.

| | |
|---|---|
| Request No. 6: | All interoffice communication within the Nebraska Legislature regarding the drafting, editing, debate, and passage of LB 97, including, but not limited to, all electronically stored communication or correspondence. |
| Request No. 7: | All interoffice communication and correspondence within the Nebraska State Patrol regarding LB 285, including, but not limited to, all electronically stored communication or correspondence. |
| Request No. 8: | All interoffice communication and correspondence within the Nebraska State Patrol regarding LB 97, including, but not limited to, all electronically stored communication or correspondence. |
| Request No. 9: | All other memorandum, notes, and other documents relating to the drafting, editing, debate, or passage of LB 285. |
| Request No. 10: | All other memorandum, notes, and other documents relating to the drafting, editing, debate, or passage of LB 97. |
| Request No. 12: | For the past three (3) years, all documentation and correspondence of any kind, including, but not limited to, electronic information and correspondence, pertaining to the enforcement of the Nebraska Sex Offender Registration Act. |
| Request No. 13: | For the past three (3) years, all documentation and correspondence of any kind, including, but not limited to, electronic information and correspondence, pertaining to the interpretation of the Nebraska Sex Offender Registration Act. |
| Response to All: | This is a facial and as-applied challenge to the Nebraska Sex Offender Registration Act and, therefore, Defendants |

> object to this interrogatory as overly broad, unduly burdensome, lacking any relevance to the issues in this suit, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, to the extent any documents exist, they are subject to the attorney-client, work product, and legislative privilege.

## ANALYSIS

Parties may discover relevant, unprivileged information that is admissible at trial or reasonably calculated to lead to admissible evidence. Fed. R. Civ. P. 26(b)(1).

> Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. Kramer v. Boeing Co., 126 F.R.D. 690, 692 (D.Minn.1989) (and cases cited therein). While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), Culligan v. Yamaha Motor Corp., USA, 110 F.R.D. 122 (S.D.N.Y.1986), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).

Once the requesting party meets the threshold relevance burden, "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing to bear that burden." Continental Ill. Nat'l Bank & Trust Co. Of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991). The party opposing the motion to compel must provide specific

explanations or factual support as to how each request is improper. St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000).

"The fact that production of documents would be burdensome and expensive and would hamper a party's business operation is not a reason for refusing to order production of relevant documents." Wagner v. Dryvit Systems, Inc., 208 F.R.D. 606, 610 (D. Neb. 2001) (internal citations omitted). The standard is whether the burden or expense is "undue" and whether the "hardship is unreasonable in the light of the benefits to be secured from the discovery." Id. (quoting Wright, Miller & Marcus, Federal Practice and Procedure § 2214, p. 435 (1994)). A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required. See Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 213 (D. Kan. 2002).

With these basic principles in mind, each of the defendants' objections regarding the motion to compel are addressed below.

1. **Relevance**

The defendants assert that much of the information requested by the plaintiffs is not relevant. For instance, the defendants argue that none of the requested information may be used to establish legislative intent and only the plain language of the statute and the official legislative history may be used to determine the express or implied intent of the legislature. Further, they argue, information from the Douglas County Attorney, the Nebraska Attorney General's Office and the Nebraska State Patrol cannot lead to the discovery of admissible evidence.

It is true, particularly in Ex Post Facto Clause cases, that courts generally do not look beyond the face of the statute, the stated purpose of the statute, and the official legislative history.

See United States v. May, 535 F.3d 912, 919-920 (8th Cir. 2008); see also In re DNA Ex Post Facto Issues, 561 F.3d 294, 298 (4th Cir. 2009)(stating the court considers the structure and design of the statute as well as the declared legislative intent); Hatton v. Bonner, 356 F.3d 955, 961-62 (9th Cir. 2004)(considering the official statements of the legislature and the structure of the statute); Femedeer v. Haun, 227 F.3d 1244, 1249 (10th Cir. 2000)(considering the language of the statute and the legislative record); Taylor v. State of Rhode Island, 101 F.3d 780, 783-84 (1st Cir. 1996). However, these cases do not address the use of other evidence of legislative intent, nor do they discuss whether such an inquiry is appropriate. Thus, they do not expressly rule out the use of materials beyond the official legislative record, nor comment on whether such inquiries are proper. See Kay v. City of Rancho Palos Verdes, case no. cv02-03922, 2003 WL 25294710 at *8-9 (C.D.Cal. 2003)(finding case law did not expressly forbid further inquiry into legislative intent in a case involving a "Bill of Attainer" claim).

Moreover, a number of cases, particularly those involving potential violations of constitutional rights, have allowed queries into legislators' motivations. See South Dakota Farm Bureau Inc. v. Hazeltine, 340 F.3d 583, 594-96 (8th Cir. 2003) (reviewing meeting notes and materials to determine whether a discriminatory intent existed); see also Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 268 (1977) (noting it may be appropriate to examine legislative motivations); Hayden v. Paterson, 594 F.3d 150, 163 (2d Cir. 2010) (noting discriminatory intent is rarely susceptible to direct proof, and historical background is a proper source of inquiry in a due process case). While those cases did not involve the Ex Post Facto clause, they do address other constitutional rights in which legislative intent was at issue.

As Judge Kopf noted in his opinion on the competing summary judgment motions, the acrimonious statements by the legislator who introduced the bill provides some evidence that sections LB 97 and LB 285 were meant to be punitive. Thus, given the mandate on the parties to further develop the record, the unique nature of the disputed statutes, and the case law finding review of legislative materials is not strictly forbidden in all cases, the court does not believe

inquiries into the legislative intent behind the drafting, implementation and enforcement of the statutes in question are irrelevant. Thus, the court overrules defendants' relevancy objections.

2. **Overly Broad**

Defendants also argue that the disputed discovery requests are overly broad. A few of plaintiffs' request do not appear to be narrowly tailored enough to meet the threshold showing of relevance.

    a. **Discovery seeking information regarding SORA, as it existed prior to January 1, 2010**

Requests for Production Nos. 12 and 13 seek information from the past three (3) years related to interpretation and enforcement of the Nebraska Sex Offender Registration Act. However, such a request likely requires the production of information well beyond the disputed statutes in question. Likewise, Interrogatory No. 2, served on defendant Douglas County Attorney, Donald Kleine requests for three (3) years worth of correspondence and documents related to the enforcement of the Nebraska Sex Offender Registration Act.

The vast majority of the statutes in the Nebraska Sex Offender Registration Act are not implicated in the present case. Indeed, the plaintiffs have not explained, nor does the court understand, how the enforcement of the Nebraska Sex Offender Registration Act, as it existed prior to January 1, 2010 is relevant to this proceeding. Thus, to the extent the requests seek information about the enforcement Nebraska Sex Offender Registration Act as it existed prior to January 1, 2010, that information is not relevant and the plaintiffs' motion to compel is denied to that extent.

    b. **Interrogatories requesting "all" documents which relate "in any way" to the Amended Complaint or Answer.**

10

Interrogatory No. 2 served on the Nebraska Attorney General and Interrogatory No. 2 served on the State of Nebraska ask the defendants to identify "all" documents and correspondence, "that relate in any way" to the allegations in the Amended Complaint and the Answer to the Amended Complaint. These requests are not limited in any way and are akin to asking the defendants to identify "all documents related in any way to this case." The request makes no allowance for the fact a number of the claims in the Amended Complaint have been disposed of, thus, it is likely documents and communications included in these Interrogatories are no longer relevant to this case. The unfettered nature of these requests appears to be a fishing expedition. See, e.g, WWP, Inc. v. Wounded Warriors Family Support, Inc., 628 F.3d 1032, 1038 (8th Cir. 2011)(upholding the district court's determination that a request seeking all documents without regard to source or location was overly broad). Therefore, Interrogatory No. 2 served on the Nebraska Attorney General and Interrogatory No. 2 served on the State of Nebraska are overly broad.

### 3. Privileges

The defendants also assert several evidentiary privileges which, they argue, preclude responses to virtually all of the disputed discovery. The respective privileges will be discussed in turn below.

#### a. Federal Law Applies

The parties apparently disagree on whether federal law or state law applies to the privileges asserted in this case. Fed. R. Evid. 501 provides:

> Except as otherwise required . . . the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of

> common law as they may be interpreted by the courts of the United States in light of reason and experience. . . . However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.

Courts that have addressed the issue in cases based on federal question jurisdiction have routinely applied federal privilege law. See Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985); Geissal v. Moore Medical Corp., 192 F.R.D. 620, 623 (E.D. Mo. 2000); see also In re Sealed Case, 381 F.3d 1205, 1212 n. 7 (D.C. Cir. 2004)(when a case is before a federal court on the basis of federal question jurisdiction, federal law of privilege applies even where pendent state law claims are present). In the instant case, the matter is before the court on federal question jurisdiction. Thus, the court will apply the federal law of privilege.

### b. Legislative Privilege

Much of the parties' time and effort regarding this dispute centers around whether the defendants are protected by the common law legislative privilege – one that defendants allege protects state legislators from having to respond to discovery requests. The genesis of this privilege is found in the Speech and Debate Clause of the United States Constitution. Article I, Section 6, provides that "for any Speech or Debate in either House" legislators "shall not be questioned in any other Place." Based on this language, courts have found that federal Senators and Representatives are protected from civil actions in at least two respects: (1) federal legislators benefit from "legislative immunity" and are absolutely immune from suit for actions they engaged in as part of the legislative process and (2) federal legislators also benefit from a "legislative privilege" that protects federal legislators from having to testify or supply

other evidence in many instances.[1] Supreme Court of Va. v. Consumers Union of the United States, 446 U.S. 719, 732-34 (1980); Rodriguez v. Pataki, 280 F.Supp.2d 89, 94-6 (S.D.N.Y. 2003). The evidentiary privilege has been interpreted to allow federal legislators to avoid the production of documents in certain cases. See Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 420 (D.C. Cir. 1995).

The Speech and Debate Clause only applies to members of Congress and Senators and does not, by its plain language, apply to state legislators. However, Federal courts have wrestled with whether a common law evidentiary legislative privilege applies to state legislators.[2] See Village of Arlington Heights, 429 U.S. at 268; National Assn. of Social Workers v. Harwood, 69 F.3d 622, 631 (1st Cir. 1995); Star Distribs. Ltd. v. Marino, 613 F.2d 4, 9 (2d. Cir. 1980); Rodriguez, 280 F.Supp.2d at 94-6; Miles-Un-Ltd., Inc., v. Town of New Shoreham, 917 F.Supp. 91, 97 (D.N.H. 1996). While a few such cases have held that state and local government legislators are immune from providing testimony in most civil cases,[3] the evidentiary legislative privilege has not been extended to all document production. See Small v. Hunt, 152 F.R.D. 509, 513 (E.D.N.C. 1994); Marylanders for Fair Representation,

---

[1] The most often cited rational for the Speech and Debate Clause is two-fold: (1) the need to avoid interference by the Executive or Judiciary Branches and (2) "the desire to protect legislative independence." United States v. Gillock, 445 U.S. 360, 369 (1980).

[2] It is true state legislators are absolutely immune from suit in actions brought in federal court under 42 U.S.C. § 1983. See Tenney v. Brandhove, 341 U.S. 367 (1951). However, Tenney and its progeny do not stand for the proposition that state legislators are never required to supply evidence in a federal civil case where, like the instant case, there is no threat of personal liability to any of the state legislators.

[3] The legislative privilege does not exist for state legislators in federal criminal prosecutions. United States v. Gillock, 445 U.S. 360, 373-74 (1980); United States v. Vesterso, 828 F.2d 1234, 1243 (8th Cir. 1987).

Inc. v. Schaefer, 144 F.R.D. 292, 302 n. 20 (D. Md. 1992). That is, state and local officials may be protected from testifying, but are not necessarily exempted from producing documents.

Indeed, in most cases the only evidentiary legislative privilege regarding the production of documents available to state legislators (and other local government officials) is a very narrow and qualified one, sometimes referred to as a "deliberative process privilege."[4] See In re Grand Jury, 821 F.2d 946, 958-59 (3d Cir. 1987); Kay, 2003 WL 25294710 at *8-9; Rodriguez, 280 F. Supp. 2d at 95-6; Newport Pacific Inc. v. County of San Diego, 200 F.R.D. 628, 637-639 (S.D. Cal. 2001); Manzi v. DiCarlo, 982 F.Supp 125 (E.D.N.Y. 1997); Florida Assn. of Rehabilitation Facilities, Inc. v. State of Florida Dept. of Health and Rehabilitation Services, 164 F.R.D. 257, 266-68 (N.D. Fla. 1995); Corporation Insular de SeGuros v. Garcia, 709 F.Supp. 288 (D. Puerto Rico 1989).

The deliberative process privilege protects only the legislative decision making process. Courts have recognized the value of the privilege "to protect the confidentiality of communications with the office-holder involving the discharge of his or her office . . . ." Florida Assn. of Rehabilitation Facilities, Inc., 164 F.R.D. at 267. This privilege is generally deemed to apply only to "communications involving opinions, recommendations or advice about legislative decisions." In re Grand Jury, 821 F.2d at 959. Such materials may be entitled to protection in order to "promote earnest discussion within governmental walls." Corporacion Insular, 709 F.Supp. at 296 (citing United States v. Nixon, 418 U.S. 683, 705 (1974)). However, documents containing factually based information used in the decision-making process or disseminated to legislators or committees, such as committee reports and minutes

---

[4] While some courts have created a distinction between an evidentiary legislative privilege and the deliberative process privilege, commentators have opined that the deliberative process privilege, particularly when applied to document production, is simply one type of legislative privilege. See 26A Wright and Graham, Federal Practice and Procedure: Evidence § 5675 (West 2010); see also Corporation Insular, 709 F.Supp at 295.

of meetings, are not entitled to protection under the deliberative process privilege. See Miles-Un-Ltd., 917 F.Supp. at 100-01(allowing for the discovery of records and documentation pertaining to the challenged city ordinance); Florida Assn. of Rehabilitation Facilities, Inc., 164 F.R.D. at 267; Small, 152 F.R.D. at 513; Marylanders for Fair Representation, Inc., 144 F.R.D. at 302, n. 20 (D. Md. 1992).

Various courts have provided guidelines for the application of the deliberative process privilege with regard to requests for production of documents. See Qamhiyah v. Iowa State University, 245 F.R.D. 393, 396-97 (S.D. Iowa 2007) (applying the deliberative process privilege in the context of a claim under the Freedom of Information Act); see also Corporation Insular, 709 F.Supp. at 295; Florida Assn. of Rehabilitation Facilities, Inc., 164 F.R.D. at 267-68 . These cases generally hold that a deliberative process privilege is qualified and protects only documents which are pre-decisional, deliberative and reflect the subjective intent of the legislators. Qamhiyah, 245 F.R.D. at 396. That is, the document must have been prepared before the law or policy was enacted, must relate directly to the decision making process, and must contain opinion or subjective material. See Missouri Coalition for Environment Foundation v. U.S. Army Corps of Engineers, 542 F.3d 1204, 1211 (8th Cir. 2008)(discussing the deliberative privilege in the context of the Freedom of Information Act). Objective facts will not be shielded from production by the deliberative process privilege. See United States v. Irvin, 127 F.R.D. 169, 172 (C.D. Cal. 1989).

Further, even if the documents requested appear to fall under the auspices of the deliberative process privilege, protection from production is not a given. Courts evaluating whether to apply the deliberative process privilege generally treat it as a qualified privilege and only protect documents from discovery after applying a balancing test based on the following factors: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank

15

and independent discussion regarding contemplated policies and decisions." Qamhiyah, 245 F.R.D. at 396 (quoting F.T.C. v. Warner Communications, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984)); see also Rodriguez, 280 F.Supp.2d at 101 (quoting In re Franklin Nat'l Bank Secs. Litig., 478 F.Supp. 577, 583 (E.D.N.Y. 1979).

In this case, several of the interrogatories and requests for production appear to implicate the legislative privilege. For instance, Requests for Production Nos. 5, 6, 9, 10, 12 and 13 all request documents and correspondence which could include those produced by legislators or their aides. The plaintiffs argue the legislative privilege is inapplicable, while the defendants are attempting to claim essentially all of the disputed discovery requests are subject to the legislative privilege. Neither parties' argument is wholly persuasive or consistent with the law.

The defendants arguments for a broad and absolute legislative privilege regarding the production of documents are unavailing. Virtually every case cited by the defendants involved attempts to depose government officials or call them to the witness stand. The cases regarding document production involved subpoenas to federal lawmakers. See Brown & Williamson Tobacco Corp., 62 F.3d at 420; United Transportation Union v. Springfield Terminal Railway Co., 132 F.R.D. 4, 6 (D. Me. 1990). These holdings are not applicable to cases, like the one now before the court, involving a state governmental body in a federal court.

This court agrees with the reasoning of many courts that have held any legislative privilege regarding the production of documents available to state legislators is a qualified "deliberative process privilege." Kay, 2003 WL 25294710 at *15-17; Newport Pacific Inc., 200 F.R.D. at 637-639; Rodriguez, 280 F. Supp. 2d at 95-96; Manzi, 982 F.Supp at 129; Corporation Insular, 709 F.Supp. at 296; Florida Assn. of Rehabilitation Facilities, Inc., 164 F.R.D. at 266-68. As summarized by the Third Circuit:

16

> These limitations reflect a careful tailoring of the [deliberative process] privilege to achieve its purpose of protecting confidentiality without unduly inhibiting the truth-finding process of litigation. . . . [W]e therefore reject the . . . assumption that a privilege protects all state legislative documents which may somehow reveal the "thought processes" of state legislators. Confidentiality concerns do not sweep so broadly. If a deliberative process privilege does protect state legislators, it is limited to communications involving opinions, recommendations or advice about legislative decisions. . . . [S]everable factual material cannot be privileged.

In re Grand Jury, 821 F.2d at 959.

Based on this and the other case law examined above, the court finds only documents or communications that were created prior to the passage and implementation of LB 97 and LB 285 that involve opinions, recommendations or advice about legislative decisions between legislators or between legislators and their aides – that is, documents that are pre-decisional, deliberative and contain matters of opinion – will be considered for protection under the deliberative process privilege.

    c.  **Attorney-Client and Work-Product Privileges**

As with their claim of legislative privilege, the defendants have not identified any specific documents for the plaintiff or the court to evaluate its attorney-client privilege and work product claims. It is highly unlikely that defendants' claims that all of the disputed requests involve documents that fall under attorney-client and work product protection. For instance, Request Nos. 7 and 8 seek all "communication and correspondences within the Nebraska State Patrol" regarding LB 285 and LB 97. Asserting a blanket privilege for these documents simply is not sufficient.

17

**d.     Production Agreements/Privilege Logs**

To the extent the defendants stand on their privilege claims, they shall first confer with the plaintiffs in good faith to determine if an agreement can be reached regarding the scope, type, and method of document disclosure. The parties are encouraged to consider using protective orders, or "claw-back" agreements such as those contemplated under Rule 502(d) and (e). See, e.g., Jicarilla Apache Nation v. United States, 91 Fed. Cl. 489, 494 (Fed. Cl. 2010) ("If defendant truly is concerned that the production here would occasion a waiver of the privilege in other cases, it can easily remedy that matter by formally seeking relief under [Rule 502(d)]."); Capitol Records, Inc, v. MP3tunes, LLC, 261 F.R.D. 44, 51 (S.D.N.Y. 2009) (explaining that if the defendant wants to ensure an ability to timely respond to discovery despite the need to review its emails for privilege issues, it can confer with the plaintiff and seek a court-ordered "clawback agreement").

If an agreement cannot be reached between the parties, consistent with the court's general practice, if any document is withheld from production or disclosure based on a claim of confidentiality under the attorney-client privilege, deliberative process privilege, or work product doctrine, the defendants shall, pursuant to Fed. R. Civ. P. 26(b)(5)(A), for each document withheld, disclose a description of the document with as much specificity as is practicable without disclosing its contents, including:

(a)     the general nature of the document;

(b)     the identity and position of its author;

(c)     the date it was written;

(d)     the identity and position of its addressee;

(e) the identities and positions of all persons who were given or have received copies of it and the dates copies were received by them;

(f) the document's present location and the identity and position of its custodian; and

(g) the specific reason or reasons why it has been withheld from production or disclosure.

Upon receiving the defendants' privilege log, the plaintiffs may then confer in good faith to resolve any remaining dispute regarding the production of a document or documents, and if it cannot be resolved, the plaintiffs may then move to compel specific documents identified on the privilege log.

To be clear, as to the deliberative process privilege, the privilege log shall list only those documents which arguably fall within the scope of the privilege as defined above. To the extent the requested documents are not protected by the attorney-client privilege or work product doctrine; are otherwise responsive to plaintiffs' discovery requests; contain factual information regarding the drafting, passage or enforcement of LB 97 and LB 285; or were communicated to or shared with non-legislative members, those documents shall be produced.

IT IS ORDERED:

1) The Plaintiffs' motion to compel, (filing no. 374), is granted in part and denied in part as follows:

   a. The motion is denied to the extent Interrogatory No. 2, served on defendant Douglas County Attorney, Donald Kleine, and Requests for Production Nos. 12 and 13 seek information regarding the enforcement of the Nebraska Sex Offender Registration Act as it existed prior to January 1, 2010.

   b. The motion to compel is denied as to Interrogatory No. 2, served on the Nebraska Attorney General and State of Nebraska.

    c.    On or before April 29, 2011, the parties shall confer to determine if an agreement (e.g., a protective order or claw-back agreement) can be reached regarding the scope, type, and method of document disclosure. Any agreement reached shall be submitted for court review and approval on or before May 6, 2011.

    d.    If the parties cannot reach a full agreement as to completion of the discovery at issue, on or before May 13, 2011, the defendants shall prepare and serve on the plaintiffs a privilege log (as described in this memorandum and order) identifying any documents for which the defendants assert either the deliberative process privilege, the attorney-client privilege, or work product protection as a basis for non-disclosure.

    e.    The discovery and deposition deadline is extended to July 15, 2011. Motions to compel discovery must be filed on or before July 1, 2011.

2) The defendants' unopposed motions to continue, (filing no. 383), are granted. The pretrial conference and trial of the above-captioned cases are continued pending further order of the court.

3) The clerk shall file this memorandum and order in the lead case, 8:09-cv-00456-RGK-CRZ, as a spread text order.

DATED this 19th day of April, 2011.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.