IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN and JANE DOE 1-36, et al., ) | |
| Plaintiffs, ) | |
| ) | 8:09CV456 |
| v. ) | |
| ) | |
| STATE OF NEBRASKA, et al,, ) | |
| Defendants. ) | |
| ) | |
| JOHN DOE, et al., ) | |
| Plaintiffs, ) | 4:09CV3266 |
| ) | |
| v. ) | |
| STATE OF NEBRASKA, et al., ) | |
| Defendants ) | |
| ) | |
| JOHN DOE, et al., ) | |
| Plaintiffs, ) | |
| ) | 4:10CV3005 |
| v. ) | |
| STATE OF NEBRASKA, et al., ) | |
| Defendants ) | |

MEMORANDUM AND ORDER

On February 28, 2012 the undersigned ordered Defendants to submit certain documents for an in camera review to determine whether the documents were shielded from discovery by the attorney/client privilege and/or the deliberative process privilege.[1] Having completed the review, documents nos. 1a, 1b, 2, and 3 of Exhibit "C" are protected by the deliberative process privilege, but all other documents identified on the privilege log must be produced.

---

[1] A history of the discovery dispute was recited in the Memorandum and Order issued on February 28, 2012, (filing no. 442) and will not be repeated herein.

**Deliberative Process Privilege**

In the undersigned's memorandum and order dated April 19, 2011, the court defined the types of documents to be considered protected under the deliberative process privilege.

> [T]he court finds only documents or communications that were created prior to the passage and implementation of LB 97 and LB 285 that involve opinions, recommendations or advice about legislative decisions between legislators or between legislators and their aides – that is, documents that are pre-decisional, deliberative and contain matters of opinion – will be considered for protection under the deliberative process privilege.

Filing No. 384.

The court further noted that even if documents arguably qualified for the deliberative process privilege, protection will not automatically be given.

> Courts evaluating whether to apply the deliberative process privilege generally treat it as a qualified privilege and only protect documents from discovery after applying a balancing test based on the following factors: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." Qamhiyah [v. Iowa State University, 245 F.R.D. 393, 396 (S.D. Iowa 2007)] (quoting F.T.C. v. Warner Communications, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984)); see also Rodriguez, 280 F.Supp.2d at 101 (quoting In re Franklin Nat'l Bank Secs. Litig., 478 F.Supp. 577, 583 (E.D.N.Y. 1979)).

Filing No. 384.

In this case, Defendants have claimed a deliberative process privilege for certain documents originating in the legislature. See Filing No. 444-2, Ex. C, Doc. Nos. 1, 1b, 2, 3, 4, 5, 6a, 6b, 7a, 7b, 7c, 8c, 9a & 9c. Having reviewed the documents, I find as follows:

- Documents Nos. 1a, 1b, 2 & 3, (filing no. 444-2, pp.1-85, Ex. C), involve communications between Senator Pete Pirsch and his legislative assistant, Tanya Hayes; and the handwritten notes and mental impressions of Hayes. All of these documents are between a legislator and his aid and otherwise meet the requirements of qualifying for the deliberative process privilege. That is, they were created prior to the passage of the legislation in question and contain matters of opinion, including the aides mental impressions. Further, after conducting the balancing test advocated by the Qamhiyah court, these documents qualify for the deliberative process privilege because the relevance to this litigation is minimal and revealing such communications may chill open and frank discussions between legislators and their aides.

- The remaining documents for which the deliberative process privilege is claimed do not qualify for that protection. None of the documents contain the opinions of a legislator or his or her aides or assistants. Thus, the deliberative process privilege is inapplicable.

**Attorney-Client Privilege**

As previously provided by this court,

It is well established that governmental agencies enjoy the protection of the attorney-client privilege . See Coastal Corp. v. Duncan, 86 F.R.D. 514, 520

3

(D. Del. 1980); see also In re Grand Jury Subpoena Duce Tecum, 112 F.3d 910, 915-16 (8th Cir. 1997)(noting the "broad proposition that a governmental body may be a client for the purposes of the attorney-client privilege"). "[W]hen the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." Center for Medicare Advocacy, Inc. v. United States Department of Health and Human Services, 577 F. Supp. 2d 221, 237 (D.D.C. 2008) (internal quotation marks and citations omitted). However, not every communication between a government agency and government attorneys is protected by the attorney-client privilege. Id. The communication must meet all of the conditions for protection, including that the communications were facilitating the "rendition of professional legal services." See Borase v. M/A Com Inc., 171 F.R.D. 10, 14 (D. Mass. 1997)(finding "nonlegal work" and the documents prepared in the fulfillment of nonlegal responsibilities are not entitled to support under the attorney-client privilege); see also Electronic Privacy Information Center v. Department of Justice, 584 F. Supp. 2d 65, 79 (D.D.C. 2008) (finding attorney-client protection is not available to a government agency simply because the communication involves the government's counsel); Coastal Corp., 86 F.R.D. at 521 (noting the importance of ensuring the documents meet the requirements for attorney-client protections especially when the government attorneys act as policy makers rather than attorneys).

Filing No. 442, p. 4

Defendants seek protection from discovery for the remaining documents under the attorney-client privilege. Defendants argue all of these communications implicate the attorney-client privilege because the Nebraska Attorney General serves as legal council for the state legislature, the county attorneys, the county sheriffs, and the state patrol. The documents described in the privilege log involve either communications within the Attorney General's office or between the representatives and employees of the Office of the Attorney General and employees of the Nebraska Unicameral, state law enforcement representatives, or Nebraska county attorneys.

As the Defendants argue, the Attorney General has numerous responsibilities. See Neb. Rev. Stat. §§ 84-202 & -205. Many of these involve providing legal opinions to state agencies, the legislature, and county attorneys. Thus, it is clear the Attorney General is charged with rendering "legal services" to the legislature, county attorneys, and law enforcement agencies. However, simply because the Attorney General can provide legal services does not automatically mean the Attorney General's office is rendering legal services every time it interacts with another state agency or employee. Only communications for the rendering of legal services are protected by the attorney-client privilege.

In this case, it is apparent from the review of privilege log that the Attorney General and his employees or representatives were not rendering legal services to the legislature, or any other state body. In fact, at least in the case of LB 97, it appears the Attorney General acted as a drafter, lobbyist, and primary advocate for the passage of the bill rather than serving as legal counsel for the legislature. See Filing No. 444-2, Doc. 9b, Ex. C, p. 235. The communications for which protection is sought generally involve the exchange of drafts of the legislation in question; internal communications in the Attorney General's office regarding the legislation; summaries of newly passed legislation provided to county attorneys, sheriffs, police departments and the Nebraska State Patrol; and a copy of an article from the Lincoln Journal Star newspaper. None of these documents indicate the Office of the Attorney General was rendering legal services at the request of the legislature or any government body or representative. To the contrary, the communications indicate the legislature was providing a service to the Attorney General's office by advancing legislation proposed and drafted by an Assistant Attorney General.

For instance, documents 1 - 9, 11, 13, 14, & 21 in Exhibit "B," (filing no. 444-1, Ex. B), involve discussions regarding the drafting of the legislation in question and focus primarily on terminology and other changes that did not involve substantive legal issues;

5

most of these documents focus on ensuring that Assistant Attorney General, Corey O'Brien agrees with proposed edits to the bill, not in his capacity as legal counsel, but in his capacity as the initial drafter of the legislation. The changes the parties were discussing appear to be administrative in nature and do not implicate substantive issues of law.

Document 12 in Exhibit "B," (filing no. 444-1, Ex. B, pp. 128-9) is a copy of an online newspaper article from the Lincoln Journal Star communicated within the Attorney General's office. This is a public document and does not qualify for the attorney-client privilege.

Documents 15 - 18 in Exhibit "B," (filing no. 444-1, Ex. B, pp. 181-279) are copies of early drafts of the legislation in question provided by Assistant Attorney General Corey O'Brien to various other individuals in the Office of the Attorney General and to Neal Nelson, Senior Legal Counsel, Revisor of Statutes. Documents 16 and 18 contain handwritten notes commenting on certain provisions. It is not clear, and Defendants do not specify, who added the notes to the drafts. Documents 15 and 17 do not contain similar notations. Defendants have not provided sufficient facts for the court to conclude O'Brien was rendering legal services at the request of the legislature rather than acting as a policy maker at the initiative of the Attorney General's office.

Documents 20 & 26 - 29 in Exhibit "B," (filing no. 444-1, Ex. B, pp. 280-82 & 318-93) are drafts summarizing criminal justice bills from the Nebraska Unicameral in 2009. Some of the drafts were prepared and disseminated internally before being provided to various Nebraska Law Enforcement Agencies and County Attorneys. Defendants have failed to meet their burden of showing these documents were "confidential communications made for the purpose of facilitating the rendition of legal services." In re Bieter Co., 16 F.3d 929, 935 (8th Cir. 1994). Rather, these summaries contain little more than factual

descriptions of legislation and the memoranda were widely distributed among various law enforcement agencies. There is no indication these materials were meant to be confidential or were created to render legal services to these various agencies.

Exhibit "C," document 4, (filing no. 444-2, Ex. C, pp. 86-7), is a memorandum from the Legal Counsel for the Revisor of Statutes to Holley Bolen, Chief of Staff to the Attorney General. The message was forwarded to Julie Maaske, the Nebraska State Patrol Legislative Liaison. The memorandum contains a list of proposed amendments to LB 285 and does not request legal advice from the Attorney General. Rather, it apparently seeks the drafter's approval of the changes without reference to whether the changes impact the constitutionality of the proposed legislation, and does not contain any other information that would indicate the Attorney General was providing legal services to the legislature.

Documents 7a - 8b in Exhibit "C," (filing no. 444-2, Ex. C, pp. 199-232), either contain drafts of the legislation or communications seeking the approval of Office of the Attorney General. But there is no indication from the emails that the Office of the Attorney General was providing legal services rather than acting as an advocate for a bill drafted by an Assistant Attorney General.

Documents 9a & 9b, (filing no. 444-2, Ex. C, pp. 235-36), are a summary from Assistant Attorney General O'Brien to state legislator Scott Laughtenbaugh and a forward of that email between employees of the Office of the Nebraska Attorney General. The email summarizes the bill O'Brien drafted, and it does not indicate the legislator sought the assistance of the Assistant Attorney General for legal services. To the contrary, O'Brien is seeking the assistance of Laughtenbaugh to advance legislation that originated with the Office of the Attorney General. Accordingly, it does not qualify for protection under the attorney-client privilege.

7

IT IS ORDERED:

1) Documents Nos. 1a, 1b, 2 & 3 of Exhibit "C" are protected by the deliberative process privilege and shall not be produced.

2) All of the remaining documents listed on Defendants' privilege log shall be produced to Plaintiffs on or before May 25, 2012.

3) The clerk shall file this document as a spread text order for all three of the above-captioned cases.

DATED this 14th day of May, 2012.

                                               BY THE COURT:

                                               *s/ Cheryl R. Zwart*

                                               United States Magistrate Judge