THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN DOE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 8:09CV456 |
| vs. | ) | |
| | ) | |
| STATE OF NEBRASKA, et al., | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| JOHN DOE, | ) | |
| | ) | 4:10CV3266 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NEBRASKA STATE PATROL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| JOHN DOE, | ) | |
| | ) | 4:10CV3005 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF NEBRASKA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on the plaintiffs' motion for attorneys' fees and expenses (filing 527) pursuant to 42 U.S.C. § 1988, which authorizes district courts

to award reasonable attorneys' fees to prevailing parties in civil rights litigation. Plaintiffs request an award of $751,947.67 in attorneys' fees related to the merits litigation, $13,111.88 for preparation of the application for attorneys' fees, and $26,182.56 in costs.  (Filing 527.)  The defendants argue that the amount requested is unreasonable and should be substantially reduced.  (Filing 530, Defs.' Br. Opp'n Pls.' Mot. Attorneys Fees & Expenses.)  For the reasons explained below, I will grant the application in part and deny it in part.

## I. BACKGROUND

This litigation began in 2009 in both this court and various state courts.  Based on a broad array of constitutional grounds, several convicted sex offenders, their family members, and others who were associated with them filed for injunctive and declaratory relief from several amendments to Nebraska's Sex Offender Registration Act ("Act") that were to become effective on January 1, 2010.  The nearly 200 defendants included the State of Nebraska, the Nebraska Attorney General, the Nebraska State Patrol, the Superintendent of the State Patrol, local prosecutors, and various law enforcement officers.

The state cases were eventually removed to this court and consolidated into one lawsuit.  In this court, the case involved proceedings on preliminary injunctive relief, Doe v. Nebraska, 2009 WL 5184328 (D. Neb. Dec. 30, 2009), motions for certification of state law questions, Doe v. Nebraska, 2010 WL 1568445 (D. Neb. Apr. 15, 2010), cross motions for summary judgment, Doe v. Nebraska, 734 F. Supp. 2d 882 (D. Neb. 2010), discovery disputes, Doe v. Nebraska, 788 F. Supp. 2d 975 (D. Neb. 2011); Doe v. Nebraska, 2011 WL 2413359 (D. Neb. June 15, 2011), a bench trial, Doe v. Nebraska, ___ F. Supp. 2d ___, 2012 WL 4923131 (D. Neb. Oct. 17, 2012), and the pending application for attorneys' fees.

The plaintiffs asserted several constitutional challenges to the legislation, including claims of double jeopardy, cruel and unusual punishment, equal protection,

special legislation, separation of powers, and claims under the First Amendment, Due Process Clause, Ex Post Facto Clause, Fourth Amendment, and Contracts Clause. The plaintiffs successfully obtained a preliminary injunction as to certain provisions of the amended Act. *Doe v. Nebraska*, 2009 WL 5184328 (D. Neb. Dec. 30, 2009). At the summary judgment stage, the plaintiffs did not prevail on several of their claims, but four of those claims went to trial—claims under the First Amendment, the Due Process Clause, the Ex Post Facto Clause, and the Fourth Amendment. *Doe v. Nebraska*, 734 F. Supp. 2d 882 (D. Neb. 2010).  Plaintiffs prevailed on the claims that went to trial, as summarized in the opinion issued following the bench trial:

> Save for Doe 24's "as-applied" challenge to § 29-4006(2), Neb. Rev. Stat. §§ 29-4006(1)(k) and (s), 29-4006(2), and 28-322.05 are unconstitutional, both facially and as applied to some of the plaintiffs. As indicated in my decision on the motions for summary judgment, Neb. Rev. Stat. § 29-4006(2) is unconstitutional under the Fourth Amendment as to those plaintiffs who were previously convicted of sex crimes, but who were not on probation, parole, or court-monitored supervision on or after January 1, 2010.  Neb. Rev. Stat. §§ 29-4006(1)(k) and (s) and 28-322.05 are unconstitutional under the First Amendment.  Neb. Rev. Stat. § 28-322.05 is unconstitutional under the Due Process Clause.  Neb. Rev. Stat. §§ 29–4006(1)(k) and (s), 29–4006(2), and 28-322.05 are unconstitutional under the Ex Post Facto Clause.

*Doe v. Nebraska*, ___ F. Supp. 2d ___, 2012 WL 4923131, at *37 (D. Neb. Oct. 17, 2012) (footnote omitted).  As to Doe 24's "as-applied" Fourth Amendment challenge referenced in the quoted paragraph above, I decided that Doe 24's challenge to Neb. Rev. Stat. § 29-4006(2) was not ripe.  *Id*.

Thus far, the lead *Doe* case has resulted in 534 filings and the preparation of at least 15 briefs by Plaintiffs' counsel, in addition to numerous motions, indices of evidence, and discovery documents.  As stated by Plaintiffs' counsel, "the sheer logistics of managing approximately fifty (50) Doe clients and filing against over two

3

hundred (200) Defendants required a great deal of time." (Filing 528 at CM/ECF p. 17.)

## II. DISCUSSION

In *U & I Sanitation v. City of Columbus*, 112 F. Supp. 2d 902, 903-04 (D. Neb. 2000), I summarized what I consider to be the applicable law in this circuit regarding an award of attorneys' fees pursuant to 42 U.S.C. § 1988. "When an application for attorney fees is made, the 'lodestar' method is used to decide whether it should be granted, and, if so, how much should be awarded." *U & I Sanitation*, 112 F. Supp. 2d at 903. This involves (1) deciding whether an award of fees is justified; (2) determining what fees and expenses are typically charged in the relevant market; and (3) calculating the "lodestar," which is the number of hours reasonably expended multiplied by the applicable hourly market rate for the relevant legal services, with (i) deductions for excessive, redundant, or otherwise unnecessary work and insufficient documentation, (ii) enhancements only when the lodestar method will not ensure competent counsel in future similar cases, and (iii) reductions for partial success (failure to win on all claims when claims and relief are separate) or incomplete success (failure to win on all claims when claims and relief are intertwined because it was necessary to prosecute all related claims to prevail on one). *U & I Sanitation*, 112 F. Supp. 2d at 903-04.

Plaintiffs request $751,947.67 in attorneys' fees for 1,702.4 hours of work performed by lawyers, paralegals, and law clerks at hourly rates ranging from $85.00 for paralegals and law clerks to $300.00 for senior counsel. (Filing 529-2; Appendix A to this Memorandum & Order.) The total amount of fees requested incorporates a 15% reduction of hours worked (from 2,002.5 to 1,702.4) "to account for duplication of effort and the partial and incomplete success of the Plaintiffs' claims" and a multiplier of 2.25 to account for "the unusual circumstances of this case and to ensure adequate and competent counsel will be attracted to similar cases in the future." (Filing 529-3 at CM/ECF p. 4 ¶ 29; Filing 528 at CM/ECF p. 21.) In addition to the

4

$751,947.67 in attorneys' fees for the merits litigation, Plaintiffs request $26,182.56 in costs and $13,111.88 for preparation of the attorneys' fee application.  (Filing 529-2; Appendix A to this Memorandum & Order.)

The defendants argue that (1) five of Plaintiffs' counsel have claimed excessive hourly rates; (2) a 15% reduction is warranted for partial and incomplete success and insufficient detail in billing entries; (3) reductions are warranted for duplicity in billing (98 hours), clerical work (181.40 hours), and unnecessary work involved in "forum shopping" (83.90 hours); (4) the plaintiffs are not entitled to any enhancement; (5) the hours claimed for preparation of the attorneys' fee application should be reduced due to vague and unspecific billing entries; and (6) Plaintiffs' $26,182.56 in requested costs cannot be recovered due to counsels' failure to file a verified bill of costs pursuant to this court's local rules and, in any case, expert witness fees may not be recovered under 42 U.S.C. § 1988.  Applying these reductions, the defendants propose an award of attorneys' fees for the merits litigation in the amount of $228,987.88; $7,840.56 in costs; and $11,379.38 for preparation of the attorneys' fee application.  (Appendix B to this Memorandum & Order.)

### A.   Fees for Merits Litigation

Defendants do not argue that Plaintiffs are not a prevailing party or that they are not entitled to any attorneys' fees; rather, the amount of fees is the issue.

### 1.   Hourly Rates

The defendants claim that five of Plaintiffs' counsel have claimed excessive hourly rates:  Stuart Dornan ($300), Tom Monaghan ($300), Jason Troia ($225), Josh Weir ($225), and Rodney Dahlquist ($200).  (Filing 530 at CM/ECF pp. 22-25.)  I disagree.

5

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir.2001)). *See also Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009) ("relevant community" for determining hourly rates is place where case was tried). "In determining whether a fee is reasonable, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates," *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (internal quotation & citation omitted), and "district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

The plaintiffs have filed declarations (Filing 529-3) outlining their counsels' legal education, training, background, and experience—both generally and in civil rights litigation. Attorney Stuart Dornan[1] of Dornan, Lustgarten & Troia PC LLO graduated from law school in 1983; served as a Special Agent with the FBI for three years where he investigated and prosecuted crimes involving sexual assault; served as Douglas County Attorney and as a hearing examiner with the Nebraska Equal Opportunity Commission; is on the Board of Directors of the Nebraska Criminal Defense Attorneys' Association and serves on the Federal Practice Committee for the District of Nebraska; has an AV rating with Martindale-Hubbell; has been named a Great Plains Super Lawyer and a Top 100 Trial Lawyer by the National Trial Lawyers

---

[1]For purposes of brevity, I discuss the background of only those attorneys singled out by Defendants as having excessive hourly rates. The defendants' main argument regarding the alleged inflated nature of these attorneys' hourly rates is based on fee requests filed in cases from other courts, such as Douglas County Court, Sarpy County Court, and Douglas County District Court. (Filing 531-8; Filing 531-9; Filing 531-10.) Suffice it to state that there is no evidence that any of these cases was remotely similar in complexity, size, and nature of the *Doe* cases under consideration here.

6

Association; and is the president-elect of the Omaha Bar Association and a fellow with the Nebraska Bar Association.  ([Filing 529-3](#) at CM/ECF p. 2.)

Attorney Tom Monaghan graduated from law school in 1972, was the United States Attorney for the State of Nebraska from 1993 to 2001, and was the Director of the Department of Justice with the United Nations in Kosovo from 2004 to 2006. Over the last 40 years, he has appeared regularly in the United States District Courts representing both plaintiffs and defendants in a variety of complex criminal and civil cases.  ([Filing 529-3](#) at p. 7.)

Attorney Jason Troia graduated from law school in 1999, became a partner with Dornan, Lustgarten & Troia PC LLO in 2008, and has appeared regularly in the United States District Court for the District of Nebraska over the past 13 years, litigating a "plethora of constitutional issues in criminal cases."  ([Filing 529-3](#) at CM/ECF p. 14.)  Josh Weir graduated from law school with honors in 2006 and was involved in complex immigration and habeas litigation at two law firms before he joined the Dornan, Lustgarten law firm, where he became partner in 2010.  ([Filing 529-3](#) at CM/ECF p. 17.)  Rodney Dahlquist has engaged in a "broad general civil litigation practice" since his graduation from law school with honors in 2008, and he is an associate attorney with Dornan, Lustgarten & Troia, PC LLO.  ([Filing 529-3](#) at CM/ECF p. 20.)

The plaintiffs have also filed the declarations of Amy A. Miller, Legal Director of ACLU Nebraska, and Thomas M. White, a Nebraska attorney who has been practicing law for almost 30 years.  Miller has practiced constitutional law exclusively since 1999, has been responsible for handling a "number of cases of first impression regarding constitutional violations in state court, federal court and before administrative bodies," and has made presentations on federal civil rights law at several national conventions and for the Nebraska Bar.  She is familiar with the level of experience and expertise of Plaintiffs' counsel and with the typical hourly rates charged in the Omaha, Nebraska, market for representation in civil rights cases: "[I]t

is customary in the Omaha market for partners to charge fee-paying clients $300.00 per hour, and for associates to charge between $150.00 and $200.00 per hour. . . .   It is also customary to charge clients for paralegal/law clerk time expended, as well as costs and advances incurred by a law firm."  (Filing 529-5 at CM/ECF p. 2.)

Thomas White, who has "developed some expertise in the area of civil rights" by handling several federal discrimination and civil rights matters in his nearly three decades of practice, states "it is customary in the Omaha market for partners to charge fee-paying clients $300.00 per hour, and for associates to charge $200.00.  Further, it is customary to charge clients for paralegal/law clerk time expended on a case." (Filing 529-5 at CM/ECF p. 4 ¶ 6.)  White believes that the hourly rates charged by attorneys Rodney Dahlquist ($200), Stuart Dornan ($300), Tom Monaghan ($300), Jason Troia ($225), and Josh Weir ($225) "are fair and reasonable and represent market rates for this area for the services of attorneys and their staff given the level of expertise, skill and experience" of these individuals and their firm.  (Id. ¶¶ 4-7.)

I conclude that each of these attorneys' hourly rates are reasonable in light of their experience; the prevailing market rates in Lincoln and Omaha, Nebraska; and the complexity and size of the *Doe* cases.  *See, e.g.*, *Riley v. Sun Life & Health Ins. Co.*, No. 8:09CV303, 2012 WL 182245, at *7 (D. Neb. Jan. 20, 2012) (Smith Camp, C.J.) (average hourly rates of $345, $290, $212, and $185 for plaintiff's attorneys in ERISA case were reasonable for the Omaha, Nebraska, market in comparable cases); *El-Tabech v. Clarke*, No. 4:04CV3231. 2011 WL 1979847 at *3 (D. Neb. May 20, 2011) (Bataillon, C.J.) ("Charges greatly in excess of $128.00 [PLRA hourly rate cap] are reasonable for civil rights cases in this legal market."); *Kellogg v. Nike, Inc.*, No. 8:07CV70, 2010 WL 323994 (D. Neb. Jan. 20, 2010) (Bataillon, C.J.) (hourly attorney billing rates of $175 to $335 were reasonable in complex patent case in Omaha, Nebraska, market); *Sheriff v. Midwest Health Partners, P.C.*, No. 8:07CV475, 2009 WL 2992513, at *10 (D. Neb. Sep. 16, 2009) (Thalken, M.J.) (in Title VII action, Omaha attorneys' hourly rates of between $200 and $300 appeared consistent with hourly rates in the relevant market based on evidence in the record); *Chief Automotive*

*Systems, Inc. v. Asterino*, Nos. 4:97CV3017 & 8:07CV58, 2008 WL 151271, at *4 (D. Neb. Jan. 11, 2008) (Kopf, J.) (awarding attorneys' fees as part of civil contempt sanctions and finding that hourly rates of $115 to $295 were within range lawyers practicing in this court charge for work of similar complexity); *Developmental Services of Nebraska, Inc. v. City of Lincoln*, No. 4:04CV3272, 2007 WL 1959244, at *1 (D. Neb. July 2, 2007) (Kopf, J.) (awarding $250,000 in attorneys' fees in Fair Housing Act case after reducing hourly rates to between $125 and $300 to bring in line with relevant market for lawyers of comparable skill and experience).

### 2.  *Reduction for Partial/Incomplete Success & Lack of Detail*

Defendants next argue that a 15% reduction is warranted for partial and incomplete success and insufficient detail in billing entries.  (Filing 530 at CM/ECF p. 21.)  Plaintiffs' counsel agree, and they have filed declarations stating that they have applied a 15% reduction in hours spent on this case "to account for duplication of effort and the partial and incomplete success of the Plaintiffs' claims."  (Filing 529-3 at CM/ECF p. 4 ¶ 29; Filing 529-3 at CM/ECF p. 7 ¶ 12; Filing 529-3 at CM/ECF p. 11 ¶ 19; Filing 529-3 at CM/ECF p. 14 ¶ 13; Filing 529-3 at CM/ECF p. 18 ¶ 15; Filing 529-3 at CM/ECF p. 22 ¶ 20; Filing 529-3 at CM/ECF p. 25 ¶ 13.)  Therefore, I shall apply a 15% reduction in hours spent on this litigation.

### 3.  *Reductions for Duplicity, Clerical & Unnecessary Work*

In calculating the hours reasonably expended by Plaintiffs' counsel in this litigation, I must review the records submitted by counsel, verify the accuracy of the records, and deduct excessive, redundant, and otherwise unnecessary work.  *U & I Sanitation*, 112 F. Supp. 2d at 904.  The defendants correctly maintain that reductions are warranted in this case for duplicity in billing (98 hours), clerical work (181.40 hours), and unnecessary work for "forum shopping" (83.90 hours).

"A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). A reduction of the lodestar for duplicative billing is justified here. The customary practice in the Omaha, Nebraska, legal market is that "bills reflecting conferences in which sometimes as many as 6 or 7 attorneys and/or paralegals have attended an intra office conference . . . is unusual and most likely excessive." (Filing 531-1, Aff. Mark C. Laughlin at CM/ECF p. 3.) Some of the evidence submitted by Plaintiffs indicates billing practices contrary to this local custom.

For example, on February 15, 2010, four attorneys (Dornan, Monaghan, Troia, and Dahlquist) participated in a pretrial strategy meeting, and each of them billed for their time. Additional strategy meetings, resulting in each of the participating attorneys billing separately for their time, were held on September 29, 2010, January 25, 2012, and June 20, 2012. (Filing 529-1 at CM/ECF pp. 25, 44, 50.) As compiled in a specific and detailed fashion by Defendants (and not disputed by Plaintiffs), additional instances of duplicative billing total 126.9 hours. (Filing 531-3; Filing 532, Pls.' Reply Br. Opp'n Mot. Attys' Fees & Expenses.) Therefore, the hours of time for which Plaintiffs may seek a fee award must be reduced by 98 hours, reflecting an award for only one attorney where multiple attorneys performed the same task.

Plaintiffs' request for fees also includes 181.40 hours of clerical duties such as filing documents, mailing summons, and tabbing and organizing client files. (Filing 531-5; Filing 529-1.)[2] However, "[i]n calculating attorneys' fees, 'purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.'" *Murray v. Collections Acquisitions, LLC*, No. 8:11CV301, 2012 WL 2577211, at *2 (D. Neb. July 3, 2012) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989)). The defendants have filed evidence establishing that the customary

---

[2]Again, Plaintiffs do not object to Defendants' compilation of such time. (Filing 532, Pls.' Reply Br. Opp'n Mot. Attys' Fees & Expenses.)

practice in the Omaha, Nebraska, market is that "secretarial tasks, including but not limited to mailing of summons, updating files, filing documents in files, faxing documents . . . would generally not be billed to a client but would usually be considered part of a firm's overhead." (Filing 531-1, Aff. Mark C. Laughlin ¶ 8.) *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("Plaintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community.") Accordingly, the lodestar shall be reduced by 181.4 hours to account for the plaintiffs' request for reimbursement for purely secretarial or clerical tasks.

Finally, the amount of hours included in Plaintiffs' attorneys' fee request shall be further reduced by 83.9 hours to account for time spent litigating this case in various state courts. (Filing 531-6 (chart noting billing entries for work in Sarpy, Douglas, and Lancaster County District Courts and activity related to removal and "parallel State & Federal actions"); Filing 529-1; Filing 532, Pls.' Reply Br. Opp'n Mot. Attys' Fees & Expenses (not responding or objecting to Defendants' reduction argument for "forum shopping"); Filing 100 (order requesting Nebraska state courts to refrain from issuing orders enjoining Nebraska Sex Offender Registration Act, noting that federal court was first to acquire jurisdiction of claims raised in *Doe* cases and "the possibility of conflicting injunctions serves no one's interests").)

### 4. *Enhancement*

The plaintiffs argue that they are entitled to enhancement of the lodestar by at least 2.25 due to the "unusual circumstances" of this case, to ensure that competent counsel are attracted to similar cases in the future, because the plaintiffs' attorneys "have been precluded from other cases and employment due to acceptance of this case," the "unpopular" and undesirable nature of this case, the risk of losing on the merits and fighting an "uphill battle" because "[s]ex offender registration laws have by and large been upheld throughout their existence," and the delay and extra expense caused by the defendants' litigation tactics. (Filing 528 at CM/ECF pp. 21-35.) The

defendants assert that the plaintiffs are not entitled to any enhancement whatsoever.

"[E]nhancement is reserved for 'rare' and 'exceptional' cases, and must be supported by specific evidence in the record and detailed findings by the lower court. The applicant bears the burden of demonstrating that the lodestar amount must be enhanced to constitute a reasonable fee." *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (citations omitted). "It is only appropriate to enhance the lodestar when that method will not ensure competent counsel in future cases of a similar nature." *U & I Sanitation*, 112 F. Supp. 2d at 904. The undesirability of a case, difficulty of questions presented, time and labor required, and length of professional relationship between attorneys and their clients cannot serve as bases for enhancing an attorneys' fee award because these factors "are already reflected in the initial determination of the reasonable hourly rate and number of compensable hours." *Gilbert v. City of Little Rock*, 867 F.2d 1063, 1067 (8th Cir. 1989) (affirming 10% fee enhancement only "to reflect enhancement solely for the risk of loss due to the contingent nature of the fee").[3]

The plaintiffs discuss several reasons for applying a fee enhancement, but their main argument focuses on the undesirability of this case, the near "leper" status of the plaintiffs, and the economic effect of this undesirability on counsels' professional lives. (Filing 528 at CM/ECF pp. 26-31 & 34-35.) Although I personally would like to award an enhancement for this very reason, there is insufficient precedent in the Eighth Circuit to do so, especially when the Eighth Circuit Court of Appeals has specifically stated that "the undesirability of this case . . . cannot serve as [a basis] for enhancing an award of attorney's fees." *Gilbert*, 867 F.2d at 1067.

Therefore, I decline to award an enhancement or multiplier in this case.

---

[3] It is not clear that this case was a contingency-fee case.

### B.     Fees for Preparation of Attorneys' Fee Application

Plaintiffs are entitled to recover fees for time spent preparing an attorneys' fee application. *El-Tabech v. Clarke*, 616 F.3d 834, 843-44 (8th Cir. 2010).  However, the defendants contend that the hours claimed for preparation of the attorneys' fee application should be reduced due to vague and unspecific billing entries.  *See* NECivR 54.4 (Fee Application Guidelines).  I conclude that the Plaintiffs' self-imposed 25% reduction in hours expended on the attorneys' fee application is sufficient to account for any lack of specificity.  (Filing 529-2 at CM/ECF p. 2.) Therefore, Plaintiffs' request for $13,111.88 in attorneys' fees for preparation of the application for such fees is reasonable.

### C.     Costs & Expenses

The defendants argue that Plaintiffs' $26,182.56 in requested costs cannot be recovered due to their failure to file a verified bill of costs pursuant to this court's local rules and, in any case, expert witness fees may not be recovered under 42 U.S.C. § 1988.  Defendants are correct.

Section 1988(c) provides: "In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."  The plain language of section 1988(c) demonstrates that the expert-fee provision applies only to actions brought under 42 U.S.C. §§ 1981 or 1981a. Because this action was not brought under those sections, Plaintiffs are not entitled to an expert witness fee as part of their attorneys' fee award.  *Wedemeier v. City of Baldwin*, 931 F.2d 24, 26-27 (8th Cir. 1991) (affirming district court's refusal to award expert witness fees as part of reasonable attorneys' fee under 42 U.S.C. § 1988, stating that "[t]he Supreme Court's contrary holding in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S. Ct. 1138, 1148, 113 L. Ed. 2d 68 (1991), forecloses

13

this argument").[4]  *See also Jenkins by Jenkins v. State of Missouri*, 158 F.3d 980, 983 (8th Cir. 1998) (*Casey* held that expert witness fees could not be shifted to losing party under § 1988; "Congress amended § 1988 after *Casey* to authorize the award of expert fees in cases brought under 42 U.S.C. §§ 1981 and 1981a, Pub. L. No. 102-166, § 113(a)(2), 105 Stat. 1071, 1079 (1991), but that amendment does not affect this section 1983 case"); *Hirsch v. Lecuona*, No. 8:06CV13, 2008 WL 4457690, at *2 (D. Neb. Sept. 26, 2008) (Bataillon, C.J.) (declining to award expert witness fees as part of attorneys' fee award in § 1983 case because 42 U.S.C. § 1988 limits recovery of expert witness fees to actions to enforce 42 U.S.C. §§ 1981 or 1981a "and does not include action under § 1983 for vindication of Constitutional rights"); 2 *State & Local Gov't Civil Rights Liability* § 2:38 (2d ed. Nov. 2012), *available at* STLOCCIVIL § 2:38 (Westlaw) (footnotes omitted) ("[E]xpert witness fees cannot be awarded under Section 1988, as part of a 'reasonable attorney's fee.  Such fees are controlled by the federal statutory limits on taxing costs.'").

As part of their request for costs, Plaintiffs have included $16,260 for the services of its expert witness, Professor David Post.  (Filing 529-4 at CM/ECF p. 28; Filing 529-1 at CM/ECF p. 57.)  Based on the above authorities, this amount cannot be awarded as part of an attorneys' fee award.  However, some of Post's expenses may be properly taxed as costs by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1) (pertaining to costs other than attorneys' fees).[5]

---

[4]*Casey* held that "§ 1988 conveys no authority to shift expert fees.  When experts appear at trial, they are of course eligible for the fee provided by § 1920 and § 1821."  After *Casey*, Congress amended section 1988 to add section 1988(c) to allow courts to award expert witness fees in actions or proceedings to enforce sections 1981 or 1981a.  42 U.S.C. § 1988(c).  The amendment did not include claims made under section 1983.

[5]The Clerk of Court should note that Professor Post is not a court-appointed expert under 28 U.S.C. § 1920(6).  *See* Nebraska Civil Rule 54.1 (Taxation of Costs) (Dec. 1, 2012); United States District Court for the District of Nebraska, *Bill of Costs Handbook*, available at http://www.ned.uscourts.gov/forms.

As to the remaining $9,922.56 in requested costs, "[a]n attorney fee that includes as a component some of the expenses of the attorney is authorized under the lodestar method, but only to the extent that such expenses would normally be paid by fee-paying clients as a part of an attorney fee in the relevant market." *Sirois v. Superior Pub. Co., Inc.*, No. 4:04CV3064, 2005 WL 1459388, at *2 (D. Neb. June 20, 2005) (Kopf, J.).  The only evidence submitted to establish that Plaintiffs' costs are normally paid by fee-paying clients is the blanket statement by ACLU Legal Director Amy Miller that "[i]t is . . . customary to charge clients for . . . costs and advances incurred by a law firm, in connection with a lawsuit." (Filing 529-5 at CM/ECF p. 2 ¶ 13.)  In the absence of more specificity, I cannot conclude that each of Plaintiffs' claimed costs are of the type normally paid by fee-paying clients in this market. Therefore, Plaintiffs' remaining costs shall not be awarded as part of Plaintiffs' reasonable attorney fee.  However, these costs may be taxable by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920 upon the filing of a proper bill of costs.[6]

## III.  LODESTAR CALCULATION

As reflected in Appendix C to this Memorandum and Order, Plaintiffs are entitled to $279,453 in attorneys' fees for 1,342.6 net hours expended on the merits litigation and $13,111.88 in fees for preparation of the application for attorneys' fees. Plaintiffs are not entitled to costs as part of their attorneys' fee award.

Accordingly,

---

[6]The Clerk of Court shall not award costs for the $164.00 in filing fees in the district courts of Douglas and Sarpy counties for the same reason that I declined to award fees for time spent in such state litigation.  (Filing 529-1 at CM/ECF pp. 56-57 (listing $82.00 in filing fees for Douglas and Sarpy County District Courts).)

IT IS ORDERED:

1.    Plaintiffs' motion for attorneys' fees and expenses (filing 527) is granted in part and denied in part, as follows:  Pursuant to 42 U.S.C. § 1988, the plaintiffs are hereby awarded total attorneys' fees against the defendants in the amount of $292,564.88. In all other respects, the plaintiffs' application is denied without prejudice to the plaintiffs' ability to seek taxation of costs pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920;

2.    Plaintiffs' motion for hearing regarding attorneys' fees and expenses (filing 533) is denied;

3.    Judgment shall be entered by separate document.

DATED this 21st day of December, 2012.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

APPENDIX A

**Plaintiffs' Requested Attorney Fee and Cost Calculation (Merits Litigation)**

| Attorney | Total hours expended | (Reduction) | Requested hours billed | Requested hourly rate | (Total hours) (Requested rate) | (Less reduction) | Requested Lodestar | Minimum multiplier | Enhanced fee |
|---|---|---|---|---|---|---|---|---|---|
| Stuart Dornan | 268.9 | 40.3 | 228.6 | $300.00 | $80,670.00 | $12,090.00 | $68,580.00 | 2.25 | $154,305.00 |
| Tom Monaghan | 75.0 | 11.2 | 63.8 | $300.00 | $22,500.00 | $3,360.00 | $19,140.00 | 2.25 | $43,065.00 |
| Christine Lustgarten | 18.7 | 2.8 | 15.9 | $200.00 | $3,740.00 | $560.00 | $3,180.00 | 2.25 | $7,155.00 |
| Jason Troia | 44.3 | 6.6 | 37.7 | $225.00 | $9,963.00 | $1,485.00 | $8,478.00 | 2.25 | $19,075.50 |
| Josh Weir | 89.7 | 13.5 | 76.2 | $225.00 | $20,182.50 | $3,037.50 | $17,145.00 | 2.25 | $38,576.25 |
| Rodney Dahlquist | 1038.8 | 155.8 | 883.0 | $200.00 | $207,760.00 | $31,160.00 | $176,600.00 | 2.25 | $397,350.00 |
| Ross Pesek | 4.3 | 0.6 | 3.7 | $150.00 | $645.00 | $90.00 | $555.00 | 2.25 | $1,248.75 |
| Blake Richards | 128.2 | 19.2 | 109.00 | $150.00 | $19,222.50 | $2,880.00 | $16,342.50 | 2.25 | $36,770.63 |
| Paralegal/ law clerk | 334.7 | 50.2 | 284.5 | $85.00 | $28,445.25 | $4,266.79 | $24,178.46 | 2.25 | $54,401.54 |
| | | | | | | | | | |
| Totals | 2002.5 | | 1,702.4 | | $391,373.25 | ($58,705.99) | $332,667.26 | | |
| Total Attorney Fee Requested | | | | | | | | | $751,947.67 |
| Total Requested Costs and Advances | | | | | | | | | **$26,182.56** |
| Total Requested Award | | | | | | | | | **$778,130.23** |

APPENDIX A (cont'd)

**Plaintiffs' Requested Attorney Fee and Cost Calculation (Fee Application)**

| Attorney | Total hours expended | (25% self-imposed reduction) | Requested hours billed | Requested hourly rate | Requested fee |
|---|---|---|---|---|---|
| Stuart Dornan | 18.3 | 4.6 | 13.7 | $300.00 | $4,117.50 |
| Christine Lustgarten | 10.0 | 2.5 | 7.5 | $200.00 | $1,500.00 |
| Rodney Dahlquist | 25.0 | 6.3 | 18.8 | $200.00 | $3,750.00 |
| Thomas Monaghan | 2.9 | 0.7 | 2.2 | $300.00 | $652.50 |
| Paralegal/ law clerk | 48.5 | 12.1 | 36.4 | $85.00 | $3,091.88 |
| Total Requested Award | | | | | $13,111.88 |

APPENDIX B

**Defendants' Proposed Attorney Fee**

| Attorney | Total hours expended | Duplicative reduction | Clerical reduction | Forum shopping reduction | Subtotal hours after reductions | Partial, incomplete, vague reduction | Lodestar hours | Lodestar hourly rate | Total Lodestar | Multiplier | Total fees |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SJD | 268.9 | 0.0 | (1.0) | (8.3) | 259.6 | 15% | 220.7 | $250 | $55,165.00 | 0 | $55,165.00 |
| TJM | 75.0 | (21.1) | 0.0 | (2.0) | 51.9 | 15% | 44.1 | $250 | $11,028.75 | 0 | $11,028.75 |
| CAL | 19.4 | (18.9) | (0.5) | 0.0 | 0.0 | 15% | 0.0 | $200 | $0.00 | 0 | $0.00 |
| JET | 44.3 | (11.5) | 0.0 | 0.0 | 32.8 | 15% | 27.9 | $200 | $5,576.00 | 0 | $5,576.00 |
| JWW | 89.7 | (13.9) | 0.0 | (32.0) | 43.8 | 15% | 37.2 | $150 | $5,584.50 | 0 | $5,584.50 |
| RCD | 1038.8 | (22.8) | (2.0) | (39.1) | 974.9 | 15% | 828.7 | $150 | $124,299.75 | 0 | $124,299.75 |
| RRP | 4.3 | 0.0 | 0.0 | 0.0 | 4.3 | 15% | 3.7 | $150 | $548.25 | 0 | $548.25 |
| BTR | 128.2 | 0.0 | 0.0 | 0.0 | 128.2 | 15% | 109.0 | $150 | $16,345.50 | 0 | $16,345.50 |
| PLC | 334.7 | (9.8) | (177.9) | (2.5) | 144.5 | 15% | 122.8 | $85 | $10,440.13 | 0 | $10,440.13 |
| | | | | | | | | | | | |
| Totals | 2003.3 | (98.0) | (181.4) | (83.9) | 1640.0 | | 1394.0 | | $228,987.88 | | **$228.987.88** |

APPENDIX B (cont'd)

**Defendants' Proposed Fees on Fees**

| Attorney | Total hours expended | Excessive fees on fees reduction | Total hours | Hourly rate | Total fees on fees |
|---|---|---|---|---|---|
| SJD | 18.3 | 25% | 13.7 | $250 | $3,431.25 |
| TJM | 2.9 | 25% | 2.2 | $250 | $543.75 |
| CAL | 10.0 | 25% | 7.5 | $200 | $1,500.00 |
| RCD | 25.0 | 25% | 18.8 | $150 | $2,812.50 |
| PLC | 48.5 | 25% | 36.4 | $85 | $3,091.88 |
| | | | | | |
| Totals | 104.7 | | 41.9 | | **$11,379.38** |

**Defendants' Proposed Costs**

| Total requested costs | Expert witness reduction | Forum shopping reduction | Excessive summons reduction | Total costs |
|---|---|---|---|---|
| $26,182.56 | ($16,260.00) | ($82.00) | ($2,000.00) | **$7,840.56** |

**Defendants' Total Proposed Award**

| Total fees | $228,987.88 |
|---|---|
| Total fees on fees | $11,379.38 |
| Total costs | $7,840.56 |
| **Total award** | **$248,207.81** |

APPENDIX C

**Court's Calculation of Attorneys' Fees for Merits Litigation**

| Attorney | Total hours expended | 15% reduction | Subtotal of hours expended | Duplicative reduction | Clerical reduction | Forum-shopping reduction | Net hours expended | Hourly rate | Total lodestar |
|---|---|---|---|---|---|---|---|---|---|
| SJD | 268.9 | 40.3 | 228.6 | 0 | (1.0) | (8.3) | 219.3 | $300 | $65,790 |
| TJM | 75.0 | 11.2 | 63.8 | (21.1) | 0 | (2.0) | 40.7 | $300 | $12,210 |
| CAL | 18.7 | 2.8 | 15.9 | (18.9) | (0.5) | 0 | 0 | $200 | 0 |
| JET | 44.3 | 6.6 | 37.7 | (11.5) | 0 | 0 | 26.2 | $225 | $5,895 |
| JWW | 89.7 | 13.5 | 76.2 | (13.9) | 0 | (32.0) | 30.3 | $225 | $6,817.50 |
| RCD | 1038.8 | 155.8 | 883.0 | (22.8) | (2.0) | (39.1) | 819.1 | $200 | $163,820 |
| RRP | 4.3 | 0.6 | 3.7 | 0 | 0 | 0 | 3.7 | $150 | $555 |
| BTR | 128.2 | 19.2 | 109.0 | 0 | 0 | 0 | 109.0 | $150 | $16,350 |
| P/LC | 334.7 | 50.2 | 284.5 | (9.8) | (177.9) | (2.5) | 94.3 | $85 | $8,015.50 |
|  |  |  |  |  |  |  |  |  |  |
| Totals | 2002.5 |  | 1702.4 | (98.0) | (181.4) | (83.9) | 1342.6 |  | **$279,453** |

APPENDIX C (cont'd)

**Court's Calculation of Attorneys' Fees for Preparation of Fee Application**

| Attorney | Total hours expended | (25% self-imposed reduction) | Requested hours billed | Requested hourly rate | Requested fee |
|----------|---------------------|------------------------------|------------------------|----------------------|---------------|
| SJD | 18.3 | 4.6 | 13.7 | $300.00 | $4,117.50 |
| CAL | 10.0 | 2.5 | 7.5 | $200.00 | $1,500.00 |
| RCD | 25.0 | 6.3 | 18.8 | $200.00 | $3,750.00 |
| TJM | 2.9 | 0.7 | 2.2 | $300.00 | $652.50 |
| P/LC | 48.5 | 12.1 | 36.4 | $85.00 | $3,091.88 |
| | | | | Total Award for Fee Application | **$13,111.88** |

**TOTAL AWARD**

| | |
|---|---|
| Total fees for merits litigation | $279,453 |
| Total fees for preparation of fee application | $13,111.88 |
| Total costs | $0 |
| **Total award** | **$292,564.88** |